THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, | Case No. 2:24-cv-00211-TL |
| Plaintiffs, | DEFENDANT ARAG INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ERISA PREEMPTION) |
| v. | |
| ARAG INSURANCE COMPANY, | NOTED FOR CONSIDERATION: April 17, 2025 |
| Defendant. | |

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 1
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 6

II. FACTUAL BACKGROUND ......................................................................... 7

    A. Mr. McNae Elects Coverage For Prepaid Legal Services Under The Microsoft Policy As An Employee Benefit ........................................... 7

    B. Ms. McNae Is Sued In The Underlying Federal Action And Initiates A Claim Under The Microsoft Policy ..................................................... 8

    C. Mr. McNae Is Sued In The Underlying Federal Action And Initiates A Claim Under The Microsoft Policy ..................................................... 9

    D. Mr. McNae Is Sued In The Underlying State Action And Initiates A Claim Under The Conversion Policy ................................................... 10

    E. Microsoft Establishes The Microsoft Corporation Welfare Plan, Which Includes The Microsoft Policy ........................................................... 10

        1. Microsoft Is The Named Fiduciary And Plan Administrator ............... 11

        2. The Microsoft Policy Is A Component Plan Of The Microsoft Welfare Plan ......................................................................... 12

        3. Microsoft Confirms That The Microsoft Policy Is "Subject To ERISA" ......................................................................... 13

    F. Microsoft Included The Microsoft Policy In The Microsoft Welfare Plan's "2022 Summary Plan Description" Under ERISA ............................. 14

    G. Microsoft Included The Microsoft Policy In The Microsoft Welfare Plan's 2022 Annual Report Under ERISA (Form 5500) ........................... 16

    H. Microsoft Endorsed The Microsoft Policy, Precluding Any Application Of The Voluntary Plan Safe Harbor ................................................. 17

        1. Microsoft Participated In Drafting The Microsoft Policy, Including Selecting The Available Benefits And Establishing The Premium ........................................................................ 17

        2. Microsoft Actively And Regularly Promoted The Microsoft Policy To Its Employees, And Even Used Its Own Name (Microsoft) To Describe It ...................................................... 19

        3. Microsoft Required Its Employees To Access ARAG Benefits Through Microsoft's Own Website ................................................ 21

        4. Microsoft Offered The Microsoft Policy To Its Employees As The Exclusive Legal Insurance Plan In Its Welfare Plan ................... 22

III. SUMMARY JUDGMENT STANDARD ...................................................... 22

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 2
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

IV.    ARGUMENT ................................................................................................. 23

    A.    ERISA Preemption Requires Dismissal Of Plaintiffs' State Law Claims
        Arising Under The Microsoft Policy ............................................................ 23

        1.    The Microsoft Welfare Plan Is An ERISA Plan ................................. 23

        2.    The Microsoft Policy Is Part Of The Microsoft Welfare Plan ............. 25

        3.    Plaintiffs' State Law Claims Arising Under The Microsoft
            Policy Are Preempted Because They "Relate To" An ERISA
            Plan And Conflict With ERISA's Exclusive Civil Remedy ................ 26

    B.    The Voluntary Plan Safe Harbor Does Not Apply To The Microsoft
        Policy ........................................................................................................... 29

        1.    The Voluntary Plan Safe Harbor Does Not Apply Because
            Microsoft Endorsed The Microsoft Policy ........................................... 29

            a.    Microsoft Endorsed The Microsoft Policy As A Matter
                Of Law By Identifying Itself As Plan Administrator .............. 29

            b.    Microsoft Endorsed The Microsoft Policy As A Matter
                Of Law Through Numerous Other Actions ............................... 30

        2.    The Voluntary Plan Safe Harbor Does Not Apply Because
            Microsoft Contributed Premiums To The Welfare Plan ...................... 32

V.    CONCLUSION .............................................................................................. 33

CERTIFICATE OF CONFERRAL ............................................................................ 35

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 3
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ................................................................. 29

5

*Bast v. Prudential Ins. Co.*,
   150 F.3d 1003 (9th Cir.1998) ................................................. 29

6

7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................. 24

8

*Credit Managers Ass'n of S. California v. Kennesaw Life & Acc. Ins. Co.*,
   809 F.2d 617 (9th Cir. 1987) .................................................. 31

9

*Fort Halifax Packing Co. v. Coyne*,
   482 U.S. 1 (1987) ..................................................................... 28

10

*Galloway v. Lincoln Nat. Life Ins. Co.*,
   No. 09-cv-1479, 2010 WL 2679894 (W.D. Wash. July 2, 2010) ...................................... 32

11

12

*Ingersoll–Rand Co. v. McClendon*,
   498 U.S. 133 (1990) ................................................................. 28

13

*Kanne v. Connecticut Gen. Life Ins. Co.*,
   867 F.2d 489 (9th Cir. 1988) .............................................. 26, 32

14

15

*LaPrease v. Unum Life Ins. Co. of Am.*,
   347 F.Supp.2d 944 (W.D.Wash.2004) ................................. 33

16

*Massachusetts Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ................................................................. 30

17

*Nielsen v. Unum Life Ins. Co. of Am.*,
   58 F. Supp. 3d 1152 (W.D. Wash. 2014) .......................... 28, 29, 30

18

19

*Pacificare Inc. v. Martin*,
   34 F.3d 834 (9th Cir. 1994) ................................................... 34

20

*Peterson v. American Life & Health Ins. Co.*,
   48 F.3d 404 (9th Cir.1995) .............................................. 27, 29

21

22

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ............................................................. 25, 30

23

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 4
NO. 2:24-cv-00211-TL

**JENSEN MORSE BAKER PLLC**
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

*Sgro v. Danone Waters of N. Am., Inc.*,
    532 F.3d 940 (9th Cir. 2008) ......................................................... 31, 34

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ........................................................................ 28

*Steen v. John Hancock Mut. Life Ins. Co.*,
    106 F.3d 904 (9th Cir.1997) .......................................................... 33

*Steigleman v. Symetra Life Ins. Co.*,
    701 F. Supp. 3d 924 (D. Ariz. 2023) .............................................. 34

*Wilson v. Provident Life and Acc. Ins. Co.*,
    101 F.Supp.3d 1038 (W.D. Wash. 2015) ....................................... 33

*Yoon v. First Unum Life Ins.*,
    2009 WL 2581281 (N.D. Cal. Aug 20, 2009) ................................ 32

*Zavora v. Paul Revere Life Ins. Co.*,
    145 F.3d 1118 (9th Cir. 1998) ....................................................... 32

**Statutes**

ERISA .................................................................................................... *passim*

Washington Consumer Protection Act ...................................................... 29, 30

Washington Insurance Code ("WIC") ...................................................... 29, 30

Washington Insurance Fair Conduct Act .................................................. 29, 30

**Other Authorities**

29 C.F.R. § 2510.3-1(j) ........................................................................... *passim*

Fed. R. Civ. P. 56(a) ............................................................................... 24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 5
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET, SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Defendant, ARAG Insurance Company ("ARAG"), respectfully moves for partial summary judgment on the basis that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, preempts Plaintiffs' state law claims arising under ARAG Policy No. 10377 issued to Microsoft Corporation ("Microsoft") for the policy period January 1, 2022 through December 31, 2022 ("Microsoft Policy"). The Microsoft Policy includes the Group Legal Insurance Certificate and Service Plan ("Microsoft Certificate") provided to participants under, and incorporated within, the Microsoft Policy.[1]

## I.    INTRODUCTION

In this action, Plaintiffs—spouses Ronda McNae ("Ms. McNae") and William McNae ("Mr. McNae")—allege that ARAG wrongfully denied them insurance benefits, negligently handled their insurance claims, acted in bad faith, and violated Washington statutes that, where applicable, govern claims handling practices. ECF 14 ("Am. Compl.") at ¶¶ 58-102.

