# EXHIBIT 14

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

CASE NO: _____

**MICHAEL J. FITZGERALD,**
**individually,**

                  **Plaintiff,**

**v.**

**WILLIAM MCNAE, individually,**

                  **Defendant.**

_____/

## COMPLAINT

Plaintiff, MICHAEL J. FITZGERALD ("Fitzgerald" or "Plaintiff"), files this Complaint against Defendant, WILLIAM MCNAE ("McNae" or "Defendant"), and alleges:

1.　　This is an action for damages arising out of Defendant's breach of a contract (the "Confidential Settlement Agreement") with Plaintiff Fitzgerald.　Fitzgerald also alleges tort claims, *in the alternative*, against Defendant in the event that the Confidential Settlement Agreement is deemed unenforceable or void.

## PARTIES, JURISDICTION AND VENUE

2.　　Plaintiff Fitzgerald is a British citizen who resides in England.

3.　　Defendant McNae is a United States citizen who is domiciled in Washington State.

4.　　This Court has subject matter jurisdiction over this action because it involves an actual and ongoing controversy that exceeds $50,000 plus attorneys' fees and costs. In particular, the amount in controversy is at least $657,228.00 in economic damages due as a result of natural and consequential damages to Plaintiff as a result of Defendant's breaches of the contract at issue

1

*Fitzgerald  v. William McNae*
Case No. _____

in this case.

5.      This Court has personal jurisdiction over Defendant pursuant to Florida Statute §48.193 because he has breached a contract in this state by failing to perform acts required by the Confidential Settlement Agreement to be performed in this state and because he committed tortious acts within this State.  Furthermore, this Court has jurisdiction over Defendant pursuant to Florida Statute §685.102 because the Confidential Settlement Agreement has a Florida choice of law provision and Defendant has therefore agreed to submit to the jurisdiction of the courts of this state.

6.      Venue in this district is proper because the underlying events related to the Confidential Settlement Agreement occurred in Miami-Dade County, Florida, and Defendant agreed in the Confidential Settlement Agreement that Miami-Dade County, Florida was the exclusive venue for disputes arising out of the agreement.

7.      The Plaintiff has retained the law firm Assouline & Berlowe, P.A., and has agreed to pay the firm its reasonable attorneys' fees and costs in conjunction with representing the Plaintiff in this action.

8.      All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

### **FACTS**

9.      Fitzgerald and Defendant (along with Defendant's wife, Ronda McNae), both with the aid of qualified attorneys, entered into a Confidential Settlement Agreement on or about June 15, 2020.  A true and correct copy of the Confidential Settlement Agreement is attached hereto as **Exhibit A**.

10.      In accordance with the Confidential Settlement Agreement, Defendant and

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*
Case No. _____

Fitzgerald were required to keep the terms and conditions of the Confidential Settlement Agreement confidential.  See Exhibit A, ¶16.

11.    In accordance with the Confidential Settlement Agreement, Defendant was to have no contact with Fitzgerald's then-employer, SoftwareONE.  See Exhibit A, ¶4B.

12.    In accordance with the Confidential Settlement Agreement, Defendant was not supposed to speak or write about Fitzgerald, his nationality, his employer, his country of citizenship, his location of residence, his employer, his job function, his job title, his profession, or reference dates, locations or other persons present at any of the events related to the underlying dispute. See Exhibit A, ¶4A.  The McNaes were also prohibited from referring to Fitzgerald indirectly.  Id.

13.    Under the Confidential Settlement Agreement, Fitzgerald paid a sum of money, and Fitzgerald and Defendant each released claims against one another. See Exhibit A, ¶¶3, 13.

14.    Under the Confidential Settlement Agreement, Defendant and Fitzgerald agreed not to disparage each other by written or oral word, gesture, or other means, nor would they make disparaging or negative comments about each other, to any person or entity.  See Exhibit A, ¶17.

15.    Fitzgerald has complied with all terms and conditions of the Confidential Settlement Agreement.

16.    On the contrary, Defendant breached several provisions of the Confidential Settlement Agreement by contacting SoftwareONE (Fitzgerald's then-employer) on July 15, 2022 and by contacting Microsoft (Defendant's employer who used to do business with SoftwareONE) on April 12, 2022; April 20, 2022; May 2, 2022 and July 13, 2022.  Defendant has also breached the Confidential Settlement Agreement by contacting others about the existence of the Confidential Settlement Agreement and by disparaging Fitzgerald to others.

3

*Fitzgerald v. William McNae*

Case No. _____

17.    Defendant's communications constitute breaches of the following provisions of the

Confidential Settlement Agreement:

- ¶4B: prohibition against contacting SoftwareONE

- ¶16: requirement to keep the terms and conditions of the Confidential Settlement Agreement confidential;

- ¶4A: prohibition from speaking or writing about Fitzgerald directly or indirectly, and

- ¶17: prohibition from disparaging Fitzgerald to others.

<u>See</u> Exhibit A.

18.    Plaintiff has been damaged as a result of Defendant's breaches both personally and

professionally.

19.    Plaintiff has hired the undersigned law firm to prosecute its claim and is obligated

to pay it a reasonable fee for its services. Pursuant to Paragraph 23 of the Confidential Settlement

Agreement, Plaintiff is entitled to be reimbursed for his attorneys' fees and all costs incurred

relating to said enforcement. <u>See</u> Exhibit A, ¶23.

## <u>COUNT I – BREACH OF CONTRACT</u>

20.    Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this

Count, Paragraphs 1-19 of this Complaint.

21.    The Confidential Settlement Agreement is a binding contract under Florida law.

22.    Defendant breached the Confidential Settlement Agreement by:

A.    Not keeping the Confidential Settlement Agreement confidential as required;

B.    Contacting Fitzgerald's then-employer, SoftwareONE;

C.    Disclosing the existence of the Confidential Settlement Agreement to

4

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

Fitzgerald's then-employer, SoftwareONE;

D.      Contacting Defendant's employer, Microsoft, and disclosing the existence

of the Confidential Settlement Agreement and the underlying dispute to

Microsoft;

E.      By referring to Fitzgerald directly by name and/or likeness, being,

nationality, country of citizenship, location of residence, employer, job

function, jot title, profession, or in reference to dates, locations, or other

persons present;

F.      By disparaging, lying and intentionally seeking to harm Fitzgerald both

professionally and personally by wrongfully and falsely accusing him of a

crime to others; and

G.      By working in concert with his wife, Ronda McNae, to commit her breaches

of the Confidential Settlement Agreement and her lies to Fitzgerald;

23.      Plaintiff has been damaged by Defendant's breaches of the Confidential Settlement

Agreement. Such damages include the loss of Plaintiff's job at SoftwareONE due to Defendant's

false accusations that Plaintiff assaulted Defendant's wife which led to a prolonged internal

investigation into Fitzgerald at SoftwareONE.  The internal investigation resulted in Fitzgerald not

being able to work in his chosen profession, loss of business contacts and relationships, damage to

his professional reputation, loss of stock options, and earned bonuses, among other things. These

damages were natural and foreseeable consequences of Defendant's multiple breaches of the

Confidential Settlement Agreement.

24.      Pursuant to Section 23 of the Confidential Settlement Agreement, Plaintiff is

entitled to be reimbursed for his attorneys' fees and costs.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

WHEREFORE, Plaintiff demands judgment against Defendant, William McNae, for compensatory damages in the amount of $657,228.00, plus post-judgment interest, and continuing until paid in full, attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II – ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 1)

25.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Complaint.

26.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable. Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

27.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

28.     Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

29.     On April 12, 2022, Defendant contacted Chris Maulden and Ande Ferretti of Microsoft and referred to Fitzgerald indirectly and stated that Fitzgerald raped his wife. The letter states, in pertinent part:

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald v. William McNae*

Case No. _____

> Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to
> investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations.
> As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their
> spouse, <u>when it was a result of a work relationship</u>, has been emotionally exhausting and damaging. A quick
> summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship
> to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and
> threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also
> reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident
> has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked
> for help since the relationship was so tightly connected to my work relationship.

