UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, husband and wife,<br><br>Plaintiffs,<br>v.<br><br>ARAG INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:24-cv-00211-TL<br><br>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order. Dkt. No. 59. Having considered Plaintiffs' motion, Defendant's response (Dkt. No. 61),[1] and the relevant record,[2] the Court DENIES Plaintiffs' motion.

---

[1] Under this District's Local Civil Rules, a party opposing a TRO "must (1) file a notice indicating whether it plans to oppose the motion within twenty-four hours after service of the motion, and (2) file its response, if any, within forty-eight hours after the motion is served." LCR 65(b)(5). While Defendant timely filed its response, its notice of intent to oppose (Dkt. No. 60) was not filed within the time required. However, because Defendants' response was timely and because of the "strong policy" in favor of resolving issues on their merits, *e.g.*, *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018), the Court will consider Defendant's response.

[2] Plaintiffs prolonged consideration of this motion with repeated filings on Monday, August 18, 2025: a reply (Dkt. No. 63), errata (Dkt. No. 64), and a supplement (Dkt. No. 65). The Local Rules are clear that "no reply will be permitted" in support of a TRO. LCR 65(b)(5). Accordingly, these filings were not considered and will be stricken.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 1

I.     BACKGROUND

The underlying action in this case is a dispute between Plaintiffs William and Ronda McNae and Defendant ARAG Insurance Company ("ARAG"), a provider of legal insurance. Dkt. No. 14 (Amended Complaint) ¶¶ 1, 8. Plaintiffs allege that in 2022, while the McNaes held an ARAG policy that covered costs of legal representation in civil cases filed against them, both Ronda and William McNae were sued in the Southern District of Florida by Michael J. Fitzgerald related to the alleged violation of a confidential settlement agreement. *Id.* ¶¶ 10, 16, 21–22, 39. Fitzgerald is not a party to the case before this Court. Plaintiffs allege that ARAG limited and/or denied coverage for their legal defense in the federal *Fitzgerald* action as well as in a subsequent suit brought by Fitzgerald against William McNae in Florida state court. *Id.* ¶¶ 29, 33–41. Plaintiffs allege that these limitations and/or denials violated the terms of their insurance policy as well as Washington and federal law and seek declaratory and injunctive relief as well as damages. *Id.* ¶¶ 58–103. Defendant has filed a counterclaim seeking a declaratory judgment that Defendant is not obligated to provide for William McNae's defense in connection with the Florida State Court litigation. Dkt. No. 16 (Answer to Amended Complaint) at 14–23.

In April 2025, the federal *Fitzgerald* action went to trial. Fitzgerald prevailed against Ronda McNae and was awarded a judgment of over $2.7 million. *Fitzgerald v. McNae*, No. C22-22171, 2025 WL 1134639, at *9 (S.D. Fla. Apr. 17, 2025), *motion for relief from judgment denied*, No. C22-22171, 2025 WL 1865695 (S.D. Fla. May 13, 2025). Ms. McNae filed two motions to stay enforcement of the judgment pending appeal, which were denied. *Fitzgerald v. McNae*, No. C22-22171, 2025 WL 1865665, at *3 (S.D. Fla. June 17, 2025), *reconsideration denied*, No. C22-22171, 2025 WL 2256346 (S.D. Fla. July 11, 2025). All in all, Ms. McNae appears to have filed roughly twenty post-judgment motions or statements challenging the

judgment or opposing consideration of attorney fees, in addition to other filings such as corrections, responses, and replies. *See* Dkt. No. 62-1 at 35–43.

On June 30, 2025, Fitzgerald and his spouse Yelany de Varona, as judgment-creditors, filed notice of the judgment against Ronda McNae in King County Superior Court in order to enforce the judgment in Washington, where the McNaes reside. *See* Dkt. No. 62-1 (Superior Court docket) at 1. The McNaes[3] are represented by counsel in that case, *Fitzgerald and de Varona v. McNae and McNae*, No. 25-2-19105-2 SEA ("the state domestication action"), in which proceedings are ongoing. Dkt. No. 62-2 (Notice of Appearance). On August 13, 2025, Fitzgerald and de Varona filed a Praecipe for Writ of Execution on Personal Property in the state domestication action. Dkt. No. 59 at 9–10. On Friday, August 15, Plaintiffs filed the instant motion, asking this Court to issue an emergency temporary restraining order ("TRO") to "halt imminent seizure of personal property at their home in Kirkland, Washington, scheduled to be carried out by the King County Sheriff pursuant to enforcement of a Florida judgment that is currently on appeal." Dkt. No. 59 at 1.

