1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

14

15

16

| | |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, husband and wife,<br><br>                      Plaintiffs,<br>        v.<br><br>ARAG INSURANCE COMPANY,<br><br>                      Defendant. | CASE NO. 2:24-cv-00211-TL<br><br>ORDER ON EXPEDITED MOTION TO EXTEND STAY |

17

18

19

20

21

22

23

24

        This matter is before the Court on Plaintiffs William McNae and Ronda McNae's "Expedited Motion to Extend Stay." Dkt. No. 56. Plaintiffs have "respectfully request[ed] expedited consideration so the Court may rule before the current stay expires on September 5, 2025." *Id.* (emphasis omitted). Having reviewed the motion, Defendant ARAG Insurance Company's response (Dkt. No. 67), Plaintiffs' reply (Dkt. No. 71), and the relevant record, the Court DENIES the motion.[1]

---

[1] The Court does not consider the new declarations and exhibits filed in support of Plaintiffs' reply (Dkt. Nos. 71-1, 71-2, 72, 72-1, and 73), as Defendant has not had an opportunity to address them. "For obvious reasons, new

# I.    BACKGROUND

The Court assumes familiarity with the facts of the case, which involves a dispute over insurance coverage for legal representation. On March 6, 2025, the Court ordered a six-month stay to "accommodate[] Plaintiffs' litigation burdens" in other cases "and personal hardships," including their upcoming adoption of their niece and nephew. Dkt. No. 54 (Order granting stay). Since that date, several developments have taken place in other legal proceedings in which Plaintiffs are involved. A date of September 9, 2025, has been scheduled for the finalization of Plaintiffs' adoption proceedings in Iowa. Dkt. No. 58 at 2. A judgment was entered against Plaintiff Ronda McNae ("Mrs. McNae") in a lawsuit against her in federal court in the Southern District of Florida. Dkt. No. 68-22 (judgment in C22-22171, *Fitzgerald v. McNae*). Mrs. McNae has appealed that decision to the Eleventh Circuit. Dkt. No. 68-30 (appellate counsel notice of appearance). Meanwhile, the judgment against Mrs. McNae was domesticated in Washington State Court in an enforcement action against both Plaintiffs.[2] *See* Dkt. No. 68-29 (Superior Court docket). Plaintiffs have also filed a new lawsuit against Yelany de Varona-Fitzgerald in Florida state court. *See* Dkt. No. 68-6 (Florida state-court complaint). Plaintiffs, who proceed pro se here, appear to be represented by counsel in at least the adoption (*see* Dkt. No. 58 at 4), Mrs. McNae's 11th Circuit appeal (Dkt. No. 68-30), the domestication action in Washington state

---

arguments and evidence presented for the first time on Reply . . . are generally waived or ignored." *Bridgham-Morrison v. Nat'l Gen. Assembly Co.*, C15-927, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015); *see also United Specialty Ins. Co. v. Shot Shakers, Inc.*, No. C18-596, 2019 WL 199645, at *6 (W.D. Wash. Jan. 15, 2019) ("It is not acceptable legal practice to present new evidence or new argument in a reply brief." (quoting *Roth v. BASF Corp.*, No. C07-106, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008))), *aff'd,* 831 F. App'x 346 (9th Cir. 2020). Except for a small amount of information that is already in the record (*compare* Dkt. No. 71-1 ¶¶ 10–11 (Ronda McNae Decl., recounting email exchange), *and* Dkt. No. 72 ¶¶ 10–11 (same), *with* Dkt. No. 68-31 (email exchange)), these new materials are not directly responsive to issues raised in Defendant's response, and they could have been attached to the original motion if Plaintiffs wished them to be considered by Defendant and the Court.

[2] Plaintiffs' motion for a temporary restraining order halting enforcement of the judgment (Dkt. No. 59) was rejected by this Court on August 19, 2025. Dkt. No. 66.

1    court (Dkt. No. 62-2 (Superior Court notice of appearance)), and the ongoing lawsuit against Mr.