ARAG vigorously disputes these accusations. That said, the narrow purpose of this motion is to bring clarity and efficiency to these proceedings by obtaining partial summary judgment that Plaintiffs' state law claims arising under the Microsoft Policy must be dismissed because ERISA preempts them. The documents that Microsoft produced in response to the parties' subpoenas conclusively establish that the Microsoft Policy is an employee benefit consisting of "prepaid legal services" that Mr. McNae, as a then-Microsoft employee, obtained

---

[1] The Microsoft Policy defines "benefits" as "the legal coverages listed on the declarations page of the policy or in the benefits section of the Certificate of Insurance" and, in turn, defines "Certificate of Insurance" or "Certificate" as "the document provided by [ARAG] to the named insured that describes the benefits and terms of the insurance policy." Cosimano Decl., Ex. 1 at ARAG002547. The Microsoft Policy defines "named insured" as "a person enrolled via [Microsoft] with [ARAG] as entitled to coverage under the terms of this policy" and defines "insured" more broadly to include both "the named insured and the named insured's spouse." *Id.* For economy, and because the Microsoft Certificate (Cosimano Decl., Ex. 2) is incorporated into the Microsoft Policy as above described, future references to the "Microsoft Policy" include the Microsoft Certificate.

for himself and Ms. McNae under the Microsoft Corporation Welfare Plan ("Microsoft Welfare Plan")—an "employee welfare benefit plan" and "employee benefit plan" as defined in 29 U.S.C. §§ 1002(1) and 1002(3) that is therefore exclusively governed by ERISA under 29 U.S.C. § 1003.

Plaintiffs may seek to evade ERISA preemption by invoking 29 C.F.R. § 2510.3-1(j), known as the "Voluntary Plan Safe Harbor." For the safe harbor to apply, the McNaes must establish, among other things, that "[t]he *sole functions of [Microsoft]* with respect to the [Microsoft Policy] are, *without endorsing the [Microsoft Policy]*, to permit [ARAG] to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to [ARAG]." *Id.* (emphasis added). But the undisputed documentary evidence establishes that, as a matter of law, Microsoft both (a) "endors[ed]" the Microsoft Policy within the meaning of Ninth Circuit case law and (b) performed "functions…with respect to" the Microsoft Policy far beyond the modest exempted functions. Because either of these circumstances precludes any application of the Voluntary Plan Safe Harbor to the Microsoft Policy, and because Plaintiffs cannot establish a triable dispute as to either, ARAG is entitled to partial summary judgment that ERISA governs the Microsoft Policy and preempts all state law claims arising under the same.

## II.    FACTUAL BACKGROUND

### A.    Mr. McNae Elects Coverage For Prepaid Legal Services Under The Microsoft Policy As An Employee Benefit

During open enrollment at Microsoft for the 2022 benefit year (i.e., January 1, 2022 through December 31, 2022), Mr. McNae elected to obtain coverage for himself and eligible dependents under the Microsoft Policy. Mullaly Decl., Ex. 1. The Microsoft Policy provides prepaid legal services—i.e., benefits that cover the expense of defined legal services in the event

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 7
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1  of specified contingencies, such as adoption, divorce, or certain types of lawsuits. Cosimano

2  Decl., Ex. 1 at ARAG002553-ARAG002655. Unlike liability insurance (e.g., auto liability

3  coverage), legal insurance does not indemnify the insured against *liability* to third parties. The

4  benefit at issue here, for example, only pays for certain legal services while the insured seeks

5  to settle or otherwise resolve an eligible civil action. *Id.* at ARAG002557 ("Defense of Civil

6  Damage Claims"). Also unlike most liability insurance, the Microsoft Policy does not include

7  any duty to defend. Quite the contrary, it expressly provides that ARAG "shall at no time

8  control" the defense. *Id.* at ARAG002552.

9  **B.    Ms. McNae Is Sued In The Underlying Federal Action And Initiates A Claim Under The Microsoft Policy**

10          On July 14, 2022, Michael J. Fitzgerald ("Mr. Fitzgerald") filed a civil action, No. 1:22-

11  cv-22171, in the United States District Court for the Southern District of Florida ("Underlying

12  Federal Action"). Mullaly Decl., Ex. 9. The Underlying Federal Action named Ms. McNae as

13  defendant and alleged that she breached a settlement agreement with Mr. Fitzgerald. *Id.*

14          As Mr. McNae's spouse, *see* Am. Compl. ¶ 12, Ms. McNae is an "insured" as that term

15  is defined in the Microsoft Policy. Cosimano Decl., Ex. 1 at ARAG002547. In connection with

16  being named as defendant in the Underlying Federal Action, Ms. McNae made a claim under

17  the Microsoft Policy's "Defense of Civil Damages Claims" benefit on July 18, 2022. *Id.*, ¶ 5.

18  The Microsoft Policy defines "insured event" as "an event covered by this policy whose

19  initiation date will be considered the earlier of the date (a) written notice of a legal dispute is

20  sent or filed by you or received by you; or (b) a ticket or citation is issued; or (c) an attorney is

21  hired" and further provides that the policy "applies to insured events which occur…while [the

22  Microsoft Certificate] is in effect." *Id.*, Ex. 1 at ARAG002547, ARAG002549. The Microsoft

23

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 8
NO. 2:24-cv-00211-TL

Certificate states a "Policy Period" from January 1 to December 31, 2022. *Id.*, Ex. 2 at ARAG002935.

Subject to the terms and conditions of the Microsoft Policy, ARAG began providing benefits to Ms. McNae under the Microsoft Policy in connection with the Underlying Federal Action. *Id.*, ¶ 5. ARAG has agreed, subject to written reservations of rights, to pay the costs of eligible legal services for certain defense counsel, chosen by Ms. McNae from among ARAG's Network Attorneys, to defend Ms. McNae in the Underlying Federal Action. *Id.*, ¶ 6.

**C.    Mr. McNae Is Sued In The Underlying Federal Action And Initiates A Claim Under The Microsoft Policy**

On December 16, 2022, Mr. Fitzgerald moved for leave to amend his complaint in the Underlying Federal Action to, among other things, add Mr. McNae as a defendant and assert additional claims against Ms. McNae. Mullaly Decl., Ex. 10. The Court granted the motion on December 29, 2022 (*id.*, Ex. 11), and, on December 30, 2022, Mr. Fitzgerald filed a first amended complaint against Ms. McNae and Mr. McNae alleging breach of a settlement agreement and a series of tort claims (*id.*, Ex. 12). In connection with being named a defendant in the Underlying Federal Action in December 2022, Mr. McNae made a claim under the Microsoft Policy's "Defense of Civil Damages Claims" benefit. Cosimano Decl., ¶ 7. Subject to the terms and conditions of the Microsoft Policy, ARAG began providing benefits to Mr. McNae under the Microsoft Policy in connection with the Underlying Federal Action. *Id.*

*Mr.* McNae—but not Ms. McNae—was dismissed from the Underlying Federal Action on jurisdictional grounds on October 24, 2023. Mullaly Decl., Ex. 13. ARAG paid the costs of eligible legal services for certain defense counsel, chosen by Mr. McNae, to defend Mr. McNae in the Underlying Federal Action through his dismissal. Cosimano Decl., ¶ 8.

JENSEN MORSE BAKER PLLC
520 PIKE STREET, SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1

**D.    Mr. McNae Is Sued In The Underlying State Action And Initiates A Claim Under The Conversion Policy**

2

3       Microsoft terminated Mr. McNae's employment effective September 9, 2023. Mullaly

4   Decl., Ex. 2. Mr. McNae purchased new coverage from ARAG—this time not a part of

5   Microsoft's group policy—to address future "insured events" as defined in said new coverage

6   ("Conversion Policy" and "Conversion Certificate"). Cosimano Decl., ¶ 11, Ex. 3, Ex. 4. Mr.