[BATES MCNAE 1321-1323] (hereinafter referred to as "Statement 1").  A true and correct copy

of Statement 1 is attached hereto as **Exhibit B**.

     30.     Statement 1 is about Fitzgerald.

     31.     Statement 1 is false.

     32.     As a direct and proximate result of Defendant's libelous Statement 1, Fitzgerald

has been damaged.

     33.     Statement 1 is libel *per se* because the defamatory words Defendant used against

Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business,

or means of his livelihood.

     34.     Statement 1 is libel *per se* because Statement 1 accuses Fitzgerald of committing a

felonious sexual crime (i.e. rape).

     35.     Statement 1 was intended to degrade Fitzgerald, bring him into ill repute, destroy

others' confidence in his integrity, or to cause other injury.

     36.     In relation to Statement 1, Defendant intentionally made numerous other statements

that Fitzgerald raped Ronda McNae.

     37.     Defendant had actual knowledge that Statement 1 was false and that making false

statements like Statement 1 are wrong and likely to injure Fitzgerald.

     38.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements

indicating a person committed a felony constitute libel *per se*.

39.    Defendant made Statement 1 with the malicious intent to defame Fitzgerald.

40.    Statement 1 is unprivileged.

41.    As a direct result of Defendant's publication of Statement 1, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

42.    The wrongs and injuries caused by a statement like Statement 1 are presumed and implied, and constitute libel *per se*.

43.    Statement 1 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

44.    Statement 1 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

45.    As a direct result of Defendant's Statement 1, Fitzgerald now feels ostracized both personally and professionally.

46.    As a direct result of Statement 1, Fitzgerald has not been permitted to work in his chosen career.

47.    As a consequence of Statement 1, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

48.    Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

### **COUNT III - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 2)**

49.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

50.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

51.     Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

52.     Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

53.     On April 20, 2022, Defendant again contacted Chris Maulden of Microsoft stating that Fitzgerald preyed upon and assaulted his wife, Ronda McNae.  It states, in pertinent part:

> I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship.
> …
> Mike Fitzgerald abused his work relationship with me to prey and assault my wife and harass then threaten me assuming I would be too afraid to speak up.

[BATES MCNAE 1319-1320] (hereinafter referred to as "Statement 2").  A true and correct copy

*Fitzgerald v. William McNae*

Case No. _____

of Statement 2 is attached hereto as **Exhibit C**.

54.     Statement 2 is about Fitzgerald.

55.     Statement 2 is false.

56.     As a direct and proximate result of Defendant's libelous Statement 2, Fitzgerald has been damaged.

57.     Statement 2 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

58.     Statement 2 is libel *per se* because Statement 2 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

59.     Statement 2 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

60.     In relation to Statement 2, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

61.     Defendant had actual knowledge that Statement 2 was false and that making false statements like Statement 2 are wrong and likely to injure Fitzgerald.

62.     In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se*.

63.     Defendant made Statement 2 with the malicious intent to defame Fitzgerald.

64.     Statement 2 is unprivileged.

65.     As a direct result of Defendant's publication of Statement 2, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

66.     The wrongs and injuries caused by a statement like Statement 2 are presumed and

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

implied, and constitute libel *per se*.

67.     Statement 2 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

68.     Statement 2 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

69.     As a direct result of Defendant's Statement 2, Fitzgerald now feels ostracized both personally and professionally.

70.     As a direct result of Statement 2, Fitzgerald has not been permitted to work in his chosen career.

71.     As a consequence of Statement 2, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

72.     Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## <u>COUNT IV - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 3)</u>

73.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

*Fitzgerald v. William McNae*
Case No. _____

74.    This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

75.    Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

76.    Defendant has been, at all times pertinent, an employee of Microsoft.  Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

77.    On April 20, 2022, Defendant again contacted Chris Maulden of Microsoft stating that Fitzgerald preyed upon and assaulted his wife, Ronda McNae.  It states, in pertinent part:

78.    On May 2, 2022, W. McNae again contacted Chris Maulden of Microsoft as well as Leslie Pickering of Microsoft stating that Fitzgerald was a sexual predator that groomed and exploited his wife, Ronda McNae. It states, in pertinent part:

> While it may be a surprise to you, it's not a surprise to either my wife or myself: Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.
>
> As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

[BATES MCNAE 1317-1318] (hereinafter referred to as "Statement 3").  A true and correct copy of Statement 3 is attached hereto as **Exhibit D**.

79.    Statement 3 is about Fitzgerald.

80.    Statement 3 is false.

ASSOULINE & BERLOWE, P.A.
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

81.    As a direct and proximate result of Defendant's libelous Statement 3, Fitzgerald has been damaged.

82.    Statement 3 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

83.    Statement 3 is libel *per se* because Statement 3 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

84.    Statement 3 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

85.    In relation to Statement 3, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

86.    Defendant had actual knowledge that Statement 3 was false and that making false statements like Statement 3 are wrong and likely to injure Fitzgerald.

87.    In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se*.

88.    Defendant made Statement 3 with the malicious intent to defame Fitzgerald.

89.    Statement 3 is unprivileged.

90.    As a direct result of Defendant's publication of Statement 3, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

91.    The wrongs and injuries caused by a statement like Statement 3 are presumed and implied, and constitute libel *per se*.

92.    Statement 3 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

*Fitzgerald v. William McNae*
Case No. _____

93.     Statement 3 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

94.     As a direct result of Defendant's Statement 3, Fitzgerald now feels ostracized both personally and professionally.

95.     As a direct result of Statement 3, Fitzgerald has not been permitted to work in his chosen career.

96.     As a consequence of Statement 3, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

97.     Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT V - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 4)

98.     Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

99.     This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential

14

**ASSOULINE & BERLOWE, P.A.**
Miami Tower • 100 SE Second Street, Suite 3105, Miami, Florida 33131 • Telephone: (305) 567-5576

*Fitzgerald  v. William McNae*

Case No. _____

Settlement Agreement void or otherwise unenforceable as against Defendant.

100.    Defendant has engaged in ongoing, continuous, and malicious behavior in which

he has repeatedly placed into the public domain false, malicious, and damaging information about

Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

101.    Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft

was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in

contact with Defendant and his wife.

102.    On July 13, 2022, W. McNae again contacted Microsoft referring to Fitzgerald

indirectly and accusing him of raping his wife, Ronda McNae.  The letter provides, in pertinent

part:

> The CIO placed so much importance on joining him that when my flight couldn't arrive in time
> to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because
> I knew the CIO's girlfriend had also canceled her attendance at the last moment and I felt
> personally responsible to demonstrate support at the celebration.  This was not my family's first
> interaction with him; he had introduced his girlfriend to us and a friendship between the four of
> us had developed over the prior three months.  We felt the pressure of her canceled attendance
> and somehow believed we owed him to go in her place.  I was afraid of the negative
> repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in
> my place, which ultimately resulted in her incapacitation.  While my wife was unable to give
> consent, the CIO sexually assaulted her.
>
> My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing
> mental health issues including anxiety and depression, as well as stress from continuing to
> support this Partner organization until I could no longer stand it and reported to my Manager
> four months after the assault.

[BATES MCNAE 1275-1277] (hereinafter referred to as "Statement 4"). A true and correct copy

of Statement 4 is attached hereto as **Exhibit E**.

103.    Statement 4 is about Fitzgerald.

104.    Statement 4 is false.

105.    As a direct and proximate result of Defendant's libelous Statement 4, Fitzgerald

15

*Fitzgerald v. William McNae*

Case No. _____

has been damaged.

106.    Statement 4 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

107.    Statement 4 is libel *per se* because Statement 4 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

108.    Statement 4 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

109.    In relation to Statement 4, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

110.    Defendant had actual knowledge that Statement 4 was false and that making false statements like Statement 4 are wrong and likely to injure Fitzgerald.