## II.   LEGAL STANDARD

"A TRO, as with any preliminary injunctive relief, is an extraordinary remedy that is 'never awarded as of right.'" *Kovalenko v. Epik Holdings*, No. C22-1578, 2022 WL 16737471, at *2 (W.D. Wash. Nov. 7, 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The standards that govern TROs are "substantially similar" to those that govern preliminary injunctions. *Holthouse v. Wash. Dep't of Corr.*, No. C25-5257, 2025 WL 1167659, at *1 (W.D. Wash. Apr. 22, 2025) (citing *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)). "To obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of

---

[3] Although the federal *Fitzgerald* judgment was only entered against Ms. McNae, enforcement is being sought against both Plaintiffs due to Washington's status as a community property state. *See* Dkt. No. 59 at 9–10.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 3

success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *Id.* (quoting *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc)). This test, arising from *Winter*, requires that the movant establish each element. *See id.* Additionally, under Ninth Circuit precedent, 'a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor,' provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest." *Christopher Cooper v. Wells Fargo Fin. Washington 1, Inc.*, C14-1977, 2015 WL 263540, at *2 (W.D. Wash. Jan. 21, 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

"Granting injunctive relief is 'an act of equitable discretion' on the part of the District Court." *BitTitan, Inc. v. SkyKick, Inc.*, No. C15-754, 2015 WL 5081130, at *2 (W.D. Wash. Aug. 27, 2015) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "As such, no one factor is necessarily dispositive, but 'the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify denying the motion.'" *Id.* (quoting *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990)). Injunctions are binding only on parties to an action; their officers, agents, servants, employees, and attorneys; and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

### III.   DISCUSSION

**A.   This Court has no Authority to Grant the Requested Relief**

"When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v.*

*Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). Plaintiffs' request—that the Court bar or forestall enforcement of the final judgment in the federal *Fitzgerald* action (in which Defendant was not a party)—is clearly not based on the claims at issue in this action, which relate only to insurance coverage for legal services. Moreover, as Defendant rightly notes, the Anti-Injunction Act ("AIA") prohibits any federal court from issuing injunctions "to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Dkt. No. 61 at 2 (quoting 28 U.S.C. § 2283). There is no express Act of Congress that applies to this situation, a stay in state court proceedings is not necessary in aid of this Court's jurisdiction, and there has been no judgment in this case to protect or effectuate. Therefore, to the extent that Plaintiffs ask this Court to enjoin action by the King County Superior Court itself, such injunction would violate the AIA.

**B.  Plaintiffs Seek to Enjoin the Conduct of Non-Parties**

It is not altogether clear whose actions Plaintiffs seek to enjoin. Plaintiffs' proposed order would restrain "Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them" from "taking any action to enforce, execute, or collect upon the Florida judgment against Plaintiffs' property in Washington . . ." Dkt. No. 59 at 13. However, there is only one Defendant in this case: ARAG Insurance Company. ARAG is not a judgment-creditor from the federal *Fitzgerald* action, is not a party to the domestication action, and does not appear to be taking or at risk of taking any action to "enforce, execute, or collect upon the Florida judgment[.]" Plaintiffs appear actually to seek to enjoin the actions of their judgment-creditors, the King County Superior Court, the King County Sheriff's Office, or some combination of these actors—none of whom is a party to this case.

Principles of equity dictate that "no court may lawfully enjoin the world at large," and there are few circumstances in which a Court may enjoin the actions of non-parties. *Whole*

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 5

*Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F. 2d 832 (2d Cir. 1930)). Pursuant to Federal Rule of Civil Procedure 65, a court may order injunctive relief that "binds only . . . (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described" in subsections (A) and (B). Fed. R. Civ. P. 65(d)(2). While Plaintiffs assert that their "claims challenge ARAG's interference" (Dkt. No. 59 at 3) there are no allegations either in the Amended Complaint or the Motion for TRO that ARAG is involved in the state domestication action (or otherwise in enforcement of the judgment) in any way, and none of the participants in the domestication action could be classified as ARAG's "officers, agents, servants, employees, [or] attorneys."