2    McNae in Florida state court (Dkt. 69 (Cosimano Decl.) at 3 ¶ 7).

3        On July 3, 2025, Plaintiffs emailed opposing counsel, informing them of their intent to

4    move to extend the stay. Dkt. No. 68-31 at 7 (email correspondence). Defendant's counsel

5    requested to telephonically meet and confer regarding the request, but Plaintiffs declined to do

6    so. *Id.* at 5–7. The Parties corresponded again on July 27, 2025, and August 4, 2025, but did not

7    reach an agreement. *Id.* at 2–5. Plaintiffs filed the instant motion on August 14, 2025, arguing the

8    Court should extend the stay "until at least December 5, 2025, or such another date as the Court

9    deems appropriate," in order to grant them "[u]ninterrupted time before the adoption and

10   appellate deadlines." Dkt. No. 56 at 12, 2 (emphasis omitted). Plaintiffs additionally request that

11   the Court "[w]aive the bond requirement under RCW 6.36.045" and "[s]uspend or modify"

12   plaintiffs' conferral obligations under LCR 7(e) and 7(i) "until Plaintiffs are formally represented

13   by counsel."[3] *Id.* at 12 (emphases omitted).

14                              **II.    PRELIMINARY MATTERS**

15   **A.    Improper Noting of the Motion**

16       Plaintiffs purport to note this motion as a 14-day motion "[p]ursuant to LCR(d)(2)." *Id.*

17   at 1. However, Local Civil Rule ("LCR") 7(d)(2) provides that "motions for relief from a

18   deadline, and motions for protective order, shall be noted for consideration no earlier than 14

19   days after filing." A motion to stay, or a motion to extend a stay, is neither a motion for relief

20   from deadline nor a motion for protective order and is required to be noted as a 21-day motion

21   under LCR 7(d)(3). However, in light of the fast-approaching date at issue, because this motion

22   is already fully briefed, and having found that a prompt adjudication is in the best interest of the

---

[3] In reply, Plaintiffs assert that they "seek one thing only: a short, 90-day extension of the stay entered March 6, 2025. Nothing more." Dkt. No. 71 at 2. Absent an explicit statement that the accompanying requests have been abandoned, however, the Court rules on all three requests out of an abundance of caution.

1   Parties and the Court, the Court grants Plaintiffs' request to expedite consideration and render a

2   decision before September 5, 2025.

3   **B.      Treatment of Miscellaneous Filings**

4          In addition to the new evidence in support of their reply, Plaintiffs made several filings in

5   support of their motion beyond what is typically allowed under LCR 7(b). Plaintiffs did not seek

6   or receive permission for any of these additional filings. The filings are as follows:

7          **August 15 Supplement:** One day after moving to extend the stay, Plaintiffs submitted a

8   "Notice of Supplemental Filing" in support of their motion. Dkt. No. 57. Plaintiffs justified this

9   additional filing with an assertion that "since [the motion] was filed, material developments in

10  the parallel Florida litigation have occurred." *Id.* at 1–2. However, this does not appear to be

11  true, as the filings Plaintiffs discuss in the Florida litigation were all made on or before July 14,

12  2025.[4] *See id.* at 2–3; Dkt. No. 68-8 (Southern District of Florida docket, C22-22171) at 35–43.

13  The Court STRIKES this filing as improper additional briefing beyond the word limit allowed

14  under either LCR 7(d)(2) or LCR 7(d)(3). Additionally, the exhibits to the supplement do not

15  appear to be relevant to this motion or this case.

16         **Redacted Exhibit:** Also on August 15, 2025, Plaintiffs made a filing at Docket No. 58,

17  which appears to be a partially corrected redaction of "Exhibit A" to the motion to extend the

18  stay (Dkt. No. 56 at 21–27). Although this filing is labeled, in relevant part, "MOTION to Seal

19  Unredacted Exhibit 1 and File Redacted Version FRCP 5.2(a)," no motion is attached. However,

20  it does appear that both the original exhibit and the redacted version contain information that

---

21  [4] Plaintiffs specifically identify Mrs. McNae's filing of an opposition brief as a "new" development in the federal
22  litigation in Florida. Dkt. No. 56 at 2 (referring to Docket No. 466 in *Fitzgerald v. McNae*, No. C22-22171 (S.D.
    Fla.)). However, the brief in question was submitted as a paper filing and was received and entered by the clerk's
    office of that court on August 14, 2025, presumably during business hours. *See* Dkt. No. 68-8 at 43. Plaintiffs filed
23  the instant motion on the same day at 3:28 p.m. Pacific Daylight Time—after close of business in Florida. Dkt.
    No. 56. Even assuming that the filing in the Florida case was entered after the instant motion was filed, the
    predictable docketing of a response brief whose delivery Mrs. McNae had already arranged is not the sort of "new
24  development" that either requires or justifies additional briefing here.