7   McNae's coverage under the Conversion Policy and Conversion Certificate became effective

    beginning October 1, 2023. *Id.*
8

9       On November 2, 2023, Mr. Fitzgerald filed a civil action, No. 2023-025855-CA-01, in

10   the Circuit Court of the Eleventh Judicial Circuit In and For Miami-Dade County, Florida

11   ("Underlying State Action"). Mullaly Decl., Ex. 14. The action named Mr. McNae as defendant

12   and substantially replicated the claims against Mr. McNae dismissed from the Underlying

13   Federal Action for lack of subject matter jurisdiction. *Id.*; *compare id.*, Ex. 12. In connection

14   with the Underlying State Action, Mr. McNae made a claim under the Conversion Policy's

15   "Defense of Civil Damages Claims" benefit on about November 8, 2023. Cosimano Decl., ¶ 13.

16   Mr. McNae's alleged claims arising from the Underlying State Action, the Conversion Policy,

17   and the Conversion Certificate are not the subject of this motion for partial summary judgment.

18   That said, ARAG has agreed, subject to written reservations of rights and to the terms and

19   conditions of the Conversion Policy, to pay the costs of eligible legal services for certain

20   defense counsel, chosen by Mr. McNae from among ARAG's Network Attorneys, to defend

     Mr. McNae in the Underlying State Action. *Id.*, ¶ 14.
21

**E.    Microsoft Establishes The Microsoft Corporation Welfare Plan, Which Includes The Microsoft Policy**
22

23       Microsoft originally established the Microsoft Corporation Welfare Plan (again,

24   "Microsoft Welfare Plan") effective January 1, 1994. Mullaly Decl., Ex. 6 at ARAG011380.

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 10
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Microsoft amended and restated the Microsoft Welfare Plan by a written instrument titled "Microsoft Corporation Welfare Plan As Amended and Restated Effective January 1, 2016" (as further amended on December 16, 2021, the "Wrap Plan Document").[2] *Id.* at ARAG011377-ARAG011438.

### 1.    Microsoft Is The Named Fiduciary And Plan Administrator

The Wrap Plan Document, at Section 5.1, designates Microsoft as the Named Fiduciary and the Plan Administrator of the Microsoft Welfare Plan. *Id.* at ARAG011390.

Per Section 5.2(a)(ii), the Plan Administrator is empowered to "interpret the provisions of the Plan and determine any question arising under the Plan, or in connection with the administration or operation thereof." *Id.*

Per Section 5.2(a)(iv), the Plan Administrator is empowered to "determine eligibility for and amount of benefits for any Participant." *Id.*

Per Section 5.2(a)(vii), the Plan Administrator is empowered to "delegate and allocate, specific responsibilities, obligations and duties imposed by the Plan, to one or more employees, officers or such other persons as the Plan Administrator deems appropriate." *Id.*

More generally, under Section 5.2(b), the Plan Administrator "shall have all powers necessary or appropriate to carry out its duties, including, without limitation, the sole discretionary authority to take the actions described in Section 5.2(a) and to interpret the provisions of the Plan and the facts and circumstances of claims for benefits." *Id.*

Section 5.2(b) of the Wrap Plan Document also provides that: "Any interpretation or construction of or action by the Plan Administrator with respect to the Plan and its

---

[2] The Sixth Amendment, executed December 20, 2023 and effective January 1, 2024, follows the 2022 benefit year relevant to these proceedings. Mullaly Decl., Ex. 6 at ARAG011439-ARAG011440. Thus, while the Sixth Amendment is not part of the Wrap Plan Document for purposes of this dispute, neither is its subject matter material. *See id.*

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 11
NO. 2:24-cv-00211-TL

1   administration shall be conclusive and binding upon any and all parties and persons affected

2   hereby, subject to the exclusive appeal procedure set forth in Section 5.6. Benefits under this

3   Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is

4   entitled to them." *Id.* at ARAG011390, -391.

5        Section 3 of the Wrap Plan Document states that: "Each Participant may elect to receive

6   coverage under the benefit coverages described in the Appendices. The terms, conditions and

7   limitations of benefits offered under this Plan are contained in the applicable Component Plans

8   referenced in the Appendices and which are incorporated herein in full, as amended from time

9   to time." *Id.* at ARAG011388.

10       **2.      The Microsoft Policy Is A Component Plan Of The Microsoft Welfare Plan**

11       Section 1.3 of the Wrap Plan Document defines the phrase "Component Plan" to mean

12  "a written plan identified in the Appendices and incorporated herein by reference. For an

13  insured plan, the written plan is the certificate of coverage." *Id.* at ARAG011381.

14       Appendix II to the Wrap Plan Document incorporates the Microsoft Policy by stating:

15  "The terms, conditions and limitations of the benefits described in Section 3 of the Plan are

16  contained in the summary plan description(s) for the Component Plans listed in this Appendix

17  II, which are incorporated herein by reference. *** The Component Plans are: *** B. The

18  following non-health care benefit programs: *** 5. Group legal services benefits, ARAG Group

19  contract number 3181-420." *Id.* at ARAG011408; *see also id.* at ARAG011388 ("contract

20  number…may change from time to time and shall be reflected in the applicable Component

21  Plans").

22       The Wrap Plan Document governs the claims procedure applicable to the Microsoft

23  Policy (and other Component Plans). *Id.* at ARAG011391-ARAG011401. Specifically, Section

24  5.6 states, among other things: "Claims shall be evaluated by the Plan Administrator or such

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 12
NO. 2:24-cv-00211-TL

**JENSEN MORSE BAKER PLLC**
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

other person or entity designated by the Plan Administrator as specified in the applicable Component Plans and shall be approved or denied in accordance with the terms of the Plan including the Component Plans. All references to the Plan Administrator in this Section 5.6 shall include such delegate." *Id.* at ARAG011391.

Section 6.1 of the Wrap Plan Document describes how the Microsoft Welfare Plan may be amended or terminated and by whom. *Id.* at ARAG011403.

### 3.    Microsoft Confirms That The Microsoft Policy Is "Subject To ERISA"

Finally, Section 7.14 of the Wrap Plan Document affirms that the Microsoft Policy is a benefit subject to ERISA. It states: "This Plan provides certain benefits which are subject to ERISA, and other benefits, such as dependent care reimbursement benefits, which are not subject to ERISA. ***Only those benefits identified in ERISA Sections 3(1) and 4 are subject to ERISA.*** This Plan shall not be construed to subject any non-ERISA benefits to the requirements of ERISA." *Id.* at ARAG011406 (emphasis added).

ERISA Section 3(1), codified at 29 U.S.C. § 1002(1), identifies the following benefits: "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or ***prepaid legal services***" (emphasis added).

The Microsoft Policy provides prepaid legal services benefits, and therefore is a benefit "identified in ERISA Section[] 3(1)." Cosimano Decl., Ex. 1. Indeed, the "Defense of Civil Damage Claims" coverage invoked by Plaintiffs provides for, subject to the terms and conditions of the Microsoft Policy, "Legal services for an insured in defense against civil damage(s) claims…." *Id.* at ARAG002557.

The Microsoft Policy satisfies the requirement for applicability of ERISA set forth in ERISA Section 4, codified at 29 U.S.C. § 1003, because, as above described, the Microsoft

Policy is a Component Plan in the Microsoft Welfare Plan, which in turn is an "employee benefit plan established or maintained" by Microsoft—an "employer engaged in commerce or in any industry affecting commerce." 29 U.S.C. § 1003(a).

**F.      Microsoft Included The Microsoft Policy In The Microsoft Welfare Plan's "2022 Summary Plan Description" Under ERISA**

ERISA requires the administrator of an employee benefit plan to prepare and furnish to participants and beneficiaries a "summary plan description" containing certain information. 29 U.S.C. §§ 1022, 1024(b). In connection with the Microsoft Welfare Plan, Microsoft prepared and made available a document titled "2022 Summary Plan Description" ("2022 SPD"). It states: "This document is intended to serve as a Summary Plan Description (SPD) as defined by the Employee Retirement Income Security Act of 1974 (ERISA) for such programs described within that are governed by ERISA. The terms and conditions of the Microsoft Corporation Welfare Plan (Plan) are set forth in this SPD, in the Microsoft Corporation Welfare Plan wrap document (the "Welfare Plan"), the Benefits@Microsoft Program, the Microsoft Healthcare Reimbursement Plan, the Microsoft Dental and Vision Care Reimbursement Plan, the Microsoft Dependent Care Reimbursement Plan, and in the insurance policies and other component plan documents incorporated into the Welfare Plan. The Welfare Plan together with this SPD and the other incorporated documents constitute the written instruments under which the Plan is established and maintained." Mullaly Decl., Ex. 4 at ARAG010882.