111.    In Florida, rape and sexual assault are felony crimes.  In Florida, false statements indicating a person committed a felony constitute libel *per se.*

112.    Defendant made Statement 4 with the malicious intent to defame Fitzgerald.

113.    Statement 4 is unprivileged.

114.    As a direct result of Defendant's publication of Statement 4, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

115.    The wrongs and injuries caused by a statement like Statement 4 are presumed and implied, and constitute libel *per se.*

116.    Statement 4 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

117.    Statement 4 caused others to avoid Fitzgerald, such as his former employer,

SoftwareONE and its employees, as well as partnered companies.

118.   As a direct result of Defendant's Statement 4, Fitzgerald now feels ostracized both personally and professionally.

119.   As a direct result of Statement 4, Fitzgerald has not been permitted to work in his chosen career.

120.   As a consequence of Statement 4, Defendant damaged Fitzgerald in an amount in excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

121.   Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

## COUNT VI - ALTERNATIVE COUNT: LIBEL PER SE (STATEMENT 5)

122.   Plaintiff Fitzgerald adopts by reference, as if set out fully and completely in this Count, Paragraphs 1-19 of this Amended Complaint.

123.   This count is brought *in the alternative* to Count I in the event that Defendant argues that the Confidential Settlement Agreement is void as against public policy or otherwise unenforceable.  Plaintiff Fitzgerald asserts this count in the event the Court deems the Confidential Settlement Agreement void or otherwise unenforceable as against Defendant.

*Fitzgerald  v. William McNae*

Case No. _____

124.    Defendant has engaged in ongoing, continuous, and malicious behavior in which he has repeatedly placed into the public domain false, malicious, and damaging information about Fitzgerald accusing Fitzgerald of sexually assaulting and raping his wife, Ronda McNae.

125.    Defendant has been, at all times pertinent, an employee of Microsoft. Microsoft was a large global business partner with SoftwareONE in 2019 and 2019 when Fitzgerald was in contact with Defendant and his wife.

126.    On July 15, 2022, W. McNae wrote a letter to John Wylie of John Wylie law, Jenny Martinez of Munck Wilson (outside counsel for SoftwareONE), and John Mayes of SoftwareONE in which he accused Fitzgerald of lying about the nature of his relationship with Ronda McNae.  It stated, in pertinent part:

> Mr. Fitzgerald met my wife, Ronda, during a SoftwareONE evening event in July 2019. He leveraged his executive role beyond the relationship with me to justify developing a direct friendship with my wife. He paid for all travel & entertainment expenses for my family to join he and his girlfriend to celebrate the accomplishment of SoftwareONE's IPO. A "consensual affair" was fabricated by Mr. Fitzgerald to hide his actions which have been documented in the 3 police reports.

[BATES MCNAE 1353-1355] (hereinafter referred to as "Statement 5").  A true and correct copy of Statement 5 is attached hereto as **Exhibit F.**

127.    Statement 5 is about Fitzgerald.

128.    Statement 5 is false.

129.    As a direct and proximate result of Defendant's libelous Statement 5, Fitzgerald has been damaged.

130.    Statement 5 is libel *per se* because the defamatory words Defendant used against Fitzgerald are meant to prejudice others regarding Fitzgerald's reputation, office, trade, business, or means of his livelihood.

131.    Statement 5 is libel *per se* because Statement 4 accuses Fitzgerald of committing a felonious sexual crime (i.e. rape).

132.    Statement 5 was intended to degrade Fitzgerald, bring him into ill repute, destroy others' confidence in his integrity, or to cause other injury.

133.    In relation to Statement 5, Defendant intentionally made numerous other statements that Fitzgerald raped Ronda McNae.

134.    Defendant had actual knowledge that Statement 5 was false and that making false statements like Statement 4 are wrong and likely to injure Fitzgerald.

135.    In Florida, rape and sexual assault are felony crimes. In Florida, false statements indicating a person committed a felony constitute libel *per se*.

136.    Defendant made Statement 5 with the malicious intent to defame Fitzgerald.

137.    Statement 5 is unprivileged.

138.    As a direct result of Defendant's publication of Statement 5, Defendant naturally and proximately caused injury to Fitzgerald in his personal, social and business relations of life.

139.    The wrongs and injuries caused by a statement like Statement 5 are presumed and implied, and constitute libel *per se*.

140.    Statement 5 exposed Fitzgerald to distrust, hatred, contempt, ridicule and/or obloquy.

141.    Statement 5 caused others to avoid Fitzgerald, such as his former employer, SoftwareONE and its employees, as well as partnered companies.

142.    As a direct result of Defendant's Statement 5, Fitzgerald now feels ostracized both personally and professionally.

143.    As a direct result of Statement 5, Fitzgerald has not been permitted to work in his chosen career.

144.    As a consequence of Statement 5, Defendant damaged Fitzgerald in an amount in

excess of the jurisdictional limits of this Court, which has been ascertained to be $657,228.00 in economic damages alone.

145.    Defendant's actions were willful, wanton, and intentional, and with malice or reckless indifference to Fitzgerald's rights, thus entitling Fitzgerald to damages in the form of compensatory damages pursuant to state law, to punish Defendant for his actions and to deter him, and others from such action in the future.

**WHEREFORE**, Plaintiff Michael Fitzgerald demands judgment against Defendant William McNae for compensatory damages in an amount in excess of the jurisdictional limits of this Court, plus post-judgment interest, and continuing until paid in full, and for such other relief as is deemed just and proper.

Date: November 2, 2023                    Respectfully submitted,

**ASSOULINE & BERLOWE, P.A.**
Miami Tower
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
Telephone: 305-567-5576
Facsimile: 305-567-9343

By:*/s/ Peter E. Berlowe*
Peter E. Berlowe
Florida Bar No. 143650
peb@assoulineberlowe.com
Meredith J. Gussin
Florida Bar No. 0512303
mjg@assoulineberlowe.com
*Attorneys for Plaintiff Michael Fitzgerald*

**EXHIBIT A**

## Confidential Settlement Agreement

**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement" or the "Agreement") is made and entered this _15th_ day of June 2020, by and among MICHAEL J. FITZGERALD ("Fitzgerald"), RONDA MCNAE ("Ronda") and WILL MCNAE ("Will") with Ronda and Will collectively referred to as the "McNaes," and Fitzgerald, Ronda, and Will collectively referred to as the "Parties";

### RECITALS

**WHEREAS,** Ronda and Will are a married couple;

**WHEREAS,** Fitzgerald is a single male;

**WHEREAS,** the McNaes contend that Fitzgerald caused physical injury and mental injury to them in Miami-Dade County, Florida as a result of Fitzgerald's alleged sexual conduct towards Ronda;

**WHEREAS,** for purposes of avoiding the time and costly expenses associated with litigation, and in the interest of economic expediency, the Parties desire to reach a settlement of all claims between and among themselves; and,

**WHEREAS,** the parties wish to resolve all disputes between and among them;

**NOW THEREFORE** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them.

1. **RECITALS.** The Parties acknowledge that the "WHEREAS" clauses preceding paragraph 1 are true and correct, and are incorporated herein as material parts of this Agreement.

2. **NO ADMISSION OF LIABILITY.** The Parties agree to amicably settle all disputes between and among them. The Parties understand that this Agreement is in full and complete compromise of all disputed claims, both as to questions of liability and damages, including any claims for punitive damages, without an admission of liability or any wrongdoing by any of the Parties, any such liability or wrongdoing being expressly denied by each of the Parties.