"For an injunction to bind a non-party, the movant must show that (1) the non-party has actual notice of the enjoined conduct and (2) either aided and abetted the enjoined party in the unlawful conduct or that the non-party is 'legally identified' with the enjoined party." *Patagonia, Inc. v. Frances Agnew DBA Fran Calista*, No. C25-3283, 2025 WL 1617182, at *11 (C.D. Cal. June 5, 2025) (citing *Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016)). Here, while at least some of the non-parties appear to be aware of the enforcement actions, Plaintiffs have made no argument as to the notice of any non-party to Plaintiffs' allegations that the non-parties' actions are illegal or may be subject to injunction *by this Court*. *See generally* Dkt. No. 59. Nor have Plaintiffs made any argument as to the notice of any non-party that any of their actions may be illegal in relation to any of the claims *in this action* regarding insurance coverage for legal services. *See generally id.* Accordingly, the Court cannot find that any of the non-parties has been provided notice or an opportunity to litigate its rights before this Court. Further, Plaintiffs have failed to allege that any of the non-parties is legally identified with Defendant or aided and abetted Defendant either in the allegedly unlawful

1  domestication action (assuming for the sake of argument only that Defendant was somehow
2  involved in the domestication action) or in any of the actions giving rise to the claims at issue in
3  this case. *See generally id.*

4  **C.  Plaintiffs Do Not Demonstrate the Elements Required for a TRO**

5        Even if this Court had the ability to grant the relief they seek, Plaintiffs have not made a
6  sufficient showing of the elements required to justify a TRO.

7        <u>Likelihood of Success on the Merits</u>: As Defendant points out, "it is unclear whether the
8  Plaintiffs must establish a likelihood of success on the merits of their claims against ARAG in
9  this insurance coverage litigation, or a likelihood of success on the merits of any defense they
10 might have to the Praecipe in the State Domestication Action"—a clear indication that Plaintiffs
11 are attempting to litigate these issues in the wrong forum. Dkt. No. 61 at 6. Regardless, neither
12 interpretation can support the issuance of a TRO. First, whether or not Plaintiffs succeed on the
13 merits of the insurance case before this Court will not bear on the validity of the domestication
14 action or the judgment it seeks to enforce. Second, while Plaintiffs assert that their claims
15 challenge "ARAG's interference, ADA violations, and unlawful cross-jurisdictional enforcement
16 while this case is stayed" (Dkt. No. 59 at 3), they provide no facts that clarify what ARAG is
17 accused of interfering with, or how, and did not plead any such claims in their Amended
18 Complaint (which, again, only relates to insurance coverage for legal services). *See generally*
19 Dkt. No. 14. Third, this Court is in no position to opine on Plaintiffs' prospect of success before
20 another court in the enforcement action (which in any case Plaintiffs have not argued is likely).
21 Plaintiffs also have not identified any "serious questions for litigation" that would justify a TRO.
22 *See* Dkt. No. 59 at 3. As the Court has previously cautioned, "[m]erely stating such assertions
23 does not make them true." Dkt. No. 54 (Order on Emergency Motion to Stay) at 3. This factor
24 weighs against a TRO.

Likelihood of Irreparable Harm: Plaintiffs assert that, in the absence of a TRO, they will suffer irreparable harm because "Sheriff's seizure will cause loss of irreplaceable personal property, emotional harm to special-needs children, and disruption of a pending adoption—injuries that cannot be compensated later. . . . No monetary award could remedy this loss of security or the trauma of a forced seizure in their presence." Dkt. No. 59 at 3–4.

While the Court is sympathetic to the stress that of garnishments and seizure may place upon Plaintiffs' family, first and foremost, the seizure that may occur is completely unrelated to this action, which—the Court believes bears repeating and emphasizing—only has to do with insurance coverage for legal services. Defendants' actions underlying the claims in *this* action appears to lie squarely in the past, so there is no ongoing conduct to enjoin. *See Friends of the Earth v. Laidlaw Envir. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (A claim for injunctive relief is moot if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). Further, denial of insurance coverage is a monetary harm. "[M]onetary injury is generally not 'irreparable,' as monetary damages awarded in a final judgment are usually adequate to redress the harm . . . ." *Kessler v. State Farm Fire & Cas. Co.*, No. C23-5527, 2024 WL 183915, at *2 (W.D. Wash. Jan. 17, 2024) (denial of preliminary injunction in insurance dispute).