should have been redacted under Federal Rule of Civil Procedure ("FRCP") 5.2(a) and the corresponding Local Rule. *See* Fed. R. Civ. P. 5.2(a)(2)–(3); LCR 5.2(a)(1)–(2). Accordingly, and because there is no way for the clerk to seal only part of a document, the Court will order both documents to be sealed, and Plaintiffs will be required to re-file their motion and its exhibits with proper redaction of the names of minor children and the birthdates of living people.

**September 2 Supplement:** On September 2, 2025, Plaintiffs filed a document titled "Notice of Supplemental Information Regarding Appellate Developments and Adoption-Related Hardship." Dkt. No. 75.[5] Although the status of the adoption case appears to be unchanged, Plaintiffs have received new information about the demands on their time of preparing for the adoption hearing on August 9, 2025. *Id.* at 3. The motion also recounts new developments that have occurred in Mrs. McNae's Eleventh Circuit appeal since this motion was filed, including the dismissal of the case for failure to prosecute, which Mrs. McNae intends to contest. *Id.* at 2. The Court considers this information, which could not have been included in the original motion, to the extent that it is relevant.

**September 4 Notice and Proposed Order:** On September 4, 2025, Plaintiffs filed a second proposed order for this motion (Dkt. No. 77), along with a document titled "Notice of Imminent Harm" (Dkt. No. 76). Its name notwithstanding, the Notice identifies no harm related to this stay but relates to irrelevant developments in Plaintiffs' other cases and repeats the arguments made in Plaintiffs' motion. These filings are improper and will be STRICKEN.

*** 

Plaintiffs' flurry of filings in support of this motion was not helpful to the Court. Moreover, these documents represent unnecessary work by Plaintiffs during a personally busy and sensitive time. *See* Dkt. No. 56 at 2 ("Uninterrupted time before the adoption . . . is

[5] This document was submitted via e-filing on September 1, 2025, a Court holiday.

ORDER ON EXPEDITED MOTION TO EXTEND STAY – 5

1   essential.") A Party presenting a motion is allowed a single reply brief under LCR(b)(3). The

2   reply, like the motion, is bound by a word limit, *see* LCR (e), and it is subject to a deadline, *see*

3   LCR(d). Filing additional documents in support of a motion without leave of the Court **is not**

4   **allowed**. If in the future Plaintiffs wish to supplement or correct a filing, they must follow the

5   procedure set forth in the Local Rules, which require the filing of a praecipe with a request that

6   the court consider the corrected document, clear identification of the corrections, and an

7   explanation of "why the document was not included with the original filing." LCR 7(m).

8   However, "Parties are expected to file accurate, complete documents" the first time. *Id.* Even

9   with a properly-filed praecipe, a supplement will not usually be appropriate and information,

10  authority, or arguments that could have been presented in the original filing may be stricken or

11  considered waived. Although Plaintiffs are pro se at this time, "[p]ro se litigants must follow the

12  same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.

13  1995).

14          Finally, Plaintiffs are advised that piecemeal or unnecessary filings only slow down the

15  resolution of her claims. In fact, the new, additional, and last-minute filings related to this motion

16  delayed the filing of this Order, which is time-sensitive for Plaintiffs, as the Court needed to

17  review and incorporate the new filings into its Order.

18  **C.      Plaintiffs' Failure to Meet and Confer**

19          Defendant argues that the Court should summarily deny Plaintiffs' motion for failure to

20  meet and confer as required by this Court's Standing Court's Standing Order for All Civil Cases

21  ("Standing Order"). Dkt. No. 67 at 9–10. The Standing Order provides that "Parties must make a

22  meaningful effort to confer prior to filing a motion" and include a certification describing their

23  efforts. Judge Tana Lin, Standing Order for All Civil Cases, Section II.D (Nov. 1, 2024).