*An entire section of the 2022 SPD is dedicated to the Microsoft Policy*, with subsections including "how the plan works," "where you can get legal help," "what the plan covers," "exclusions and limitations," and "how to file a claim." *Id.* at ARAG011264-ARAG011289.

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 14
NO. 2:24-cv-00211-TL

1       The 2022 SPD states that "ERISA requires that certain information be furnished to each

2   participant in an employee benefit plan" and then immediately proceeds to identify, with respect

3   to the Microsoft Welfare Plan, the plan sponsor (Microsoft), the type of plan ("Welfare benefit

4   plan providing health and welfare benefits"), the plan administrator and named fiduciary

5   (Microsoft), the source of funding (as to "Legal insurance benefits," "provided through the

6   purchase of insurance from ARAG"), and other information. *Id.* at ARAG011331.

7       The 2022 SPD reiterates Microsoft's authority as Plan Administrator and delegates

8   certain of that authority with respect to claims determinations: "The Plan is administered by

9   Microsoft according to the terms of the plan documents. Under the terms of the plan, Microsoft

10  has the authority to delegate the day-to-day administrative duties to a third party. Microsoft

11  shall have complete discretion to interpret and construe the provisions of the plan options,

12  programs, and policies described in this SPD, to determine eligibility for participation and for

13  benefits, make findings of fact, correct errors and supply omissions. All decisions and

14  interpretations Microsoft made pursuant to the plan options, programs and policies described

15  in this SPD shall be final, conclusive and binding on all persons and may not be overturned

16  unless found by a court to be arbitrary and capricious…. Microsoft may delegate this

17  discretionary authority to select service providers, and hereby delegates such authority to each

18  service provider to the extent that the service provider is responsible for reviewing and issuing

19  claims and appeals determinations under the respective plan options, programs, and policies

20  described in this SPD." *Id.* at ARAG011332.

21      The 2022 SPD contains a "Summary Annual Report for Microsoft Corporation Welfare

22  Plan" that: (a) indicates that the Microsoft Welfare Plan "is a welfare benefit plan offering

23  health, life, dental, vision, ***group legal***, long-term disability, accidental death &

24  dismemberment, flexible spending account, paid leave, and an employee assistance plan;" (b)

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 15
NO. 2:24-cv-00211-TL

specifies that ARAG Insurance Company is the insurer for the group legal component; and (c)

affirms that "[t]he annual report has been filed with the Employee Benefits Security

Administration, as required under the Employee Retirement Income Security Act of 1974

(ERISA)." *Id.* at ARAG011352-ARAG011353 (emphasis added).

**G.      Microsoft Included The Microsoft Policy In The Microsoft Welfare Plan's 2022 Annual Report Under ERISA (Form 5500)**

Under 29 U.S.C. §§ 1023(a) and 1024(a), an annual report must be published and filed

with respect to any ERISA employee benefit plan. The annual report is made on Internal

Revenue Service Form 5500 ("Form 5500"), which states that "[t]his form is required to be

filed for employee benefit plans under sections 104 [codified at 29 U.S.C. § 1024] and 4065 of

the Employee Retirement Income Security Act of 1974 (ERISA) and sections 6057(b) and

6058(a) of the Internal Revenue Code (the Code)." Mullaly Decl., Ex. 7 at ARAG011933.

On the Form 5500 that Microsoft filed for year 2022 with respect to the Microsoft

Welfare Plan ("2022 Form 5500"), in response to the prompt on Line 8b ("If the plan provides

welfare benefits, enter the applicable welfare feature codes from the List of Plan Characteristics

Codes in the instructions"), Microsoft entered: "4A 4B 4D 4E *4G* 4H 4L 4Q." *Id.* at

ARAG011934 (emphasis added). In the "List of Plan Characteristics Codes" table in the "2022

Instructions for Form 5500" published by the IRS, the code "4G" corresponds to "prepaid

legal." Mullaly Decl., Ex. 15 at 21 (original pagination).

Schedule A to the 2022 Form 5500 is titled "Insurance Information" and states that

"[t]his schedule is required to be filed under section 104 of the Employee Retirement Income

Security Act of 1974 (ERISA)." Mullaly Decl., Ex. 7 at ARAG011936. The instructions for

Schedule A to Form 5500 state that "[t]he insurance company…is required under ERISA

section 103(a)(2) [codified at 29 U.S.C. § 1023(a)(2)] to provide the plan administrator with

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 16
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

the information needed to complete this return/report." Mullaly Decl., Ex. 15 at 24 (original pagination).

The 2022 Form 5500 reports that the Microsoft Welfare Plan funds its obligations (*see* Line 9a (Mullaly Decl., Ex. 7 at ARAG011934)) with respect to its "group legal plan" (*see* Schedule A, Line 8 (*id.* at ARAG011939)) through an insurance policy issued by "ARAG Insurance Company" bearing contract number "10377-0001-001" in effect from "01/01/2022" to "12/31/2022" (*see* Schedule A, Line 1 (*id.* at ARAG011936)). This is the Microsoft Policy. Mullaly Decl., Ex. 1 at ARAG002542.

**H.    Microsoft Endorsed The Microsoft Policy, Precluding Any Application Of The Voluntary Plan Safe Harbor**

The undisputed facts conclusively establish that Microsoft exercised an immense degree of control over the design and price of the Microsoft Policy, made sustained efforts to promote the Microsoft Policy among its employees, represented to its employees that the coverage available under the Microsoft Policy was tailored to their needs, and otherwise endorsed the Microsoft Policy. As such, the Voluntary Plan Safe Harbor cannot apply.

**1.    Microsoft Participated In Drafting The Microsoft Policy, Including Selecting The Available Benefits And Establishing The Premium**

Microsoft and ARAG collaboratively drafted the portion of the Microsoft SPD that addresses the Microsoft Policy. For example, on July 27, 2021, a Microsoft representative wrote to ARAG: "I will also need to update our SPD and it's due on 8/6. I'll work on the draft and will ask ARAG to review as well." Cosimano Decl., Ex. 5 at ARAG009017. Later in this process, on August 10, 2021, a Microsoft representative wrote to ARAG: "Will you review our comments and edits and let me know if you are okay with these?" *Id.*, Ex. 6 at ARAG008872.

Microsoft extensively participated in the design of the ARAG coverage for Microsoft employees each year, including determination of which benefits would be included. For

example, on August 24, 2017, a Microsoft representative wrote to ARAG: "It's looking like we are going to go with the plan design that we most recently discussed, removal of tax and financial counseling and replace with the benefits recommended on our last call. No rate change." *Id.*, Ex. 7 at ARAG008931. The same process occurred for 2022 (the year in which the Microsoft Policy was issued). For example, on July 13, 2021, a Microsoft representative wrote to ARAG: "I am hoping today we can discuss the proposed plan enhancements for 2022." *Id.*, Ex. 5 at ARAG009018. On July 27, 2021, the Microsoft representative wrote to ARAG that Microsoft leadership "approved the plan enhancements for CY22." *Id.* at ARAG009017.

Microsoft represented to its employees that Microsoft's annual review of the ARAG policy's design ensured the quality, breadth, and relevance of its coverage—and thereby offered an explicit endorsement of the coverage. For example, Microsoft prepared a communication to employees that stated: "Microsoft and ARAG, your legal plan provider, review your legal insurance plan benefits each year to ensure they offer a comprehensive mix of services to meet your overall legal needs. Based on this year's review, we determined the newly added benefits would provide broader and more relevant coverage to meet our employees' ongoing legal needs." *Id.*, Ex. 8 at ARAG009438. Microsoft also requested that ARAG contact specific attorneys and solicit their applications to join the ARAG network. *Id.*, Ex. 9 at ARAG010611.