3. **CONSIDERATION.** In consideration of the execution of this Agreement and the promises herein contained, the Parties agree to the following:

   A. _Payment of Settlement Funds._ On or before June 19, 2020, Fitzgerald agrees to remit payment in the amount of Ninety-Seven Thousand Dollars and 00/100 cents ($97,000.00) to Ronda McNae and remit payment in the amount of Ten Thousand Dollars and 00/100 cents to Will McNae (collectively the "Settlement Funds"). The Settlement Funds to

Page 1 of 5

Ronda's Initials: _____ Will's Initials: _____ Fitzgerald's Initials: _____

MCNAE 000001

Ronda McNae are paid in consideration of the physical and mental injuries she claims, and the settlement funds to Will McNae are in consideration of his loss of consortium claims due to the physical and mental injuries suffered by his wife Ronda. The Settlement Funds shall be remitted by wire to the Max Meyers Law PLLC Trust Account with the following wiring instructions:

> MAX MEYERS LAW PLLC IOLTA TRUST ACCOUNT WIRE INTRUCTIONS.
> Banner Bank - ABA Routing #██████1076 and Account #██████5818

**4.** **NON-MONETARY TERMS.** The Parties agree to the following non-monetary terms:

**A.** The McNaes shall remove any prior or current internet posts that reference Fitzgerald by name. The McNaes may speak or write generically about their life events, but in speaking or writing about their life events, the McNaes cannot refer to Fitzgerald's name, likeness, being, nationality, country of citizenship, location of residence, employer, job function, job title, profession, or reference to dates, locations, or other persons present. For instance, Ronda cannot name six people at an event, plus and unnamed person, so that the six people will know who the unnamed person is by process of elimination. Thus, it shall be a breach of this Agreement for the McNaes to indirectly refer to Fitzgerald in a way the McNaes could not do directly.

**B.** The McNaes shall not contact Fitzgerald's employer. If Mr. Fitzgerald's employer contacts either of the McNaes, the McNaes shall respond, "the matter has been resolved and I cannot speak any more about it," or words to that effect.

**C.** Notwithstanding the confidentiality provision in Section 16, below, the Parties may continue discuss the matter with their respective mental health professionals, but will advise the mental health professionals of this existence of this Agreement and those mental health professionals must follow this Agreement, as well.

**D.** The Parties agree to minimize contact upon execution of this Agreement, and they agree to limit such contact as to be only such contact necessary to enforce the terms of this Agreement, with such contact preferably being by the Parties' respective attorneys.

**5.** **REPRESENTATIONS AND WARRANTIES.** In making and executing this Agreement, the Parties represent, warrant and agree as follows:

**A.** The Parties have had an opportunity to seek independent legal advice with respect to their rights and asserted rights arising out of the matters in controversy and with respect to the advisability of executing this Agreement.

**B.** The Parties have made such investigation of all matters pertaining to this Agreement as they deem necessary, and do not rely on any statement, promise or representation by the other Parties hereto with respect to this matter.

**6.** **NO CHALLENGE TO SETTLEMENT.** The Parties agree that they will take no action, including, but not limited to the institution of a lawsuit or administrative claim, to

Page **2** of **5**

Ronda's Initials: _____    Will's Initials: _____    Fitzgerald's Initials: _____

challenge any provision of this Agreement or regarding the original matter in controversy.

**7.    NO ADMISSION.**  Neither the negotiation nor the execution of this Agreement, nor any of its provisions, are to be construed as an admission by any of the Parties hereto, nor by their respective attorneys, or trustee regarding the truth of any matter alleged relating to the matter of controversy.

**8.    INTEGRATION.**    This Agreement constitutes a single, integrated written contract expressing the entire Agreement between the parties.  There are no other Agreements, written or oral, expressed or implied, between the parties, except as set forth in this Agreement.

**9.    SEVERABILITY.**    Should any part, term or provision of this Agreement be decided by the courts to be illegal, unenforceable or in conflict with any state or federal law or any other applicable law, the validity and enforceability of the remaining portions of this Agreement shall not be affected thereby.

**10.    DOCUMENT PREPARATION.**    If it becomes necessary for any reason to construe this Agreement as permitted by the Rules of Evidence of the State of Florida, this Agreement will be construed as being jointly prepared and written. The Parties agree that the terms and conditions contained herein have been negotiated, renegotiated and considered several times by the parties. The fact that one party or the other prepared the actual final draft of this Agreement shall not be construed as having created any ambiguity.  Should it become reasonably necessary for the parties to prepare additional documents to carry out the intent of this Agreement, each Party agrees to cooperate in the preparation, execution and delivery of same.

**11.    BINDING EFFECT.**  This Agreement shall be binding upon and inure to the benefit of the parties, and their respective successors, heirs, personal representatives and assigns.

**12.    NO WAIVER.**    No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

**13.    MUTUAL GENERAL RELEASE.** The Parties agree that they each on their own behalf and on the behalf of any heirs, assigns, beneficiaries, past or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, trustees, and any other person or entity bearing a legal relationship as a predecessor or successor in interest and anyone claiming any rights derived from any of them, forever release, discharge, and hold each other and each other's past, present or future affiliates, shareholders, parents or subsidiaries, attorneys, sureties or insurers, employees, officers, directors, agents, and any entity bearing a legal relationship as predecessor or successor in interest, harmless of, and from, any all claims, causes of action, suits, debts, agreements, promises, demands, liabilities, contractual rights and/or obligations, or claims arising in tort, or of whatever nature, in law or in equity, arising out of, or related to, the direct claims asserted and any other claims that could be asserted, any counterclaims, any third-party claims, and any claims to attorneys' fees and cost, whether or not the claim was raised, or could have been raised. The Parties agree that this Release is not intended as an admission of any wrongdoing or liability on the part of any Party, and that this Release is not

Ronda's Initials: _____    Will's Initials: _WM_    Fitzgerald's Initials: _____

MCNAE 000003

admissible as evidence in any proceeding as an admission of liability. The Parties warrant that they have not made any assignment of any right, claim, or cause of action covered by this Release to any other person, corporation or other legal entity.

**14.    GOVERNING LAW.**  This Agreement shall be deemed to be made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed under the laws of Florida, without giving effect to the conflict of laws principals of Florida law. The Parties agree that venue for any litigation brought to enforce this Agreement shall lie exclusively in any court of competent jurisdiction in Miami-Dade County, Florida.

**15.    EXECUTION.**  This Agreement may be made effective by means of facsimile signatures executed on several identical counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**16.    CONFIDENTIALITY.**    The Parties warrant that they have not and will not disclose, communicate, disseminate and/or publicize, or cause or permit to be disclosed, communicated, disseminated or publicized the existence of or terms and conditions of this Agreement to any person, business, organization, corporation, association, governmental agency, except as follows: (1) to the extent necessary to report income to appropriate taxing authorities; (2) to their respective attorneys and accountants; (3) in response to requirements of law or a subpoena issued by a state or federal court or governmental agency, provided, however, that notice of receipt of such judicial order or subpoena immediately be communicated to counsel for the opposing party telephonically. The McNaes further acknowledge and agree that this provision is a material inducement to the Fitzgerald's agreement to pay the Settlement Funds. Therefore, the McNaes agree and acknowledge that any violation of this section or disclosure of any of the terms of the Settlement Agreement beyond the exceptions identified above in this section shall constitute a material breach of this Agreement.

**17.    NON-DISPARAGEMENT.**        The Parties agree that they will not disparage each other, by written or oral word, gesture, or any other means, nor will they make any disparaging or negative comments about each other, to any person or entity.

**18.    NO FURTHER OBLIGATIONS.**  The Parties agree that, aside from the obligations set forth in this Agreement, no party owes any other party any monies or benefits.

**19.    BINDING NATURE OF AGREEMENT.**  This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit and/or detriment of each party and to their respective heirs, administrators, representatives, executors, successors and assigns.

**20.    MODIFICATION OF AGREEMENT.**    This Agreement may be amended, revoked, changed, or modified only upon written agreement executed by all Parties. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom such waiver is charged.

**21.    SELECTIVE ENFORCEMENT.**  The Parties agree that the failure of any party to enforce or exercise any right, condition, term or provision of this Agreement shall not be

Page 4 of 5

Ronda's Initials:_____ Will's Initials:_____ Fitzgerald's Initials:_____

MCNAE 000004

construed as or deemed to be a waiver or relinquishment thereof, and the same shall continue in full force and effect.

**22.    ENTIRE AGREEMENT.**  This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof.

**23.    ATTORNEYS' FEES.**    In connection with any litigation arising out of this Agreement or in any way related to this Agreement, the prevailing party shall be entitled to recover all costs incurred including, but not limited to, its reasonable attorneys' fees at any level (trial, appeal, bankruptcy, administrative), including fees spent in litigation over entitlement or amount of such fees.