Even if the prospective harms Plaintiffs allege in their motion were related to the claims in this case (which they are not), Plaintiffs have not made the necessary showing to justify a TRO. Concerns about how children may experience collections actions against their parents, warranted though those concerns may be, are not generally a sufficient basis to enjoin enforcement of a lawful judgment. Plaintiffs do not explain how the adoptions will be disrupted or why their children must be present for any (speculative) seizure of household property, and they do not identify any property that is irreplaceable. As for any further garnishments, "these

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 8

potential future injuries, assuming they occur and can be proven, are . . . compensable with money damages and therefore, do not constitute irreparable harm." *Gale Force Nine LLC v. Wizards of the Coast LLC*, No. C20-1700, 2020 WL 7133507, at *4 (W.D. Wash. Nov. 25, 2020), *report and recommendation adopted*, 2020 WL 7059238 (W.D. Wash. Dec. 2, 2020). Furthermore, Plaintiffs have provided no evidence for their claims that any property seizures by the King County Sheriff have been "scheduled" (*see* Dkt. No. 59 at 1, 2, 3); on the contrary, the record shows the Superior Court has not ruled on the praecipe and no writ of execution on personal property has been issued (*see generally* Dkt. No. 62-1). Plaintiffs will have an opportunity to respond to the praecipe in the court where it was filed, and it is not the case that seizure of personal property is an inevitability if this Court does not act. Indeed, the Court is perplexed as to why Plaintiffs filed their motion in this Court and against Defendant rather than in the King County state domestication action, where it seems to belong, and against the non-parties that are actually involved with the execution of the seizure at issue.

  Plaintiffs' delay in seeking a TRO further undermines their claim of immediate irreparable harm. While Plaintiffs point to the August 13, 2025, praecipe as creating the "emergency" in question, the domestication action was filed on June 30, 2025 (Dkt. No. 62-1 at 1) and writs of garnishment were sought as early as July 16, 2025 (*id.* at 2). Had Plaintiffs filed their motion promptly at that time, a temporary injunction could have been considered on a regular, noticed briefing schedule. *See* Local Civil Rule 7(d)(4). Any "emergency" here is purely of Plaintiffs' making, weighing against the issuance of a TRO. *See Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (holding that a delay in seeking a injunctive relief is a factor to be considered in weighing the propriety of relief); *Dahl v. Swift Distrib., Inc.*, No. C10-551, 2010 WL 1458957, at *4 (C.D. Cal. 2010) (18-day delay in moving for TRO "implie[d] a lack of urgency and irreparable harm"). The second factor weighs against a TRO.

Balance of the Equities: The Court gives no weight to the third factor, as Defendant has no equities at stake in the domestication action or the enforcement of the federal *Fitzgerald* judgment. In this circumstance, however, the Court does not believe the balance of the equities goes to Plaintiffs either for the reasons stated in this Order.

Public Interest: The Court finds the public interest would best be served by allowing the domestication action to proceed unhindered by undue (and unlawful) interference by this Court. This factor weighs strongly against a TRO.

**D.    The Motion Lacks an Arguable Basis in Law**

Federal Rule of Civil Procedure 11(b)(2) requires attorneys and unrepresented parties to advance only claims and contentions with an arguable basis in law. Plaintiffs' motion—asking this Court to enjoin actions by non-parties in order to interrupt the proceedings of a second court and prevent the enforcement of a judgment issued by a third, all with no direct relationship to Defendant or the claims underlying this case—has no arguable basis in law. As Defendant does not seek sanctions (Dkt. No. 61 at 8), the Court will issue none at this time. However, Plaintiffs are reminded that pro se litigants are held to the same standards as attorneys, and future frivolous motions may subject Plaintiffs to monetary or other sanctions. *See* Fed. R. Civ. P. 11(c).

### IV.    CONCLUSION

Accordingly, the Court ORDERS as follows:

(1)    Plaintiffs' reply and related filings (Dkt. Nos. 63–65) are STRICKEN.

(2)    Plaintiffs' motion for TRO (Dkt. No. 59) is DENIED WITH PREJUDICE.

Dated this 19th day of August, 2025.

Tana Lin
United States District Judge

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 10