24  Plaintiffs were aware of this requirement before filing the motion. *See* Dkt. No. 9 (directing

Parties to review Court's procedures); Dkt. No. 68-31 at 3 (August 4, 2025, email from Defendant's counsel reminding Mrs. McNae that "the conferral requirement in Judge Lin's standing order for all civil cases is mandatory").

Plaintiffs contend the requirement is met because they "emailed ARAG's counsel . . . , . . . Defendant responded in writing . . . , [and t]hat exchange is a conferral." Dkt. No. 71 at 6; *see also* Dkt. No. 56 at 14 (certifying compliance with conferral requirement). However, as Plaintiffs have been repeatedly admonished, simply saying something "does not make [it] true" (Dkt. No. 66 at 7, Dkt. No. 54 at 3), and the assertion that an email exchange satisfied the conferral requirement fails under the plain language of this District's procedural rules. The Local Civil Rules clearly define "Meet and Confer" as "a good faith conference in person or by telephone to attempt to resolve the matter in dispute without the court's involvement." LCR 1(c)(6). An email exchange is not a meeting or a conference, and Plaintiffs' attempt to redefine procedural requirements with no legal authority is not well taken given that they have been repeatedly admonished that they are responsible for complying with procedural rules. *See, e.g.*, Dkt. No. 55 at 2, Dkt. No. 45. The Court could deny Plaintiffs' motion on this ground alone. However, considering the strong policy in favor of resolving issues on their merits, the Court will address the merits of Plaintiffs' motion this time. *See, e.g., Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018). Plaintiffs are advised that future failures to comply with any rules or orders may result in sanctions, including striking or summary dismissal of their motions. *See* Standing Order, Section II.D.

### III.    DISCUSSION

### A.    Plaintiffs' Motion to Extend the Stay

"[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S.

40, 47 (2016) (collecting cases). This includes "discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).[6] When a stay is proposed, the court must weigh the competing interests impacted, including

> the possible damage which may result from the granting of a stay, the hardship of equity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962), and noting that this framework derives from *Landis*, 299 U.S. 248). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

### 1. Possible Damage that May Result from Extension of Stay

As it did in contesting the previous stay, Defendant asserts that it would be harmed by delays in dispositive motions, discovery, and subpoenas. Dkt. No. 67 at 11–12; *see* Dkt. No. 46 at 12–13. The Court previously observed that "these harms are little beyond the prejudice inherent in any stay." Dkt. No. 54 at 2. However, the harm of a longer delay may be greater than the harm of a shorter one. Plaintiffs chose to bring this case, and Defendant, who has no choice but to participate, has now been waiting over a year for responses to its discovery requests. *See* Dkt. No. 67 at 12. Where witnesses have yet to be deposed and memories may fade over time, the Court finds that the harm of further delay now weighs against a stay. *See, e.g., Clinton* 520 U.S. at  707–08 (finding that delay "would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death

---

[6] The Court agrees with Defendant that *Landis*, not *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011), provides the applicable standard. *See* Dkt. No. 67 at 5.

of a party"); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) (holding that unnecessary delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale").

### 2. Hardship to Plaintiffs of Being Required to Go Forward

Plaintiffs assert three benefits of the proposed stay and warn of (largely unspecified) "irreparable harms to both [Mrs. McNae's] family and the fairness of these proceedings" if the stay is denied. Dkt. No. 56 at 12. Mrs. McNae submits that a 90-day stay would "allow [her] to complete the adoption," prepare an index of exhibits that will be filed in her Eleventh Circuit appeal, and "ensure that this case proceeds on a complete, untainted record." *Id.*

The first basis for the requested stay, and the primary harm asserted by Plaintiffs, is potential disruption to their pending adoption of the niece and nephew. Dkt. No. 56 at 1–2, 4, 5, 8, 11. However, Plaintiffs have identified no plausible connection between these proceedings and the adoption, and there does not appear to be any non-frivolous basis for the implication that the children are at risk of "being placed back into foster care" (Dkt. No. 71 at 7) if the current stay is not extended until December 5. Furthermore, as Plaintiffs point out, "the Iowa adoption hearing is set for September 9, 2025—only four days after the current stay expires." Dkt. No. 56 at 8. Plaintiffs have not identified even a *speculative* development that could take place in those four days that could place the adoption in jeopardy, and the Court is at a loss to imagine one. Indeed, all that is immediately expected of the Parties once the stay is lifted, pursuant to the Court's previous Order, is the filing of a joint status report that includes a proposed schedule for any deadlines that had not lapsed as of the time the Court stayed this case. Dkt. No. 54 at 4. As to Plaintiffs' unsubstantiated assertion that "disruption of the September 9 adoption [is a] concrete harm[] tied directly to whether this case resumes on September 5" (Dkt. No. 71 at 8), it bears