Microsoft negotiated the price of the Microsoft Policy on behalf of its employees with the stated purpose of facilitating employee enrollment in ARAG's coverage. For example, on July 13, 2021, a Microsoft representative wrote to ARAG: "We have been discussing internally and while the [ARAG] rate increase [for 2022] is low it does…put the monthly rate over $20 at $20.57. I am not sure if going over $20 monthly might cause hesitancy to enroll in the benefit. We can discuss further but wanted to share my initial thoughts." *Id.*, Ex. 5 at ARAG009018.

1    Microsoft also negotiated a five-year rate guarantee with ARAG, for which the Microsoft Policy

2    was year three. *Id.* at ARAG009016.

3          In 2022 and prior years during which ARAG provided the prepaid legal services that

4    Microsoft made available as part of its employee benefits package, the two companies worked

5    closely to tailor ARAG's benefits, customer service metrics, and promotional communications

6    to Microsoft's requirements. *Id.*, ¶ 15, Ex. 18. Microsoft and ARAG had a monthly telephonic

7    status meeting, as well as an annual stewardship meeting, generally held in-person at

8    Microsoft's offices in the second quarter, to discuss ARAG's performance during the prior

9    policy year, any major changes in participation, and Microsoft's plan design preferences for the

10   renewal policy—including analysis of any industry, economic, or societal developments that

11   might affect Microsoft employees' future needs for varying types of legal services. *Id.*, ¶ 16,

12   Ex. 18. Microsoft's approval was required for wide-scale communications from ARAG to

13   Microsoft employees. *Id.*, Ex. 10. Microsoft monitored the accessibility of ARAG's online

14   portal (*id.*, Ex. 12) and required ARAG to satisfy premium-at-risk performance guarantees on

15   matters such as the promptness with which an ARAG customer service representative answers

16   calls received from enrolled Microsoft employees and the speed and accuracy of claims

17   payments. *Id.*, Ex. 19.

18             **2.     Microsoft Actively And Regularly Promoted The Microsoft Policy To Its
                         Employees, And Even Used Its Own Name (Microsoft) To Describe It**

19

20        Microsoft's 2022 SPD characterized the Microsoft Policy to Microsoft employees like

21   Mr. McNae as "industry leading" and stated that it is one way in which "***Microsoft is here to***

22   ***support*** [employees] with benefits and resources to help [them] live life well." Mullaly Decl.,

23   Ex. 4 at ARAG010881 ("Microsoft provides industry-leading benefits to help you and your

24   family get and stay well, prepare for your future, and enjoy life's journey. Whether you are

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 19
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET, SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1 expecting a new child, ***looking for some legal advice for a new home***, or managing a health

2 condition, ***Microsoft is here to support you***.") (emphasis added).

3     Microsoft organized and directly participated in presentations to Microsoft employees

4 that extolled the benefits of the ARAG coverage. For example, a Microsoft-branded

5 presentation ("Talk Benefits To Me") offered in connection with open enrollment by

6 Microsoft's human resources department and two official Microsoft employee resource groups

7 ("HOLA" and "Families at Microsoft") touted ARAG's "Best-in-Class Benefits" and referred

8 to the ARAG coverage as the "Microsoft Legal Insurance Plan." *Id.*, Ex. 13 at ARAG009139,

9 -148.

10     Indeed, a number of Microsoft-approved employee communications used the name

11 "Microsoft Legal Insurance Plan" to refer to the ARAG coverage. *Id.*, Ex. 10 at ARAG009137.

12 Other communications by Microsoft to its employees about ARAG bore the Microsoft logo,

13 stated that "ARAG offers top-performing legal insurance for you and your family," and referred

14 to the ARAG coverage as the "Microsoft Group Legal Plan." *Id.*, Ex. 14 at ARAG009310, -

15 311.

16     Extensive information and promotional text concerning the ARAG coverage (e.g.,

17 "Microsoft employees who are members of ARAG Legal Insurance have benefitted by using it

18 for…") appeared directly on Microsoft's self-branded human resources portal without the

19 presence of ARAG logos and without attribution of the text to any entity other than Microsoft

20 itself. *Id.*, Ex. 15 at ARAG009893-ARAG009900. Microsoft also arranged for its EAP

21 (employee assistance program) provider to refer callers to ARAG. *Id.*, Ex. 16 at ARAG010643.

22     An email that Microsoft's human resources department sent to Microsoft employees in

23 connection with open enrollment for 2022 benefits promoted the "Group Legal" coverage – i.e.,

24 the Microsoft Policy – without any reference to ARAG whatsoever. The email, dated October

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 20
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

13, 2021, stated "you have plenty of great options to choose from" and featured among the "essential updates and enhancements we've made for 2022" the following text: "Your life outside of work is important. That's why we're adding additional benefits to our Group Legal insurance plan: Family Law and Real Estate Benefits. Starting January 1, 2022, you can work with a network attorney on matters related to alimony, child support, real estate disputes (even rental property disputes), and more to help keep everything at home running smoothly. Take advantage of everything your Group Legal plan has to offer for only $20.57 per month…." *Id.*, Ex. 17 at ARAG010037, -038.

3.    **Microsoft Required Its Employees To Access ARAG Benefits Through Microsoft's Own Website**

Microsoft mandated that employees enrolled in the Microsoft Policy be permitted to access ARAG's online services portal solely by navigating to and signing in via a Microsoft website (benefits.me.microsoft.com), rather than directly through ARAG's own website (araglegal.com). Mullaly Decl., Ex. 4 at ARAG011265 (2022 SPD) ("To review your Certificate of Insurance, find a network attorney, or get more information about the benefits under this plan, call ARAG at (800) 331-3425, email service@ARAGlegal.com, or log onto the Microsoft Benefits site and visit the ARAG website."); Cosimano Decl., Ex. 10 at ARAG009135 ("Get started at benefits.me.microsoft.com and select Work & Life > ARAG Legal Insurance."); *id.* ("Your Member ID is also available to download digitally at benefits.me.microsoft.com."); *id.* at ARAG009137 ("Access your ARAG account via benefits.me.microsoft.com."). Attempts by Microsoft employees to log in directly via ARAG's website resulted in an error message directing the user to the Microsoft benefits site (*id.*, Ex. 11 at ARAG010636), and Microsoft moved to include its logo on the ARAG portal for Microsoft employees (*id.*, Ex. 12 at ARAG010635).

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 21
NO. 2:24-cv-00211-TL

**4.    Microsoft Offered The Microsoft Policy To Its Employees As The Exclusive Legal Insurance Plan In Its Welfare Plan**

In the years that it was offered, ARAG's coverage was the sole option for prepaid legal services that Microsoft offered to its employees as part of a benefits package. Microsoft selected ARAG as its provider following a rigorous and competitive Request for Proposal ("RFP") process that Microsoft conducted in 2009. *Id.*, ¶ 17. As part of that process, Microsoft informed ARAG that "***Microsoft has determined the voluntary group legal plan is regulated by ERISA***" and sought confirmation that "[ARAG] will provide annual Schedule A information for Form 5500 filings." *Id.*, Ex. 20 at ARAG010474 (emphasis added).

In 2023, Microsoft issued a new RFP for prepaid legal services to be offered as part of its employee benefits package. ARAG submitted a proposal, which entailed providing copious information to Microsoft for evaluation, presenting to a selection committee, and participating in a finalist meeting. As previously, only a single company would be chosen to offer the prepaid legal services included in Microsoft's benefits package. Microsoft selected a competitor of ARAG to provide the prepaid legal services benefit going forward and ARAG's inclusion in Microsoft's employee benefits program ended on December 31, 2023. *Id.*, ¶ 18.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment must enter "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (cleaned up).