**24.    HEADINGS.** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

**25.    COUNTERPARTS AND FACSIMILE SIGNATURES.** This Agreement may be executed in two or more counterparts, each of which may be considered an original, and all of which together shall constitute one and the same document.  Facsimile or scanned copies of signature pages shall be treated as original signature pages.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties as of the Effective Date.

| | |
|---|---|
| _Ronda McNae_     6-15-2020 | _Will McNae_     6-15-2020 |
| Ronda McNae          Date | Will McNae          Date |

_Michael Fitzgerald     6-16-2020_
Michael Fitzgerald        Date
Allan D. Lederman, Trustee

Page 5 of 5

**Ronda's Initials:** ___   **Will's Initials:** WM   **Fitzgerald's Initials:** ___

MCNAE 000005

EXHIBIT B

# STATEMENT 1

**From:** Chris Maulden <chrismaulden@microsoft.com>
**Sent:** Tuesday, April 12, 2022 6:04 PM
**To:** Will McNae <will.mcnae@microsoft.com>
**Subject:** RE: Microsoft Corporation Shareholder Resolution Project

Thanks for responding, Will. I am out of the office tomorrow, and will connect with you on Thursday or Friday this week.

Regards,

Chris



Chris Maulden
Senior Employee Relations Manager Lead – Global
Employee Relations, Americas
chrismaulden@microsoft.com
(571) 778-6367

Find what you need on **HRWeb**



***Please note I am in the Eastern Standard Time zone***

**Out of Office: 5/26/22-5/31/22**

---

**From:** Will McNae <will.mcnae@microsoft.com>
**Sent:** Tuesday, April 12, 2022 4:00 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Cc:** Ande Ferretti <anferret@microsoft.com>
**Subject:** FW: Microsoft Corporation Shareholder Resolution Project

Hello Chris,
Thank you for your voicemail touching base regarding a conversation you had with David Totten. I was in process of sending the below note to Ande based on a referral by Mr. Stevens at Arent Fox. I would welcome a discussion with you this week.
Regards,
Will


Hello Ande,

My name is Will, and I am an employee within the US GPS organization in a security solution architect role in David Totten's technical org. I am married to a wonderful woman, Ronda McNae, who is not an employee but unfortunately is at the center of this painful incident which I am sharing. I received your name from the Arent Fox attorney, Michael Stevens, after reaching out to their firm inquiring about the scope of the Shareholder Resolution Project services. I was provided your name when Mr. Stevens notified me that my incident was not in scope.

MCNAE 001321

I still hold on to hope that my experience from 2019 can positively affect change at Microsoft. **I am reaching out to you to find someone willing to hear the full story and request an in-person meeting.**

I would like an opportunity to share our experience from the past 2 years, provide updates from our efforts with law enforcement, and brainstorm actionable accountability and change. I'm not confident US HR (or CELA) fully understood our story when we reported in March 2020. I believe this based on the abrupt response I received from HR which did not ask for more information or prompt an investigation into my allegations. Upon receiving this response, I was left feeling alone and on our own to figure out how to hold an executive at a global partner organization accountable for his harmful actions towards my wife and me. I am thankful for a manager, director and CTO who were willing to listen and support our family as best they could with their limited resources and knowledge.

Since March 2020, I have reached out to multiple people across HR and CELA asking for help and advocacy. Specifically, advocacy and support would include an opportunity to establish a change in our internal HR systems when employees come forward to report sexual assault, rape, and harassment charges. For example, I was approached by a female teammate just yesterday asking what she needed to be aware of so that she would never be harmed in a way that my wife was with a Partner. That sad part is – I still don't know what to tell her about the legitimate workplace resources are available to us. She shared that she had previously felt harassed by a male co-worker but didn't report because of shame and lack of a safe reporting process. I do not want any teammate or colleague to experience our pain or hide in the dark because they were too ashamed to come forward.

Because my sexual battery allegation involves my spouse, I do not believe it deserves any less attention to investigate the incident or uphold the violated Vendor Code of Conduct established with Partner organizations. As a victim of sexual battery, the lack of willingness by HR to demonstrate advocacy for an employee and their spouse, when it was a result of a work relationship, has been emotionally exhausting and damaging. A quick summary – the CIO of one of the largest global revenue billing partners took advantage of my work relationship to develop a trauma-based friendship with my family, which ultimately resulted in raping my wife and threatening me on a Redmond campus when I confronted him about criminal misconduct (reported to HR; also reported to Redmond Police Dept.). To be told by US HR that Microsoft has "zero liability" regarding this incident has haunted me for 2 years. Especially when I never reported this allegation as the fault of Microsoft – but asked for help since the relationship was so tightly connected to my work relationship.

This past July I had reached a maximum frustration level with trying to politely ask for help from HR, so I wrote and submitted a complaint letter. Since that letter, I have spoken with HR and CELA, my wife and I have filed 3 police reports, and we have provided over 15 hours of in-person, sworn verbal and written statements to the Redmond, Miami, and San Francisco police departments who are investigating charges of sexual battery. It has been very difficult overcoming the challenges and fears to hold this executive accountable.

I am including excerpts from my letter to provide context (full letter attached). In the end, Microsoft may still hold firm with a posture of zero-liability and an unwillingness to take any proactive action – but I am trying to push for positive change based on my experience.

### Complaint Summary:

Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally, although I had substantial evidence to prove that multiple policies within the Partner/Vendor code of conduct had been violated, alongside

potential criminal laws.

If we had been properly supported by Microsoft's resources when we made our HR report in March 2020, we would have been empowered to act differently to resolve this matter—pursuing criminal charges instead of waiting until 2021 to file a police report.  After a great deal of therapy (ongoing), my wife and I are better able to recognize our reactive, trauma-induced responses through those 8 months and the time since. In the darkest period, my wife and I were barely hanging on, living in cognitive dissonance while the individual continued to execute his power dynamic using manipulation, fear and gaslighting.  His predatory behavior took advantage of us, and his lies almost ripped our marriage apart, leading me down a dark path to suicidal thoughts during the holidays.

**Why formally complain now?**

Reporting this complaint now has not been an easy decision.  It would be easier to continue to be quiet and compliant, not ruffling feathers as this may also set me up for inspection or consequences for my actions in some way.  However, I felt it was essential to speak up about our current process and lack of systems to help employees report and gain support when it comes to topics of sexual assault, rape, and harassment.  HR needs a system in place that offers those who have been harmed on the job—or because of work-related relationships—well-trained, empathetic experts, and advocates to help through their time of crisis and trauma.  In hindsight, I wish I could have taken an extended period of time away from work, but I felt it was not appropriate based on the job requirements and expectations to avoid showing weakness.  My manager helped me take advantage of 6 weeks of Covid time off (June-July 2020), which helped greatly, and I am forever grateful to his empathy and patience – but even with this in mind, I broke up my time and returned to work halfway through to complete business planning and be present.

We reported these incidents to HR a month before Satya's April 2020 mail to all employees sharing updates about a new Employee Advocacy team being established for workplace sexual harassment.  I am unsure what would need to change to get the attention required—perhaps if I were more senior or female, HR would have done more to investigate these incidents, support me, call to check on my health, or inspect the violated vendor code of conduct policies.  Or, if I had taken my life in my darkest hour, would Microsoft have paid attention once the truth was uncovered that a work relationship caused enough harm to myself and marriage that I didn't see an alternative way out of a hostile work environment?  I raise this to point out the disconnect between what I believe is Microsoft's intent to be a supportive employer with zero tolerance for sexual assault and my own experience with HR's dismissiveness of my concerns.  I believe Microsoft needs and should do more to support and advocate for their employees regardless of gender, position, or technicality of "during work hours."

Regards,
Will

Will McNae
Partner Strategy Architect – Security, Compliance & Identity, US GPS
Security COE:  uspartnercoe@microsoft.com

EXHIBIT C

# STATEMENT 2

Will

**From:** Will McNae <will.mcnae@microsoft.com>
**Sent:** Wednesday, April 20, 2022 5:43 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Subject:** Re: Microsoft Corporation Shareholder Resolution Project

Chris,

I'm declining our phone call scheduled for Monday, instead I want to share a few thoughts.