1  repeating yet again: "[m]erely stating such assertions does not make them true." Dkt. No. 66 at 7,

2  Dkt. No. 54 at 3.

3      Even if Plaintiffs could substantiate their assertion that actions in this case might

4  jeopardize the adoption finalization, these concerns provide no basis for a stay past September

5  10, 2025, when any risk of disruption would presumably be moot. Any concerns the Court has

6  about diverting Plaintiffs' attention from the many things they must accomplish before the

7  adoption finalization hearing (*see* Dkt. No. 75 at 3–4) are allayed by Defendant's offer to refrain

8  from contacting Plaintiffs and from making any filings in this case before September 10, 2025.

9  *See* Dkt. No. 67 at 17. The Court also notes that Defendant has tried to work with Plaintiffs in the

10  past by, for example, offering to stipulate to a 90-day, 120-day, or six-month continuance (*see*

11  Dkt. No. 43 at 24–25; Dkt. No. 46 at 21) and suggesting settlement through a mediator (*see* Dkt.

12  No. 68-31 at 3), and the Court presumes Defendant will make a reasonable effort to work with

13  Plaintiffs to establish a proposed schedule going forward.

14      As for the Eleventh Circuit appeal and other ongoing litigation, the Court agrees with

15  Defendant that the hardship of simultaneous litigation is not compelling where Plaintiffs were

16  aware of the other litigation when they decided to bring this case. Dkt. No. 67 at 12 (citing

17  *Jimenez v. Microsoft Corp.*, C23-3678, 2024 WL 1739081, at *3 (S.D. Ill. Apr. 23, 2024)). The

18  Court further notes that it has already granted the continuance it found would "accommodate[]

19  Plaintiffs' litigation burdens and personal hardships while recognizing Defendant's interest in

20  proceeding with this matter." Dkt. No. 54 at 3–4. The Court limited the current continuance to

21  six months despite knowing that the extrinsic litigation could extend beyond that period and that

22  various matters may or may not be resolved in in Plaintiffs' favor. However, the Court did not

23  indicate that it would consider extending the stay on that basis and is not inclined to do so now.

24  *See generally id.* Additionally, Plaintiffs' claims that a "modest 90-day extension" would give

Mrs. McNae time to "complete [her] appeal brief" (Dkt. No. 56 at 12) ring hollow in light of Plaintiffs' most recent filing, which reveals that Plaintiffs expected the index would already be completed and filed before September 1, 2025. *See* Dkt. No. 85 at 1–2. Plaintiffs are reminded that pro se litigants are subject to Federal Rule of Civil Procedure 11, which permits district courts to impose sanctions on parties and attorneys for inaccurate representations, *see Ligeri v. Amazon.com Servs. LLC*, No. C25-764, 2025 WL 2161497, at *2 (W.D. Wash. July 30, 2025) (citing *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994)), *reconsideration denied*, 2025 WL 2212595 (W.D. Wash. Aug. 4, 2025), and that "Rule 11 sanctions may be appropriate not just where a party affirmatively misleads the Court, but where she 'omit[s] critical information.'" *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1052 (N.D. Cal. 2021) (quoting *Hall v. Hamilton Fam. Ctr.*, No. C13-3646, 2014 WL 1410555, at *10 (N.D. Cal. Apr. 11, 2014)). The Court may consider sanctions if future filings raise similar doubts about Plaintiffs' candor.