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 22
NO. 2:24-cv-00211-TL

1

## IV.    ARGUMENT

2

**A.    ERISA Preemption Requires Dismissal Of Plaintiffs' State Law Claims Arising Under The Microsoft Policy**

3

4        ERISA, with certain exceptions not here applicable, preempts "any and all State laws

5    insofar as they may now or hereafter ***relate to*** any employee benefit plan" governed by ERISA.

6    29 U.S.C. § 1144(a) (emphasis added). This express preemption statute is "deliberately

7    expansive," must be accorded its "broad common-sense meaning," sweeps in any state law that

8    "has a connection with or reference to" an ERISA plan, and "is not limited to state laws

9    specifically designed to affect employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S.

10   41, 46-47 (1987). State law claims based on "alleged improper processing of a claim for benefits

11   under an employee benefit plan…undoubtedly meet the criteria for pre-emption," *id.* at 48, not

12   only because they by necessity "relate to" an ERISA plan but for the additional reason that

13   "Congress clearly expressed an intent that the ***civil enforcement provisions of ERISA § 502(a)***

14   ***be the exclusive vehicle*** for actions by ERISA-plan participants and beneficiaries asserting

15   improper processing of a claim for benefits." *Id.* at 52 (emphasis added).

16       Here, because undisputed documentary evidence establishes as a matter of law that the

17   Microsoft Welfare Plan is an ERISA plan and that the Microsoft Policy provides prepaid legal

18   services as part of the Microsoft Welfare Plan, ARAG is entitled to summary judgment on all

19   seven state-law causes of action in the Amended Complaint with respect to Plaintiffs' claims

20   arising under the Microsoft Policy.

21       **1.    The Microsoft Welfare Plan Is An ERISA Plan**

22       Under ERISA, an "employee welfare benefit plan" consists of: (1) a "plan, fund or

23   program" (2) "established or maintained" (3) "by an employer or by an employee organization,

24   or by both" (4) "for the purpose of providing" enumerated types of benefits that include

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 23
NO. 2:24-cv-00211-TL

**JENSEN MORSE BAKER PLLC**
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1    "prepaid legal services" (5) to the participants or their beneficiaries. 29 U.S.C. § 1002(1); *Kanne*

2    *v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 491–92 (9th Cir. 1988).

3        As detailed above, Microsoft, Mr. McNae's employer in 2022, established and has

4    maintained the Microsoft Welfare Plan with the stated purpose that "[e]ach Participant may

5    elect to receive coverage under the benefit coverages described in the Appendices," Wrap Plan

6    Document at § 3, which include the "group legal services benefits" funded through Microsoft's

7    insurance coverage from ARAG as listed in the Wrap Plan Document's "Appendix II—

8    Component Plans." Mullaly Decl., Ex. 6 at ARAG011388, -408. Accordingly, the Microsoft

9    Welfare Plan is an employee welfare benefit plan (and therefore an "employee benefit plan")

10   as defined in 29 U.S.C. § 1002(3). Because 29 U.S.C. § 1003(a) provides that an "employee

11   benefit plan…established or maintained…by any employer engaged in commerce or in any

12   industry or activity affecting commerce" is governed by ERISA, the Microsoft Welfare Plan is

13   governed by ERISA. Mullaly Decl., Ex. 16 (establishing Microsoft engaged in commerce).

14       The Microsoft Welfare Plan also satisfies the formal requirements for establishment of

15   an ERISA plan. In accordance with 29 U.S.C. § 1102(a), it is "established and maintained

16   pursuant to a written instrument"—the Wrap Plan Document—that identifies the plan fiduciary

17   and the plan administrator. Mullaly Decl., Ex. 6 at ARAG011390. Further, in accordance with

18   29 U.S.C. § 1102(b), the Wrap Plan Document, including through its incorporation of the

19   Component Plans (among them the Microsoft Policy), describes how plan benefits are to be

20   funded, defines the responsibilities accorded to the plan administrator (and authorizes

21   delegation of the same), identifies how the plan may be amended and by whom, and specifies

22   the basis for payments to and from the plan. *Id.* at ARAG011388, -381, -408, -390, -391, -403.

23

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 24
NO. 2:24-cv-00211-TL

**2.**     **The Microsoft Policy Is Part Of The Microsoft Welfare Plan**

The Ninth Circuit holds that courts should consider an employer's benefit program as a whole to determine whether an available policy is covered by ERISA. *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 407 (9th Cir.1995) (concluding that "the policy [at issue] was just one component of [the employer's] employee benefit program and that the program, taken as a whole, constitutes an ERISA plan"). Here, Microsoft's own documents establish as a matter of law that the Microsoft Policy forms part of the Microsoft Welfare Plan.

The Microsoft Policy is expressly identified in Appendix II of the Wrap Plan Document as a "Component Plan" that confers benefits and that is incorporated by reference into the Wrap Plan Document. Mullaly Decl., Ex. 6 at ARAG011408, -381, -388. Further, the Wrap Plan Document expressly affirms that the Microsoft Policy's "group legal services benefits," by virtue of being a benefit "identified in ERISA Sections 3(1) and 4" (i.e., 29 U.S.C. §§ 1002(1), 1003), are "subject to ERISA." *Id.* at ARAG011406, -408. An entire section of the 2022 SPD published by Microsoft, a document mandated by ERISA and one of the "written instruments under which the [Microsoft Welfare Plan] is established and maintained," is dedicated to the Microsoft Policy. *Id.*, Ex. 4 at ARAG010882, ARAG011264-ARAG011289; *see* 29 U.S.C. §§ 1022, 1024(b).

The 2022 SPD also includes the Microsoft Policy in mandatory disclosures under ERISA, including as the source of funding for the Microsoft Welfare Plan's "group legal" services benefit. Mullaly Decl., Ex. 4 at ARAG011331. Finally, Microsoft included the Microsoft Policy on the Microsoft Welfare Plan's 2022 Form 5500—a form whose completion is required by ERISA and with respect to which ERISA mandates that ARAG—as the source of funding for the Microsoft Welfare Plan's "prepaid legal" benefit—furnish Microsoft the information necessary for Microsoft's "Schedule A" disclosures. *Id.*, Ex. 7 at ARAG011933-

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 25
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET, SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1   ARAG011939; *see* 29 U.S.C. §§ 1023(a) and 1024(a). These documents conclusively

2   demonstrate that the Microsoft Policy is, as a matter of law, part of the Microsoft Welfare Plan

3   and governed by ERISA.

> **3.** **Plaintiffs' State Law Claims Arising Under The Microsoft Policy Are Preempted Because They "Relate To" An ERISA Plan And Conflict With ERISA's Exclusive Civil Remedy**

6   In recognition that regulatory requirements vary by state, such that a benefits

7   administrator might otherwise be required "to process claims in a certain way in some States

8   but not in others," ERISA seeks to enable "a uniform administrative scheme" and "a set of

9   standard procedures to guide processing of claims and disbursement of benefits." *Fort Halifax*

10  *Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987). This aim reflects the judgment of Congress that

11  "[a] patchwork scheme of regulation would introduce considerable inefficiencies in benefit

12  program operation, which might lead those employers with existing plans to reduce benefits,

13  and those without such plans to refrain from adopting them." *Id.* at 11.