In my April 12th email I specifically asked for an in-person meeting. Although not explicitly, I did ask for an opportunity to meet face to face during our phone call on April 15th.

After (roughly) two dozen phone calls with MS HR, CELA, and workplace investigations- I've remained at a standstill. There's been no forward positive movement, recourse, assistance, support, or consequence to the partner violating MS Partner Code of Conduct Agreement.

There were a few things you mentioned on our call that cause me to continue feeling dismissed and not heard which further supports my request for an in-person meeting to accomplish my goals:

You were more curious about my female co-worker's situation than asking probing questions to better learn about the harassment incident I encountered at Building 92. HR (STILL) never followed up with that particular incident to do any kind of internal investigation. I can't help but recognize the obvious gender conflict in this.

As I wrapped up sharing more details regarding the incident at building 92 where I stated that Mike Fitzgerald said to my face, during work hours, on work campus "I have given up drinking because I know if I was out at a bar and if someone were to set me off, I would destroy them".

I then asked you if that helped provide enough clarity and your response immediately following, "Yup that does. It pretty much aligns with what was in the Police report and gives some clarity, thank you. So I know you said you don't want to share with me any information about the co-worker who said they felt like they were or they experienced discrimination or harassment. I really want to revisit that".

Do you understand the disconnect? Or at least recognize how this continues to go sideways?
Regarding company resources and investigative policies, there was a 'misunderstanding of parameters' regarding my incident since it does not align to the criteria of a workplace issue.  I believe the misunderstanding is on Microsoft's part. I have case notes and evidence to support why this is a workplace issue due to the first meeting taking place at a work event and the grooming behavior was enabled because of the work relationship. But again, no one from HR followed up with me to validate or verify. Instead, HR held onto third party heresy.

And finally, since this didn't involve Microsoft business, there is no obligation on Microsoft's part.  Again, I do not agree with this.

My wife has been connected to Gretchen Carlson by a mutual friend. Gretchen has kindly taken Ronda under her wing. Gretchen unfortunately had been on the receiving end of sexual harassment/workplace harassment with Fox News. Her story is similar to my wife but I connect more with Gretchen regarding the broken systems within workplace investigations and HR. In transparency my wife was then introduced to a couple investigative reporters and has shared her story plus evidence proving these assaults were premeditated and calculated. Mike Fitzgerald

MCNAE 001319

abused his work relationship with me to prey and assault my wife and harass then threaten me assuming I would be too afraid to speak up.

To close, I am requesting an in-person meeting so that I can properly discuss the following topics since the complexity still does not seem to be getting communicated:

1) Why was this incident not investigated and categorized as 'not involving Microsoft' and 'no harm done to the employee'?
2) Financial reimbursement for out-of-pocket counseling costs not covered by MS Cares which has been substantial on top of what we have to cover for legal costs; travel, childcare, and legal help.
3) Investigation into the broken Partner/Vendor Code of Conduct policies (specifically sexual assault/harassment and anti-corruption)
4) Short Term Disability Leave time not counting against me during the annual Rewards calculation since I took time to work on resolving this criminal case and will likely need to take more for the continued legal case.
5) Communication to SoftwareONE based on factual events regarding their CIO.
6) How we can create a victim's advocate program that supports victims? How can we move to reevaluate case by case? My wife isn't the first nor will she be the last on the receiving end of treatment life this but MS can't repeat what has been done to me and my family.

Please let me know whom I can be introduced to for a Redmond-based discussion. I am sharing additional parts of information so that your team can assess the magnitude of the work relationship damaging our personal relationships (below and attached).

Regards,
Will

Factual statements:

• Microsoft was made aware of allegations regarding SoftwareONE's CIO, Mike Fitzgerald, in February 2020 involving the Microsoft employee Will McNae and his wife, Ronda McNae. Several SoftwareONE employees were made aware of such details, but an official report was not filed with John Mayes, Global HR.
• Due to the sexual assault and battery reports, which also included harassment on campus during work hours in February 2020, Microsoft removed our employee from the hostile work environment with SoftwareONE.
• Will's role at the time was Partner Technology Strategist.
• Ronda McNae first met Mr. Fitzgerald at a SoftwareONE event in Bellevue, WA in July 2019, when attending as a guest of Will McNae. As a result of getting to know Mr. Fitzgerald and his girlfriend, a friendship developed between July – November 2019.
• Microsoft has been made aware that the McNae's have filed Police reports in Miami, San Francisco, and Redmond.
• Microsoft's Partner/Vendor Code of Conduct was violated due to the allegation descriptions which involved sexual assault and battery, and anti-corruption, which do not uphold the representation of either company's code of conduct.
• Microsoft was informed that an NDA was signed between Mr. Fitzgerald and McNae's although Ronda McNae felt forced to sign under duress. Law enforcement communicated to the McNae's the NDA is not applicable considering it was established to conceal details of a crime and/or poor conduct.
• The effects of these allegations are still being felt by our employee while his wife Ronda McNae suffers with "Complex PTSD" symptoms that still affect her daily life.

EXHIBIT D

# STATEMENT 3

**Date : 5/2/2022 5:17:39 PM**
**From : "Will McNae"**
**To : "Chris Maulden" chrismaulden@microsoft.com**
**Cc : "Leslie Pickering" lesliep@microsoft.com**
**Subject : RE: Microsoft Corporation Shareholder Resolution Project**
**Attachment :**
**Microsoft_Partner_Code_of_Conduct_English.pdf;image002.png;image003.jpg;image004.jpg;image005.png;image006.png;image007.png;image008.png;**

Chris,
I also wanted to call out the **Professional Conduct** that is included in the Partner/Vendor Code of Conduct.  It is always actionable per our agreement with Partners.

## Professional Conduct

Microsoft Partners will conduct themselves in a professional manner at all times, helping Microsoft to create an inclusive, productive, respectful and professional environment, free from any forms of discrimination or harassment.

- **Inappropriate Language:** Microsoft Partners will not use any form of language which may be considered discriminatory, intimidating, harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate.

- **Treat Others with Fairness, Dignity and Respect:**  Microsoft will not tolerate, and Microsoft Partners must not engage in, any form of sexual or other harassment.  Sexual harassment is unwelcome verbal or physical behavior based on sex and includes gender-based harassment of a person of the same gender.  Examples include unwelcome sexual advances or physical contact, sexual comments or inappropriate gender-based jokes, unwelcome romantic attention, offering a benefit or preferential treatment in exchange for sexual favors, sharing or displaying sexually explicit content and using sexually degrading words.  Other examples of harassment include comments, jokes or degrading words based on race, sex, national origin, religion, age, disability, gender identity or expression, marital status, medical condition, physical or mental disability, pregnancy, sexual orientation, political affiliation, union membership, veteran status or other protected characteristics or status.

- **Event Behavior:**  In any event sponsored or hosted by Microsoft or during which Microsoft Partners may interact with any Microsoft employees, agents, subcontractors or customers, regardless of location, Microsoft Partners must behave in a professional manner including responsible alcohol use and continued adherence to this Partner Code of Conduct.

Microsoft Partner Code of Conduct (2019)(English)                                                   3

---

**From:** Will McNae
**Sent:** Monday, May 2, 2022 12:54 PM
**To:** Chris Maulden <chrismaulden@microsoft.com>
**Cc:** Leslie Pickering <lesliep@microsoft.com>

MCNAE 001317

**Subject:** RE: Microsoft Corporation Shareholder Resolution Project

Chris,

I am unable to respond to your last email due to restrictions – I wish to include my director on this thread.

In full transparency, your email has me a bit confused. Based on our phone conversation, you made no indication your role was to "further investigate" my case/HR report. Would you also be clear in your role and how this plays a part in my situation (besides researching benefits), please?

On our phone call you had stated, "*Our job is really to work with employees to navigate through concerns related to workplace behavior and policy violations*" and a reference to "the decision" being made by someone else.

Then, "*The misalignment is your situation doesn't fall within the parameters of being a workplace issue and is better handled by local authorities. If something happens in the workplace or in the course of work, that's where Microsoft has an obligation, we can actually get involved*".