Finally, the Court does not find any harm in requiring Plaintiffs to go forward related to their concerns about developing a more complete record for this case. Plaintiffs warn that "[w]ithout a short extension, Defendant is likely to move immediately for summary judgment . . . ." Dkt. No. 56 at 9. While the Court agrees that Defendant may—and likely will—re-file its motion for partial summary judgment (Dkt. No. 51), which was stricken pending the current stay (*see* Dkt. No. 54 at 4), this is simply a circular observation that "allowing this case to move forward would allow this case to move forward"—not an identification of any harm to Plaintiffs. Plaintiffs assert that the factual record here is "incomplete" and appear to suggest that consideration of Defendant's motion would therefore be improper. Dkt. No. 56 at 9. However, if, as Defendant submits, its motion for partial summary judgment can be resolved on purely legal grounds, development of the factual record is not necessary. *see* Dkt. No. 67 at 12. Moreover, as Defendant will be free to re-file its motion whenever the stay is lifted, before any further

1   discovery occurs, it appears the factual record will remain just as "incomplete" whether the stay

2   ends in September or December. Even if Plaintiffs could show harm in going forward, it is

3   unclear how that harm would be lessened by extending the stay.

4         On this factor, the Court finds that Plaintiffs have shown hardship in being required to go

5   forward only in that they are simultaneously litigating other matters, but that this hardship does

6   not counsel a further stay beyond what has been granted. This interest is neutral.

7         **3.**      **Orderly Course of Justice**

8         The final *Landis* factor weighs impacts to the "orderly course of justice." As the Court

9   previously found, nothing in the record suggests that any of the extrinsic litigation in which

10   Plaintiffs are involved poses any risk of inconsistent rulings, nor have Plaintiffs explained how

11   prolonging the stay would simplify or clarify any legal issues or disputed facts. *See* Dkt. No. 54

12   at 3. This interest weighs against a stay.

13         Upon balancing the *Landis* factors, the Court DENIES Plaintiffs' motion to extend the stay.

14   **B.**      **Plaintiffs' Request to Waive the Bond Requirement Under RCW 6.36.045**

15         The Washington statute cited by Plaintiffs governs stays of "execution of foreign

16   judgment" in Washington Superior Court. Here, Plaintiffs move to extend a stay of proceedings

17   in *this* action before *this* Court, not a stay of execution of a foreign judgment by the Superior

18   Court (relief which, as previously explained, this Court cannot provide (*see* Dkt. No. 66)).

19   Accordingly, RCW 6.36.045 does not apply. While the Federal Rules of Civil Procedure contain

20   an analogous provision regarding stays of proceedings *to enforce a judgment* (*see* Fed. R. Civ.

21   P. 62), no bond is required for the stay Plaintiffs seek here (and in any case, the Court is not

22   granting a further stay). Accordingly, the request to waive bond is DENIED AS MOOT.

23         To the extent that the request to waive bond is actually a "request to recognize that

24   enforcement of the contested Florida judgment in Washington should be stayed without

1    requiring" bond (Dkt. No. 56 at 9), the motion is denied for the reasons set forth in the Court's

2    Order denying Plaintiffs' request for a temporary restraining order. *See generally* Dkt. No. 66.

3    **C.    Plaintiffs' Request to Suspend or Modify the Meet-and-Confer Requirement**

4    Plaintiffs allege that requiring them to meet and confer as required by the Local Civil

5    Rules of this district, *see* LCR 7(a) and 7(i), would require them to discuss "matters involving

6    traumatic subject matter" with opposing counsel, expose them to "documented psychological

7    risks," and therefore raise "serious due process and ADA concerns." Dkt. No. 56 at 11. Plaintiffs

8    request that the Court either waive the meet-and-confer requirement or order that the Parties

9    satisfy this obligation through "written communication only." *Id.*

10    Plaintiffs provide neither law nor facts to support this request. Plaintiffs appear to refer to

11    the requirements of the Americans with Disabilities Act (ADA). However, the Court is aware of

12    no authority under the ADA or elsewhere that the meet-and-confer requirement may be waived,

13    and Plaintiffs have provided none. Pro se litigants, by definition, are representing themselves,

14    and will naturally be obliged to discuss deeply personal matters, often surrounding the most

15    disruptive events in their lives. Even so, and "while courts construe pleadings liberally in favor

16    of pro se litigants, pro se litigants are required to follow procedural rules." *Coleman v. Brand*,