14  To effectuate ERISA's purpose of enabling a uniform regulatory regime for employee

15  benefit plans, "section 514(a) of ERISA provides that ERISA supersedes all State laws insofar

16  as they may 'relate to' an ERISA plan." *Nielsen v. Unum Life Ins. Co. of Am.*, 58 F. Supp. 3d

17  1152, 1162 (W.D. Wash. 2014) (quoting 29 U.S.C. § 1144(a)). The words "relates to" must be

18  construed here "in their broadest sense" and has explained that a law "relates to" an employee

19  welfare benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air*

20  *Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "[E]ven if the law is not specifically designed to affect

21  such plans, or the effect is only indirect," a state law still may "relate to" an ERISA plan and

22  thereby be preempted. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). "***ERISA***

23  ***preemption is conspicuous for its breadth, and ERISA contains one of the broadest***

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 26
NO. 2:24-cv-00211-TL

1    *preemption clauses ever enacted by Congress*." *Peterson v. Am. Life & Health Ins. Co.*, 48

2    F.3d 404, 409 (9th Cir. 1995) (internal quotes and citations omitted) (emphasis added).

3          This Court specifically recognizes that the relationship between an ERISA plan

4    participant or beneficiary (e.g., Plaintiffs) and an insurer delegated authority to make benefits

5    determinations under such a plan (e.g., ARAG) "is patently governed by ERISA," triggering

6    preemption. *Nielsen*, 58 F. Supp. 3d at 1165; *see* Mullaly Decl., Ex. 4 at ARAG011332

7    (delegation to ARAG). The Ninth Circuit holds that, notwithstanding the savings clause for

8    state laws that regulate insurance, *see* 29 U.S.C. § 1144(b)(2)(A), ERISA expressly preempts

9    claims for insurance bad faith, including under the Washington Insurance Code ("WIC") and

10   the Washington Consumer Protection Act ("CPA"). *Id.* (citing *Bast v. Prudential Ins. Co.*, 150

11   F.3d 1003, 1007-08 (9th Cir.1998)). This Court has reached the same conclusion with respect

12   to the Washington Insurance Fair Conduct Act ("IFCA"). *Nielsen*, 58 F. Supp. 3d at 1165. That

13   result follows inexorably from the Ninth Circuit's reasoning in *Bast*, which assesses "whether

14   the parties' relationships are ERISA-governed" and applies with equal force to the IFCA as to

15   the WIC and CPA. *Bast*, 150 F.3d at 1008.

16         Moreover, a cause of action based on state law is conflict preempted "if it conflicts

17   directly with an ERISA cause of action." *Nielsen*, 58 F. Supp. 3d at 1162. The conflict presented

18   here is with ERISA Section 502(a), codified at 29 U.S.C. § 1132(a), in which "Congress set

19   forth an integrated and comprehensive civil enforcement scheme, which provides the ***exclusive***

20   ***remedy*** for rights guaranteed under ERISA" and "possesses ***extraordinary preemptive*** power."

21   *Id.* (internal quotations omitted) (emphasis added). Indeed, the Supreme Court holds that "***any***

22   state-law cause of action that duplicates, supplements, or supplants the ERISA civil

23   enforcement remedy conflicts with the ***clear congressional intent to make the ERISA remedy***

24   ***exclusive*** and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 27
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1    (emphasis added); *see also Nielsen*, 58 F. Supp. 3d at 1162-1165 (holding common law and

2    statutory claims alike preempted under ERISA and dismissing same). ERISA's exclusive

3    remedy provision means that ERISA governs *what* relief may be available and requires that

4    relief to be sought *exclusively* through a claim under ERISA § 502(a), codified at 29 U.S.C. §

5    1132(a). *See*, *e.g.*, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) ("The

6    six carefully integrated civil enforcement provisions found in § 502(a)…provide strong

7    evidence that Congress did *not* intend to authorize other remedies that it simply forgot to

8    incorporate expressly.").

9    　　　The Supreme Court has applied this analysis directly and with particular force to state

10   law causes of action that, like the Washington statutory and common law claims asserted by

11   Plaintiffs here, target claims handling activity. In *Pilot Life*, the Supreme Court expressed full

12   agreement with the Solicitor General's argument that "Congress clearly expressed an intent that

13   the civil enforcement provisions of ERISA § 502(a) [29 U.S.C. § 1132(a)] be the exclusive

14   vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing

15   of a claim for benefits, and that varying state causes of action for claims within the scope of §

16   502(a) would pose an obstacle to the purposes and objectives of Congress." *Pilot Life*, 481 U.S.

17   at 52.

18   　　　For the above reasons, Plaintiffs cannot maintain any state law claims arising from the

19   Microsoft Policy. Their existing claims of this kind in Count 1 (declaratory judgment premised

20   on state law), Count 2 (breach of contract), Count 3 (bad faith), Count 4 (negligent claims

21   handling), Count 5 (CPA), Count 5 [sic.] (injunctive and equitable relief premised on state law),

22   and Count 6 (IFCA) of the Amended Complaint, *see* ECF 14 at ¶¶ 58-102, must be dismissed.

23

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 28
NO. 2:24-cv-00211-TL

**B.** **The Voluntary Plan Safe Harbor Does Not Apply To The Microsoft Policy**

Plaintiffs may seek to evade ERISA preemption by arguing that the Microsoft Policy is exempt from ERISA under the Voluntary Plan Safe Harbor. An employer like Microsoft "can establish an ERISA plan rather easily"—even if it "does no more than arrange for a 'group-type insurance program'"—"unless it is a mere advertiser who makes no contributions on behalf of employees." *Credit Managers Ass'n of S. California v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987). The burden to establish the safe harbor is upon the Plaintiffs. *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 (9th Cir. 2008) ("For [plaintiff] to prevail on this point, he would have to prove that the plan meets four separate requirements of the regulation [29 C.F.R. § 2510.3–1(j)]"). Any such argument fails as a matter of law, and, even if it did not, Plaintiffs cannot establish any genuine factual dispute with respect to at least two of the requirements.

**1.** **The Voluntary Plan Safe Harbor Does Not Apply Because Microsoft Endorsed The Microsoft Policy**

The Plaintiffs must show, among other things, that "[t]he *sole functions of [Microsoft]* with respect to the [Microsoft Policy] are, *without endorsing the [Microsoft Policy]*, to permit [ARAG] to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to [ARAG]." 29 C.F.R. § 2510.3-1(j)(3) (emphasis added).

**a.** **Microsoft Endorsed The Microsoft Policy As A Matter Of Law By Identifying Itself As Plan Administrator**

As an initial matter, any such showing is impossible as a matter of Ninth Circuit law. Both the Wrap Plan Document and the 2022 SPD name the employer, Microsoft, as the Plan Administrator of the Microsoft Welfare Plan, into which the Microsoft Policy is expressly incorporated as a "Component Plan." Mullaly Decl., Ex. 6 at ARAG011408, Ex. 4 at

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

ARAG011332. In the Ninth Circuit, the plan administrator of a plan "'endorses' it within the meaning of 29 C.F.R. § 2510.3–1(j)(3)" as a matter of law, precluding any application of the Voluntary Plan Safe Harbor. *Kanne*, 867 F.2d at 493; *see also Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1121 (9th Cir. 1998) ("*Kanne* suggests that a plan administrator necessarily endorses a plan."); *Galloway v. Lincoln Nat. Life Ins. Co.*, No. 09-cv-1479, 2010 WL 2679894, at *5 (W.D. Wash. July 2, 2010) ("because the SPD names [employer] as administrator of the Plan and because the Plan includes the Voluntary Policy, [employer] endorsed the Voluntary Policy within the meaning of the safe harbor's third provision"). Microsoft's role as plan administrator is dispositive, and the Voluntary Plan Safe Harbor does not apply as a matter of law.

> **b.**    **Microsoft Endorsed The Microsoft Policy As A Matter Of Law Through Numerous Other Actions**

To determine whether an employer endorsed a particular insurance plan, the Ninth Circuit considers "all the surrounding circumstances from the point of view of a reasonable person." *Kennesaw*, 809 F.2d at 625. Each of the relevant factors confirms that Microsoft endorsed the Microsoft Policy.

First, an employer endorses a policy when it participates in designing the policy. See *Yoon v. First Unum Life Ins.,* 2009 WL 2581281, at *5 (N.D. Cal. Aug 20, 2009) (plan is endorsed by employer where plan was "designed to satisfy...specific requirements" of the employer or where the employer played an "active, central role in creating and designing" it). Here, Microsoft took an active role in designing the Microsoft Policy, instructing ARAG regarding the benefits to be offered, and negotiating the price of ARAG coverage for its employees. Section II(H), *supra*; *see*, *e.g.*, Cosimano Decl., Ex. 5.