Lastly, "*With the exception that occurred at the MS building, the other things that have occurred don't fall within MS's ability to have an impact.*"

Unfortunately, Microsoft continues to see my case and these crimes through a lens that works from a PR standpoint. The company couldn't be more wrong and off base. Oddly enough, my wife connected with a Special Agent from the FBI who helped crack the "Yosemite Murders" and in 2003 received the California Sexual Assault "Investigator of the year award". I decided to watch 20/20 to learn more about criminal profiling and how horrendus sex crimes are solved.

While it may be a surprise to you, it's not a surprise to either my wife or myself: Predators have a script. They have a process. A grooming period. It's calculated and premeditated. The sad part, my wife even gathered evidence to show MS however no one from HR was open to follow up and look at what she had compiled.

As an employee of MS, I am telling you, this man is a sexual predator that began grooming and exploiting my wife the moment he met her at a WORK EVENT and continued under the pretext of my work relationship. I fear for other female employees within our company that work alongside him and at this point the company continues to be a complicit bystander. The question I pose to Microsoft HR is "will you still claim "zero liability" once you learn more victims come forward?"

ASK: I am requesting an in-person meeting to continue this conversation and investigation. There should have already been an "in-person" follow-up discussion due to the nature and sensitivity of my report in 2020. I have had 2 years' worth of phone calls and I am confident that progress has not been made. Since I am a Redmond-based employee, meeting with a colleague of yours in one of the back-to-work buildings would make sense. I am willing to approach this with a line in the sand focused on going forward (and not on inspecting what was / wasn't done in the past).

You have a daughter. I have a daughter. We can't continue to turn a blind eye while women continue to be harmed otherwise, we miss the opportunity to make positive changes for them and potentially be looked at as complicit.

Sincerely,

MCNAE 001318

EXHIBIT E

# STATEMENT 4

To:  Microsoft                                                                July 13, 2021

I love working for Microsoft.  The people on my team are amazing, my manager and leadership team are empathetic, helping us achieve strategic results.  My LT recognizes me as a top performer and I consistently receive outstanding reviews and compensation awards.  I have been responsible for leading and influencing dozens of new technical solutions with Partners while helping one Partner add over $1billion in new customer revenues.  For all the pride and gratitude I have in my work at Microsoft, I am at a point where I can no longer stay silent.  I must formally make a complaint regarding Microsoft's dereliction of duty, which is at odds with the values Microsoft strives to represent and has resulted in significant harm to me and my family.

**Context:**
From 2018-2020, I worked closely with the CIO of a global software/services Partner.  This Partner represented a significant account and I was eager to build a positive relationship. Ultimately, this individual took advantage of our unequal power dynamic to assault my wife and subject both of us to prolonged abuse and mistreatment over eight months.

I was responsible for influencing and winning technical mindshare in a heavily competitive environment against AWS and Google.  I felt deeply responsible for winning new business on our platforms and felt this individual's invitation to attend his IPO celebration weekend was imperative to maintain credibility, as well as bolster my influential relationship with him and their organization.  At the time, I was covering for the loss of my PDM who had been let go from Microsoft a month earlier.  Acting as both PTS and PDM induced enormous pressure to succeed and I was concerned about losing significant momentum if I were not present.

The CIO placed so much importance on joining him that when my flight couldn't arrive in time to join the dinner, I asked my wife to go in my place. I partially asked my wife to attend because I knew the CIO's girlfriend had also canceled her attendance at the last moment and I felt personally responsible to demonstrate support at the celebration.  This was not my family's first interaction with him; he had introduced his girlfriend to us and a friendship between the four of us had developed over the prior three months.  We felt the pressure of her canceled attendance and somehow believed we owed him to go in her place.  I was afraid of the negative repercussions towards me and Microsoft if we missed this event. My wife attended his dinner in my place, which ultimately resulted in her incapacitation.  While my wife was unable to give consent, the CIO sexually assaulted her.

My wife bears the trauma and emotional scars from the rape, but I continue to battle ongoing mental health issues including anxiety and depression, as well as stress from continuing to support this Partner organization until I could no longer stand it and reported to my Manager four months after the assault.

**Complaint Summary:**

Microsoft HR should have (and could have) done more to support and protect me as an employee. A formal investigation was not kicked off internally or externally, although I had substantial evidence to prove that multiple policies within the Partner/Vendor code of conduct had been broken, alongside potential criminal laws.

If we had been properly supported by Microsoft's resources when we made our HR report in March 2020, we would have been empowered to act differently to resolve this matter—pursuing criminal charges instead of waiting until 2021 to file a police report. After a great deal of therapy (ongoing), my wife and I are better able to recognize our reactive, trauma-induced responses through those 8 months and the time since. In the darkest period, my wife and I were barely hanging on, living in cognitive dissonance while the individual continued to execute his power dynamic using manipulation, fear and gaslighting. His predatory behavior took advantage of us and his lies almost ripped our marriage apart, leading me down a dark path to suicidal thoughts during the holidays.

Because of the genuine relationship and deep level of trust established with my Manager, I felt brave enough in February 2020 to finally speak to him about these incidents. He listened, asked questions, and with my permission contacted his Director regarding next steps. Our Director was significantly empathetic and wanted to help as much as she could. She followed the guidance of contacting HR on my behalf to ask for help. She was provided what I believe was a scripted email to share with me stating Microsoft had "zero liability" in this matter. There were no follow-up questions by HR/CELA to learn more about my situation. No one contacted me directly for further details about my report. I believe HR too quickly made this decision based on secondhand conversations. My Manager and Director made the business decision to remove me from supporting this Partner and continued to check in with me frequently.

We provided an immense amount of detail to HR in March 2020 about this rape and sexual assault. Unfortunately, HR chose to focus only on the rape incident and would not investigate the entirety of our allegations over the 8-month period communicating to us through my Director in writing "zero liability" since the rape happened to my wife and not me, the employee. Additionally, HR stated that it was out of scope because it didn't happen during work hours or at a work event as if the assault happened in a vacuum with no regard for the circumstances leading up to or following it. We were left to fend for ourselves and fight this executive who had deep pockets and resources without the support of Microsoft, which was the basis for this relationship in the first place. With an attorney's help, we were able to gain a resolution which covered counseling but forced us to sign an NDA in June 2020.

**Why formally complain now?**

I have been unable to fully comprehend how he had been using his importance and levels of influence to manipulate me and my wife using guilt, shame, gaslighting, fear of my job being terminated, and indirectly threatening me during a work event on our Redmond campus (unlawful harassment). It is only by attending weekly counseling sessions, a week-long intensive marriage workshop, and a Trauma/Healing intensive workshop for my wife after her own suicidal

experience that 18 months later I can understand all of this. When I inquired with HR in June 2021 asking about what had been documented in my HR or CELA file, it was to determine how open I could be discussing this matter post-NDA. It is shocking to me that HR stated my file was empty. Although there is email correspondence stating Microsoft had zero liability, it seems like I may not be able to prove we had a documented conversation with HR prior to June 15, 2020. This is troubling especially since my management team followed protocols to report this to HR.

Reporting this complaint now has not been an easy decision. It would be easier to continue to be quiet and compliant, not ruffling feathers as this may also set me up for inspection or consequences for my actions in some way. However, I felt it was essential to speak up about our current process and lack of systems to help employees report and gain support when it comes to topics of sexual assault, rape, and harassment. HR needs a system in place that offers those who have been harmed on the job—or because of work-related relationships—well-trained, empathetic experts, and advocates to help through their time of crisis and trauma. In hindsight, I wish I could have taken an extended period of time off from work, but I felt it was not appropriate based on the job requirements and expectations to not show weakness. My Manager helped me take advantage of the Covid time off, which helped greatly and I am forever grateful to his empathy and patience – but even with this in mind, I broke up my time and returned to work halfway through to complete business planning and be present.