17    No. C23-6135, 2024 WL 3346230, at *1 (W.D. Wash. July 9, 2024) (citing *Ghazali v. Moran*, 46

18    F.3d 52, 54 (9th Cir. 1995)). Furthermore, the Court has been given no information that either

19    Plaintiff falls under the protections of the ADA.[7]

20

---

21    [7] Plaintiffs' motion refers to "Mrs. McNae's diagnosed trauma and PTSD," but neither the accompanying
     declaration nor any other evidence properly submitted with this motion substantiate a formal PTSD diagnosis. *See*
22    generally Dkt. Nos. 56 at 16–66. Even if such evidence were provided, "Plaintiff cannot rely solely on a medical
     diagnosis to support her claim that she suffered from a disability under the ADA." *Rood v. Umatilla Cnty.*, 526 F.
23    Supp. 2d 1164, 1175 (D. Or. 2007); *see also Velez-Rodriguez v. Didaxis, Inc.*, No. C23-1287, 2024 WL 3347228, at
     *3 (D.P.R. July 8, 2024) (finding same in context of reasonable accommodations by public entities under Title II of
     the ADA). More to the point, "Title II of the American with Disabilities Act does not apply to the federal judiciary."
24    *Nelson v. Wash. Bd. of Indus. Appeals*, No. C25-5551, 2025 WL 1888092, at *3 (W.D. Wash. June 26, 2025) (citing

The Court further notes that the facts as presented by Plaintiffs do not support their request, as they allude to "[c]ounsel of record [who] is currently awaiting admission to the Washington Bar" and assert that "full representation is expected to be finalized within the next 30 days." Dkt. No. 56 at 10. Plaintiffs filed their motion on August 14, 2025. *Id.* If their assertion is accurate, said counsel would be expected to enter an appearance by September 13, 2025, and would then have a full work week to confer with Defendant's counsel on Plaintiffs' behalf before the September 19, 2025, deadline. *See* Dkt No. 54 at 4. Regardless, until such time as counsel enters an appearance, Plaintiffs are representing themselves pro se and must comport with the meet-and-confer requirement. The request to waive or modify the meet-and-confer requirement is DENIED.

## IV.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    Plaintiffs' Expedited Motion to Stay Proceedings (Dkt. No. 56) is DENIED. The stay in this matter shall end on **September 5, 2025**, as provided in the Court's previous Order (Dkt. No. 54).

(2)    Pursuant to Defendant's offer to refrain from contacting Plaintiffs until after the scheduled adoption finalization, the Parties SHALL refrain from making any filings and from contacting one another before **September 10, 2025**. Given this additional delay, the Court will *sua sponte* EXTEND the deadline for the joint status report to **October 1, 2025**.

---

*Murray v. Murguia*, Case No. C25-1364, 2025 WL 1442705 at *1 (N.D. Cal. May 9, 2025)), *reconsideration denied,* 2025 WL 2052604 (W.D. Wash. July 22, 2025). Reasonable accommodations for litigants in this District are addressed in the WAWD Accommodations Guidelines located at www.wawd.uscourts.gov/sites/wawd/files /WAWDAccommodationsGuidlines.pdf. *Id.*

(3)     The clerk is DIRECTED to SEAL the documents at Docket Nos. 56 and 58. So that the record is complete, Plaintiffs SHALL file a corrected version of their motion to extend the stay (Dkt. No. 56), with all required redactions applied to pages 21–27, by **October 1, 2025**. *See* Fed. R. Civ. P. 5.2(a); LCR 5.2(a). The document shall not otherwise be modified in any way.

(4)     The clerk is further DIRECTED to SEAL the documents at Docket No. 63, as exhibits to this filing include the unredacted names of minors in violation of FRCP 5.2(a)(3) and LCR 5.2(a)(2). Because this filing was stricken and has not been not relied upon by the Court in any way, Plaintiffs are not required to submit a redacted filing for the record.

(5)     The improper filings at Docket Nos. 57, 71-1, 71-2, 72, 72-1, 73, 76, 76-1, and 77 are STRICKEN.

(6)     Plaintiffs are ADVISED that future filings in support of or in opposition to pending motions, other than properly filed responses under LCR 7(2), replies under LCR 7(3), or praecipes under 7(m), will be summarily stricken.

Dated this 4th day of September, 2025.


Tana Lin
United States District Judge