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 30
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

Second, an employer endorses a policy when it promotes the policy. *Steen v. John Hancock Mut. Life Ins. Co*., 106 F.3d 904, 917 (9th Cir.1997); *Wilson v. Provident Life and Acc. Ins. Co.*, 101 F.Supp.3d 1038, 1044 (W.D. Wash. 2015) (employer endorsed insurance plan by distributing a brochure with the employer's logo advertising the plan and characterizing it as a company plan). Here, Microsoft conferred its imprimatur upon and actively promoted the Microsoft Policy by representing to employees that it annually scrutinized and tailored the policy's benefits to ensure their adequacy (Cosimano Decl., Ex. 8 at ARAG009438), participating in benefits presentations touting ARAG's "Best-in-Class Benefits" and labelling the policy the "Microsoft Legal Insurance Plan" (*id.*, Ex. 13 at ARAG009139, -148), marketing the policy to employees by communicating that "ARAG offers top-performing legal insurance for you and your family" (*id.*, Ex. 14 at ARAG009310), providing extensive information regarding the benefits of signing up for the policy (*id.*, Ex. 15 at ARAG009893-ARAG009900), and requiring employees to access ARAG's online services solely through Microsoft's own website (*id.*, Ex. 11 at ARAG010636).

Third, an employer endorses a policy where it represented to employees that it had the power to amend, modify, terminate, or discretionarily interpret the policy. *LaPrease v. Unum Life Ins. Co. of Am*., 347 F.Supp.2d 944, 950 (W.D.Wash.2004) (no safe harbor where employer retained such authority). Here, Microsoft represented to employees in its plan documents that it retained not only authority to amend or terminate the Microsoft Policy as a Component Policy of the Microsoft Welfare Plan (Mullaly Decl., Ex. 6 at ARAG011403), but also "complete discretion to interpret and construe the provisions of the plan options, programs, and policies described in [the 2020] SPD, to determine eligibility for participation and for benefits, make findings of fact, correct errors and supply omissions" (*id.*, Ex. 4 at ARAG011332).

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 31
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1    Fourth, an employer endorses a policy when it files ERISA-mandated forms with the

2  government. *Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994). Here, Microsoft

3  included the Microsoft Policy on ERISA-mandated forms and publications, including the 2022

4  SPD and the 2022 Form 5500. *Id.*, Ex. 4 at ARAG011331, Ex. 7 at ARAG011933-

5  ARAG011939.

6    Fifth, an employer endorses a policy where it provides only a single option with respect

7  to that benefit. *Steigleman v. Symetra Life Ins. Co.*, 701 F. Supp. 3d 924, 931 (D. Ariz. 2023)

8  (finding endorsement where employees could not choose benefits other than those provided by

9  a specific plan). Here, the Microsoft Policy was the sole prepaid legal services benefit that

10  Microsoft made available to its employees. Mullaly Decl., Ex. 4 (2022 SPD); Cosimano Decl.,

11  ¶ 17.

12    These undisputed, documented facts compel the conclusion that Microsoft endorsed the

13  Microsoft Policy within the meaning of 29 C.F.R. § 2510.3-1(j)(3) as a matter of law, thereby

14  eliminating any possibility of the Voluntary Plan Safe Harbor exempting the Microsoft Policy

15  from ERISA.

16    **2.    The Voluntary Plan Safe Harbor Does Not Apply Because Microsoft**
         **Contributed Premiums To The Welfare Plan**

17    Plaintiffs also would have to establish that "[n]o contributions are made by an

18  employer." 29 C.F.R. § 2510.3-1(j)(1). Even if Microsoft did not specifically contribute to

19  premiums for the Microsoft Policy on behalf of employees, Microsoft did contribute to

20  premiums for other parts of the Microsoft Welfare Plan. Mullaly Decl., Ex. 4 at ARAG010906.

21  In the Ninth Circuit, "[s]o long as [employer] pays for *some* benefits, ERISA applies to the

22  whole plan, even if employees pay entirely for other benefits." *Sgro*, 532 F.3d at 943. As such,

23  Plaintiffs cannot raise any genuine issue of material fact that the safe harbor applies.

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 32
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

# V.    CONCLUSION

For the above reasons, ARAG respectfully requests partial summary judgment dismissing, on the basis of ERISA preemption, all seven counts of Plaintiffs' first amended complaint [ECF No. 14] insofar as they arise from the Microsoft Policy.

DATED: March 6, 2025.

I certify that this memorandum contains 8,349 words, in compliance with LR 7(e)(3).

JENSEN MORSE BAKER PLLC

By: *s/Benjamin Roesch*
Gabriel Baker, WSBA No. 28473
gabe.baker@jmblawyers.com
Benjamin Roesch, WSBA No. 39960
benjamin.roesch@jmblawyers.com
520 Pike Street, Suite 2375
Seattle, WA  98101

Attorneys for Defendant ARAG Insurance Company

SQUIRE PATTON BOGGS (US) LLP

Michael T. Mullaly (*pro hac vice*)
michael.mullaly@squirepb.com
2000 Huntington Center
41 South High Street
Columbus, OH  43215

Attorneys for Defendant, ARAG Insurance Company

DEFENDANT ARAG INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 33
NO. 2:24-cv-00211-TL

JENSEN MORSE BAKER PLLC
520 PIKE STREET; SUITE 2375
SEATTLE, WASHINGTON 98101
PHONE: 206.682.1550

1

## CERTIFICATE OF CONFERRAL

Counsel for ARAG sought to meet and confer with Plaintiffs regarding this motion for partial summary judgment on several occasions. On February 20, 2025, counsel emailed the Plaintiffs stating that it intended to file this motion and asking for Plaintiffs' availability to meet and confer on Friday or the next Monday. *See* Mullaly Decl., Ex. 17. Ms. McNae responded the next day that, "Due to a current illness requiring strong medication, I am unable to participate in a conference call in the next few days. Additionally, I am awaiting the judge's ruling." *Id.* Later on Friday, February 21, counsel for ARAG requested Plaintiffs' availability to meet and confer the next Tuesday. *Id.* Ms. McNae responded on Monday, February 24 that she would be unable to participate in a meet and confer call that week, and instead requested that ARAG provide her with its working draft of the motion so that she could review it and provide her position via email. *Id.* On Monday, March 3, counsel for ARAG declined to provide Plaintiffs with ARAG's work product, but sent an email explaining the basis for this motion, as well as pointing to ARAG's prior court filings and discovery responses that also contained the basic factual and legal framework for ARAG's position. *Id.* Counsel for ARAG did not receive a response to that email. Mullaly Decl., ¶ 20. Three business days have elapsed since ARAG's final attempt to make contact and meet and confer with the Plaintiffs regarding this matter, and counsel for ARAG therefore certifies that it has met its obligation to make a meaningful attempt to meet and confer with Plaintiffs prior to filing this motion.

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 34
NO. 2:24-cv-00211-TL

1

## CERTIFICATE OF SERVICE

2

Pursuant to the laws of the United States, the undersigned certifies under penalty of

3

perjury that on the 6th day of March, 2025, the document attached hereto was served upon the

4

below in the manner indicated:

5

*Pro Se Plaintiff*

6

William McNae
504 11th Place

7

Kirkland, WA  98033
prose.wmcnae@gmail.com

8

☐ Via CM/ECF
☒ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☒ Via Overnight delivery

9

*Pro Se Plaintiff*

10

Ronda McNae
504 11th Place

11

Kirkland, WA  98033
prose.rmcnae@gmail.com

12

☒ Via CM/ECF
☒ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

13

14

DATED this 6th day of March, 2025, in Columbus, OH.

15

By *s/Michael T. Mullaly*
Michael T. Mullaly

16

17

18

19

20

21

22

23

24

DEFENDANT ARAG INSURANCE COMPANY'S MOTION
FOR PARTIAL SUMMARY JUDGMENT – 35
NO. 2:24-cv-00211-TL