We reported these incidents a month before Satya's April 2020 mail to all employees sharing updates about a new Employee Advocacy team being established for workplace sexual harassment. I am unsure what would need to change to get the attention required—perhaps if I were more senior or female, HR would have done more to investigate these incidents, support me, call to check on my health, or inspect the broken vendor code of conduct policies. Or, if I had taken my life in my darkest hour, would Microsoft have paid attention once the truth was uncovered that a work relationship caused enough harm to myself and marriage that I didn't see an alternative way out of a hostile work environment? I raise this to point out the disconnect between what I believe is Microsoft's intent to be a supportive employer with zero tolerance for sexual assault and my own experience with HR's dismissiveness of my concerns. I believe Microsoft needs and should do more to support and advocate for their employees regardless of gender, position, or technicality of being "during work hours."

I've been advised to file a complaint personally and directly with HR for formal documentation.

Sincerely,

Will McNae, Sr. Partner Technical Strategist – GPS, US, [wimcnae@microsoft.com](mailto:wimcnae@microsoft.com)

EXHIBIT F

# STATEMENT 5

**Date : 7/15/2022 3:15:18 PM**
**From : "Will McNae"**
**To : "John Wylie" jww@johnwylielaw.com, "Jenny L. Martinez" jmartinez@munckwilson.com**
**Cc : "Mayes, John" John.Mayes@softwareone.com, "Ronda McNae" rondamcnae@gmail.com**
**Subject : RE: Release of NDA**
**Attachment : image001.png;image002.png;image003.png;image004.png;**

Greetings Mr. Wylie and Ms. Martinez,

I am following up to help clarify several topics that, based on how I interpret the response below, will help explain and support why we have reached out to SoftwareONE. I am sharing as a brief recap so that Ms. Martinez can have access to this information as we reach out in a posture of help.

We are not under any false pretense that SoftwareONE was included in the non-disclosure agreement. The purpose for including the company was to provide an opportunity to influence doing the right thing. We have kept SoftwareONE updated as to progress and milestones with the hope of a response other than a defensive posturing. Do I believe SoftwareONE directly did this to me and my wife? No. Do I believe that one of your executives mis-used his role and mis-represented your brand during work hours and personal time? Yes.

Mr. Fitzgerald met my wife, Ronda, during a SoftwareONE evening event in July 2019. He leveraged his executive role beyond the relationship with me to justify developing a direct friendship with my wife. He paid for all travel & entertainment expenses for my family to join he and his girlfriend to celebrate the accomplishment of SoftwareONE's IPO. A "consensual affair" was fabricated by Mr. Fitzgerald to hide his actions which have been documented in the 3 police reports.

Our goal is to continue supporting the criminal accountability process which started a year ago. Along our journey we have met significant leaders, advocates, and survivors of similar experiences. In the end, this was an opportunity to ask you to influence Mr. Fitzgerald to do the right thing, which is a worthy response in our opinion. It would keep the focus and attention on his actions which is what all of this is about.

For reference, I am including two data points:
SoftwareONE has it's own company policies which address anti-corruption and gifts:



**WE DO NOT TOLERATE CORRUPTION & BRIBERY**
Sometimes we all have to take a moment to consider our actions.

Extortion, bribery and corruption, including improper offers for payments to or from, or improper entertainment of employees or organizations are all unacceptable. **We will support all employees who may face losing a deal or an opportunity in order to avoid paying a bribe.** This includes accepting or giving improper payments from office holders, clients, business partners, suppliers or anyone to incite such behavior in order to achieve unfair advantages.

Please note that even making or accepting a promise for improper payments is deemed to be corrupt behavior, even if no payment is made in the end. If you are not sure prior to a meeting or event, don't go alone, bring along a fellow employee or your supervisor.

We do not accept any offers of improper payments.

**WE ACCEPT AND GIVE GIFTS ONLY IF APPROPRIATE**
Payments, benefits and gifts given to or by us to customers and third parties are a great way to build relationships, but we all have a responsibility to follow the rules.

Any gift, payment or benefit given to you by one of our customers, partners or any third party that is appropriate and below CHF 100 does not require any pre-approval, unless you work in a subsidiary that has adjusted this threshold. You must gain approval to your leader if giving anything valued between 100 – 200 CHF. If you are unsure about anything you are being offered or if it exceeds 200 CHF. Click Here to Disclose.

**Offering gifts, entertainment, or other business courtesies could be perceived as bribes.** Any items that are given to one of our third-parties may require additional approvals. However, as a general rule please ensure that all gifts are infrequent, of reasonable value and are appropriate in the business situation. If you intend to give anything over CHF 100, please use the Gift or Invitation Disclosure tool.

Also, please be mindful of the fact that legislation in many countries considerably restrict the value of any gifts or invitations to be extended to public officials. If in doubt as to thresholds or as to who is considered a public official, please reach out to Legal & Compliance for advice or refer to our gift policy.

Microsoft has their own Partner Code of Conduct. I have included screenshots of the personal conduct section which addresses always acting professionally:

MCNAE 001353

# Microsoft Partner Code of Conduct

Microsoft aspires to be more than just a good company – we want to be a great company. We are committed to our mission of **empowering every person and every organization on the planet to achieve more.** Achieving our mission isn't just about building innovative technology. Our mission reflects who we are as a company, how we manage our business internally, and how we work externally with customers, partners, governments, and suppliers.

# Professional Conduct

Microsoft Partners will conduct themselves in a professional manner at all times, helping Microsoft to create an inclusive, productive, respectful and professional environment, free from any forms of discrimination or harassment.

- **Inappropriate Language:** Microsoft Partners will not use any form of language which may be considered discriminatory, intimidating, harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate.

- **Treat Others with Fairness, Dignity and Respect:** Microsoft will not tolerate, and Microsoft Partners must not engage in, any form of sexual or other harassment. Sexual harassment is unwelcome verbal or physical behavior based on sex and includes gender-based harassment of a person of the same gender. Examples include unwelcome sexual advances or physical contact, sexual comments or inappropriate gender-based jokes, unwelcome romantic attention, offering a benefit or preferential treatment in exchange for sexual favors, sharing or displaying sexually explicit content and using sexually degrading words. Other examples of harassment include comments, jokes or degrading words based on race, sex, national origin, religion, age, disability, gender identity or expression, marital status, medical condition, physical or mental disability, pregnancy, sexual orientation, political affiliation, union membership, veteran status or other protected characteristics or status.

- **Event Behavior:** In any event sponsored or hosted by Microsoft or during which Microsoft Partners may interact with any Microsoft employees, agents, subcontractors or customers, regardless of location, Microsoft Partners must behave in a professional manner including responsible alcohol use and continued adherence to this Partner Code of Conduct.

We hope you can hear our purpose and intent.

Will


Will McNae
Partner Solution Architect – Security, Compliance & Identity, US GPS

MCNAE 001354

Good morning,

I find it quite interesting that SoftwareONE stands behind "personal" failing to acknowledge the professional ties. A Executive used his position and work relationship for other motives. What's disheartening is the very fact Will and I spoke to a number of SoftwareONE employees prior to the agreement being signed. In fact, one employee begged to know "who" since she's also a female within the company worried about her own safety. Other individuals knew the extent, recognizing a work relationship was used to carry out this elaborate ordeal.

Was it ever communicated to you that I met Fitzgerald and roughly 60 of the employees at a work event put on by SoftwareONE? At this event, Fitzgerald shared details of his father that passed, past divorce, and showed pictures of his son? All false by the way. I shared with my husband and a Detective here in Seattle that Fitzgerald had been touching parts of my body in passing - too touchy for meeting me for the first time. I brushed it off thinking that was normal or he doesn't understand personal space. This was part of his process. Push the envelope to desensitize me to random touching.

As for your the second part of your email, I have documentation and the list of individuals we spoke to including written proof. No issue there.

SoftwareONE will do what it must to protect themselves, same here.

To add, I also have text messages where Fitzgerald speaks about telling Dieter what's going on. You see how absurd this is?

Ronda McNae

---

**From:** John Wylie <jww@johnwylielaw.com>
**Sent:** Friday, July 15, 2022 4:23 AM
**To:** Ronda McNae <rondamcnae@gmail.com>
>
**Subject:** Re: Release of NDA

*Ms. McNae-*