*Pro Se 2025*

THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>ARAG INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:24-cv-00211-TL<br><br>MOTION FOR JURISDICTIONAL RULING AND § 1447(c) RELIEF<br><br>(Addressing Defendant's Misrepresentation of ERISA Plan Status)<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 14, 2025 |

*Pro Se 2025* THE HONORABLE TANA LIN

**TABLE OF CONTENTS**


| Section | Page |
|---|---|
| Table of Authorities | 3 |
| Cases | 3 |
| Statues and Rules | 4 |
| I. Introduction | 5 |
| II. Factual Background | 5-7 |
| A. Microsoft Statement (Oct. 15, 2025) | 5 |
| B. Form 5500 and DOL Safe-Harbor Criteria (2019–2024) | 6 |
| C. Washington OIC Regulatory Classification (Oct. 9, 2025) | 6 |
| D. Employee Pay Records and Conversion of Coverage | 6 |
| E. ARAG's Contradictory Positions and Litigation Conduct | 7 |
| F. Procedural Context and Purpose of Preservation | 7 |
| III. Legal Standard | 7-9 |
| IV. Analysis | 10-12 |
| V. Impact and Prejudice | 14-18 |
| Plaintiffs' Good Faith and Context for Prior Filings | 15-18 |
| VI. Relief Requested | 18-19 |
| VII. Conclusion | 19-20 |
| Certificate of Service | 21 |

## TABLE OF AUTHORITIES

### CASES

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) .................... 8–9

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) .................... 9

*Cline v. Industrial Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000) 8, 12, 13

*Thompson v. American Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996) .................... 6, 9

*Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444 (4th Cir. 1993) .................... 9

*Johnson v. Watson Wyatt & Co.*, 409 F. Supp. 2d 747 (D. Md. 2006) .................... 9

*Benis v. Reliance Standard Life Ins. Co.*, No. 2:18-cv-00164 (W.D. Wash. Jan. 11, 2019) .........10

*Walker v. AT&T Benefit Plan No. 3.*, 2021 WL 2623231 (C.D. Cal. June 24, 2021) ..................10

*Bowles v. Allstate Ins. Co.*, (W.D. Wash. Feb. 6, 2025) .................... 9

*United States v. Hays*, 515 U.S. 737 (1995) .................... 9

*Qualls v. Blue Cross of Cal.*, 22 F.3d 839 (9th Cir. 1994) .................... 8

*Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir. 1988) .................... 8

*Wright v. Unum Group*, 2024 WL 1488992 (W.D. Wash. Apr. 5, 2024) .................... 8

*Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916 (9th Cir. 2011) .................... 16

*Doe v. Hagenbeck*, 870 F.3d 36 (2d Cir. 2017) .................... 16, 18

*People v. Turner*, 86 Cal. App. 3d 829 (Cal. Ct. App. 1978) .................... 17

*United States v. Shaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993) .................... 16, 18

*In re Glass*, 67 Cal. 2d 529 (Cal. 1967) .................... 18

*Clark Cnty. Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840 (2000) .................... 17, 18

## STATUTES & RULES

**28 U.S.C. § 1447(c)** ............ 5, 8–10, 13, 19-20

Authorizes remand for lack of subject-matter jurisdiction and cost-shifting for improper removal

**29 U.S.C. § 1002(1)** ............ 18

Defines “employee welfare benefit plan” under ERISA; cited when asserting ARAG’s product falls outside this definition

**29 C.F.R. § 2510.3-1(j)** ............ 6, 9, 10

Department of Labor safe-harbor rule excluding voluntary, employee-paid plans from ERISA

**29 C.F.R. § 2560.503-1** ............ 10

Defines scope of the ERISA “administrative record” and disclosure obligations; supports inference that no valid ERISA plan exists where full record is not produced

**RCW 48.01.290** ............ 6, 12, 13

Defines “legal service contract” and exclusion from insurance regulation

**RCW 48.30.015** ............ 17-19

Washington Insurance Fair Conduct Act (IFCA); supports application of state remedies

**RCW 19.86** ............ 17, 19

Washington Consumer Protection Act (CPA)

**Fed. R. Civ. P. 11(b)(2)-(3)** ............ 5, 8, 13

Requires factual and legal foundation for filing; governs sanctions for misrepresenting jurisdiction

**Fed. R. Civ. P. 15(a)(2); LCR 16(b)(4)** ............ 19

Permits amendment of pleadings for good cause to correct record and add parties/witnesses

## I. INTRODUCTION

Plaintiffs respectfully move under 28 U.S.C. § 1447(c) for a jurisdictional ruling confirming that this Court lacks subject-matter jurisdiction because the ARAG "UltimateAdvisor" legal-services product is not governed by ERISA. On January 31, 2024, Defendant ARAG Insurance Company removed this action from King County Superior Court to this Court, asserting federal jurisdiction under ERISA based on the claim that Microsoft acted as the "Plan Administrator."

That premise has now been refuted by Microsoft itself and by the Washington Office of the Insurance Commissioner (OIC). These developments concern jurisdiction—not the merits. Because ERISA preemption was asserted without evidentiary support, federal jurisdiction never properly attached, and the case must proceed under Washington law or, in the alternative, be remanded to King County Superior Court. Removal premised on a non-existent ERISA plan violates the factual-foundation requirement of Rule 11(b)(3) and warrants cost-shifting under § 1447(c).

## II. FACTUAL BACKGROUND

### A. Microsoft Statement (Oct. 15, 2025)

Microsoft Benefits confirmed in writing that it "had no role in administration of ARAG's group Legal Insurance." (**Ex. 1**.) Employees enrolled on a voluntary, self-pay basis via payroll deduction; Microsoft made no contributions and performed no fiduciary or administrative function. When employment ended, ARAG offered a direct-pay, individual "UltimateAdvisor" conversion—

severing any Microsoft involvement and confirming a purely contractual relationship between ARAG and the insureds.

**B. Form 5500 and DOL Safe-Harbor Criteria (2019–2024)**

Microsoft's Form 5500 filings list ARAG only as a vendor. They show no employer contributions or trust funding, no fiduciary administrator, and a plan type classified simply as "Other (benefit type)." Participation fluctuated as employees opted-in voluntarily. Under 29 C.F.R. § 2510.3-1(j), a plan meeting four conditions—no employer contribution, voluntary participation, limited employer involvement, and no employer compensation—falls outside ERISA. ARAG's arrangement meets all four prongs of this test. See *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996). (**Ex. 3**).

**C. Washington OIC Regulatory Classification (Oct. 9, 2025)**

The Washington Office of the Insurance Commissioner indicates that ARAG's product is regulated as a legal-service contract under RCW 48.01.290—not as insurance nor ERISA plan. State law therefore governs its marketing, disclosure, and claim-handling obligations. (**Ex. 2**).

**D. Employee Pay Records and Conversion of Coverage**

Microsoft pay records (2019–2023) show after-tax deductions labeled "Legal Plan – $9.88," with no employer subsidy. After employment ended, coverage continued only through direct self-payment to ARAG, eliminating any employer role. The relationship is thus a private consumer contract, not an employee-welfare benefit plan. (**Ex. 4**).

The 2023 ARAG "UltimateAdvisor Conversion Certificate of Insurance" confirms that coverage was issued directly to the individual policyholder, not through Microsoft, and contains no reference to ERISA or any plan administrator—demonstrating that this is a voluntary, employee-paid legal-services plan governed by state law, not an ERISA-regulated benefit. (**Ex. 7**).

**E. ARAG's Contradictory Positions and Litigation Conduct**

In this case, ARAG has invoked **ERISA preemption** to anchor federal jurisdiction and resist discovery. Public dockets in *Heit v. ARAG* (S.D. Iowa, No. 4:25-cv-00010) show a straight **insurance/contract** dispute—not an ERISA case. This court's docket activity reflects the same: no ERISA preemption theory. Meanwhile, ARAG's own materials describe its legal plan as a **voluntary, employee-paid benefit** with "participation" and "reenrollment" metrics, consistent with a voluntary plan model rather than an employer-administered ERISA welfare plan. Taken together, that contrast supports the inference that ERISA is being used here as a litigation position rather than a jurisdictional reality.

**F. Procedural Context and Purpose of Preservation**

Plaintiffs raise these facts solely to establish that federal jurisdiction was improper from the outset. Broader issues of coverage handling and counsel interference are preserved for later proceedings under Washington law. At this stage, the question is jurisdictional only—whether ERISA ever applied. It did not.

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and have an independent obligation to ensure that subject-matter jurisdiction exists before proceeding. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A party invoking federal jurisdiction must do so with both factual and legal support. Under Fed. R. Civ. P. 11(b)(2)–(3), a filing certifies that:

- the legal claims are warranted by existing law or by a non-frivolous argument for its modification; and
- the factual contentions have evidentiary support or will likely have such support after reasonable investigation.

When a party misrepresents jurisdictional facts—particularly to remove a case to federal court—sanctions may be appropriate. As the Ninth Circuit held in *Cline v. Industrial Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223, 1226 (9th Cir. 2000), ERISA preemption must be proven, not presumed, and unsupported ERISA removal may warrant remand and sanctions. The court emphasized that "a defense based on ERISA is not sufficient for federal jurisdiction unless the plaintiff's claim is completely preempted." *Id*. See also *Qualls v. Blue Cross of Cal.*, 22 F.3d 839, 843 (9th Cir. 1994) ("ERISA preemption applies only where a benefit plan exists and is established or maintained by an employer."); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988) (same). These Ninth Circuit decisions reinforce that employer involvement—not mere vendor facilitation—defines the boundary of ERISA jurisdiction. See also *Wright v. Unum Group*, 2024 WL 1488992 (W.D. Wash. Apr. 5, 2024) (rejecting ERISA removal where employer's role was limited to payroll deduction).

Under 28 U.S.C. § 1447(c), if a case is removed without jurisdictional foundation, the court must remand and may award "payment of just costs and any actual expenses, including attorney

fees, incurred as a result of the removal." The Supreme Court in *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), clarified that fee awards under § 1447(c) are proper when the removing party lacked an objectively reasonable basis for removal. Moreover, federal courts must address jurisdiction *sua sponte* whenever it is in doubt. As reaffirmed in *Arbaugh*, 546 U.S. at 514, jurisdiction "must be policed by the courts on their own initiative even at trial." See also *United States v. Hays*, 515 U.S. 737, 742 (1995) (standing and jurisdiction are threshold, non-waivable issues).

Courts across circuits have consistently held that voluntary, employee-paid legal-service or insurance plans are not governed by ERISA when the employer's role is limited to facilitating payroll deductions. See, e.g., *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429 (6th Cir. 1996); *Johnson v. Watson Wyatt & Co.*, 409 F. Supp. 2d 747 (D. Md. 2006); *Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 447–48 (4th Cir. 1993). Each example applies the Department of Labor's safe-harbor rule, 29 C.F.R. § 2510.3-1(j), which excludes any plan meeting four criteria:

1) no employer contributions;
2) voluntary participation;
3) limited employer involvement such as payroll deduction; and
4) no employer compensation.

Within this District, courts have likewise disapproved of insurers who rely on unsupported or shifting theories of jurisdiction. In *Bowles v. Allstate Ins. Co.* (W.D. Wash. Feb. 6, 2025), the court sanctioned an insurer for asserting ERISA preemption without evidence, citing the procedural harm caused by delay and forum manipulation.

In sum, removal based on ERISA must rest on a demonstrably valid factual and legal foundation. When it does not—as here—the Court not only may, but must, correct the record, sanction misuse of process, and restore the case to its proper jurisdictional footing under § 1447(c). *See* Congressional Research Service, "ERISA: Legal Framework and Recent Supreme Court Litigation" (R48470, Mar. 21, 2025) (**Ex. 5**), explaining that voluntary, employee-paid legal-service plans meeting 29 C.F.R. § 2510.3-1(j) fall outside ERISA's definition of an employee-welfare benefit plan.

Courts have repeatedly held that an insurer asserting ERISA jurisdiction must produce the complete administrative record—not merely a certificate or summary—to establish the existence of a qualifying ERISA plan. Department of Labor regulations, 29 C.F.R. § 2560.503-1, define "relevant" documents broadly to include all materials considered or generated in connection with the claim decision. See *Walker v. AT&T Benefit Plan No. 3*, 2021 WL 2623231 (C.D. Cal. June 24, 2021); *Benis v. Reliance Standard Life Ins. Co.*, No. 2:18-cv-00164 (W.D. Wash. Jan. 11, 2019). Failure to produce the full administrative record supports an inference that the plan either does not exist or was never administered under ERISA.

## IV. ANALYSIS

**Application of the Department of Labor Safe-Harbor Rule.**

Under 29 C.F.R. § 2510.3-1(j), a legal-services plan is excluded from ERISA when **all** of the following conditions are met: (1) the employer makes no contributions; (2) employee

participation is voluntary; (3) the employer's sole function is to collect and remit premiums without endorsing or administering the plan; and (4) the employer receives no compensation. Each element is satisfied here:

- **No contributions** – Microsoft's payroll records show after-tax deductions only (**Ex. 4**).
- **Voluntary participation** – Enrollment was optional and fluctuated (**Ex. 3**).
- **Limited involvement** – Microsoft's HR statement confirms it had "no role in administration" (**Ex. 1**).
- **No compensation** – Form 5500 filings list no employer reimbursement or fee (**Ex. 3**).

Because all four safe-harbor prongs are met, ARAG's plan falls entirely outside ERISA's reach.

ARAG's removal of this case to federal court was not a mistake—it was a **calculated misrepresentation**. The claim that Microsoft acted as the ERISA Plan Administrator has been flatly refuted by Microsoft itself. The plan at issue involves no employer contributions, no fiduciary oversight, and no ERISA-compliant administration. It is a voluntary, employee-funded legal-services product regulated exclusively under Washington law. Included for context purposes only, ARAG's March 2025 declarations which were stricken by the court (Dkts. 52-53) illustrate prior misrepresentation that Microsoft served as the *"Plan Administrator"* and *"policyholder."* (**Ex. 8**) The same declarants filed new sworn statements abandoning those representations and indicating that ARAG found no ERISA analysis predating this litigation. (**Exs. 11-12**). This reversal confirms that the ERISA jurisdictional assertion lacked any factual foundation.

ARAG's assertion of ERISA jurisdiction contradicts:

- Federal law and the Department of Labor's safe-harbor criteria;
- ARAG's own internal documents and marketing representations;
- Its statements in parallel litigation; and
- Formal findings by the Washington Office of the Insurance Commissioner.

As detailed in correspondence from prior counsel Alaina Fotiu-Wojtowicz and Stephanie Casey (**Ex. 9**), ARAG unilaterally terminated Plaintiffs' counsel 90 days before trial—conduct later cited in IFCA notices as part of its bad-faith pattern. Plaintiffs had already invoked Washington's regulatory process through IFCA notices (**Ex. 10**), underscoring that state-law oversight—not ERISA—governs ARAG's conduct

**ARAG's own filings confirm these misrepresentations.** In its Opposition (Dkt. 67), ARAG stated that "ARAG has previously provided factual background regarding (a) the legal insurance it provided through Mr. McNae's employee benefit package from Microsoft" *Id.* at 5. It further described Microsoft as "the policyholder" in the policy terms attached at *Id.* at 16, asserting that "the attorney is not our agent or employed by us or the policyholder [Microsoft]." These statements were false. Microsoft's HR department has since confirmed in writing that it had **no role** in the administration of ARAG's legal plan, made **no contributions**, and was **not a fiduciary or policyholder**. Likewise, the Washington Office of the Insurance Commissioner has determined that the product is a **legal-services contract** regulated under RCW 48.01.290—not an ERISA plan.

These contradictions demonstrate that ERISA was invoked as a litigation tactic, not a factual jurisdictional basis. A party cannot secure federal jurisdiction by misrepresenting the existence of an ERISA plan. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1226 (9th Cir. 2000) ("ERISA preemption must be proven, not presumed.").

This is not a close question—the factual and legal foundation for ERISA jurisdiction has collapsed. The consequences have been significant. ARAG's ERISA invocation delayed discovery, obstructed Plaintiffs' access to key documents and witnesses, and derailed claims properly governed by Washington's consumer-protection and insurance statutes. This tactic mirrors ARAG's past conduct in this very case—asserting baseless positions, stonewalling discovery, and retreating only when contrary evidence became unavoidable. (*See* Dkt. 28 at 2–4.)

ARAG now admits it performed no ERISA analysis before asserting jurisdiction and claims any later review is privileged. Rule 11(b)(3) prohibits such post-hoc justification. So does basic fairness. See *Cline* ("ERISA preemption must be proven, not presumed."). Here, ARAG neither proved nor possessed facts to support its assertion.

The Washington Office of the Insurance Commissioner's independent finding confirms that this is not merely a private dispute but a systemic regulatory issue. The OIC letter indicates that ARAG's product falls squarely under RCW 48.01.290—not ERISA (**Ex. 2**). That conclusion aligns with Microsoft's statements, ARAG's own filings in *Heit v. ARAG* (S.D. Iowa), and the undisputed reality of how the product has been administered for years. No federal agency—not even the Department of Labor—has treated ARAG's pre-paid legal benefit offering as an ERISA-governed welfare benefit.

A jurisdictional correction is now imperative. Leaving this misrepresentation intact would reward procedural manipulation, distort the judicial record, and deny Plaintiffs the full protections Washington law was designed to provide. Under 28 U.S.C. § 1447(c), this Court has both the authority and the obligation to restore the case to its proper jurisdictional footing.

As reflected in the parties' October 9 and 16, 2025 draft Joint LCR 37(a)(2) Submission (**Ex. 6**), ARAG confirmed in writing that no additional plan instruments, fiduciary designations, or administrative-record materials exist to substantiate its ERISA claim. Plaintiffs include the unfiled joint statement for context only—to illustrate that ARAG's own sworn discovery responses admit the absence of any evidence supporting ERISA governance. Notably, on the morning of October 16, 2025, before finalizing its LCR 37 submission, ARAG received Microsoft's written statement from the OIC expressly denying any plan-administration role (**Ex. 1**). ARAG nevertheless maintained its ERISA position in that same filing, underscoring that its assertion of federal jurisdiction was knowingly unsupported. ARAG's new October 16, 2025 declarations (**Exs. 11-12**) retract those earlier statements, confirming no ERISA analysis or Microsoft administrative role ever existed.

## V. IMPACT AND PREJUDICE

ARAG's conduct is not an isolated lapse but part of a sustained pattern of obstruction. By invoking ERISA under false pretenses, ARAG delayed discovery, obscured critical evidence, and derailed claims that properly belonged under Washington law. The improper removal foreclosed application of Washington's Insurance Fair Conduct Act and Consumer Protection Act—statutes designed to prevent precisely this kind of insurer overreach.

Once challenged, ARAG continued to obstruct rather than correct course. It withheld plan documents, resisted depositions, and shifted legal theories to avoid factual scrutiny. Each maneuver compounded the harm: coverage was suspended, counsel was replaced or silenced, and testimony that could have altered the outcome in related proceedings was suppressed.

The prejudice to Plaintiffs has been profound. A family—including a survivor of gender-based violence and minor children—has endured years of financial and emotional fallout after paying for coverage that was supposed to protect them. What began as a promise of legal assistance became a mechanism of control, leaving Plaintiffs exposed to multimillion-dollar judgments and reputational damage.

These are not abstract injuries. The denial of representation when they needed it most and the misclassification of coverage deprived Plaintiffs of the protections guaranteed to every Washington consumer. The Office of the Insurance Commissioner's recent recognition that ARAG's practices raise broader regulatory concerns underscores the public interest at stake. This is not a private contractual dispute—it exemplifies an insurer exploiting Federal jurisdictional manipulation to evade state oversight. Washington law was enacted to prevent exactly this form of misconduct. Those protections are not viable if federal ERISA jurisdiction is secured through misrepresentation and allowed to stand unexamined.

**Plaintiffs' Good Faith and Context for Prior Filings –** Plaintiffs recognize that, as pro se litigants, they owe a duty of candor to the Court and have strived to honor that obligation under extraordinary circumstances. Any earlier filings that appeared inconsistent or urgent were made out of genuine panic and fear—fear that their children's stability and home were at risk and that ongoing misconduct would continue unchecked. These reactions were not the product of dishonesty but of trauma and exhaustion.

Ms. McNae's long-standing post-traumatic stress disorder—rooted in the underlying gender-based violence and compounded by years of litigation-driven deception—has at times

made it difficult to respond with procedural precision. Yet her intent has never wavered: to tell the truth and preserve the record. For years, Ms. McNae has fought largely alone—as an Asian-American woman of color confronting a series of privileged, well-connected white male adversaries. That imbalance has magnified the trauma and sense of isolation she has endured. As Senator Patty Murray recently observed, "Americans deserve a justice system that will uphold the rights of everyone, not just the wealthy and well-connected." This case tests that principle: access to justice must turn on truth, not privilege.

As the Court explained: "A pro se party's pleadings must be 'liberally construed' and held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). See *Nair v. Toth*, No. 2:23-cv-00454-TL, slip op. at 4 (W.D. Wash. Oct. 19, 2023) ("That said, courts should not have to serve as advocates for pro se litigants."). Judge Lin emphasized that this liberal construction does not excuse a court from its procedural obligations; pro se litigants remain subject to the same procedural rules as represented parties. (*Nair*, slip op. at 4).

That principle applies squarely here. Plaintiffs acted in good faith under immense pressure. Their procedural missteps reflected human vulnerability—not deception. See *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) ("Not every failure to disclose or mistaken statement is fraud on the court; the inquiry turns on intent, context, and prejudice.").

Courts have likewise recognized that trauma can affect not only a survivor's clarity, recall, and consistency, but also demeanor and decorum—without diminishing truthfulness. See *Doe v.*

*Hagenbeck*, 870 F.3d 36, 51 (2d Cir. 2017) (acknowledging trauma's cognitive impact on survivors of sexual abuse); *People v. Turner*, 86 Cal. App. 3d 829, 835–36 (Cal. Ct. App. 1978) (recognizing that inconsistencies or emotional outbursts from a sexual-assault survivor stem from trauma rather than deceit). Modern research confirms the same: post-traumatic stress may manifest through dissociation, panic responses, or sudden loss of composure—behaviors that reflect physiological survival mechanisms, not disrespect for the Court.

Defendant's attempt to downplay Plaintiffs' good-faith reporting to regulators is not a mere procedural quarrel—it is part of the same pattern of silencing and institutional minimization that often surrounds gender-based violence and systemic inequity. When survivors or consumers lawfully seek oversight, their actions should be met with respect, not contempt. To trivialize such reporting only magnifies the harm and perpetuates the culture of avoidance that enables abuse of process. Plaintiffs acted from necessity and protection, not opportunism.

Washington law embodies that same commitment to equity and truth. Its consumer-protection and insurance-fair-conduct statutes ensure that those who speak up in good faith—particularly survivors of gender-based violence—are not punished for doing so. See RCW 48.30.015; RCW 19.86.920; *Clark Cnty. Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 849 (2000). The devastation that follows when lawful reporting is mocked underscores why those statutes exist—to guarantee that every person, regardless of race, gender, or privilege, can access justice without fear of reprisal.

Courts construe pro se filings liberally and evaluate them in light of good faith and context. See *Haines v. Kerner*, 404 U.S. 519 (1972); *Erickson v. Pardus*, 551 U.S. 89 (2007). Candor

requires honesty, not perfection. *In re Glass*, 67 Cal. 2d 529, 537 (Cal. 1967); *Shaffer Equip.*, 11 F.3d at 462. Trauma can affect expression, consistency, and demeanor without diminishing truthfulness. *Doe*, 870 F.3d at 51; *Turner*, 86 Cal. App. 3d at 835–36. Public policy favors protecting good-faith reporting and participation in oversight. RCW 48.30.015; *Clark Cnty. PUD*, 139 Wn.2d at 849.

## VI. RELIEF REQUESTED

ARAG's persistent procedural gamesmanship has already consumed significant judicial and party resources. Its removal from King County Superior Court under false ERISA pretenses multiplied the burden on this Court and on the Plaintiffs, who have had to correct the record through regulatory filings, correspondence with Microsoft, and now this motion. Rule 11 exists precisely to deter such misuse of process—especially where, as here, jurisdictional falsehoods distort the course of litigation and deprive insureds of the benefit of state-law protections.

This Court should formally recognize that ERISA does not apply, consistent with the Washington Office of the Insurance Commissioner's regulatory classification, Microsoft's own statements, and federal safe-harbor law.

Accordingly, Plaintiffs respectfully request that this Court:

1. **Issue a Jurisdictional Ruling.** Declare that ARAG's "UltimateAdvisor" and related Microsoft-offered legal-service products are not ERISA plans under 29 U.S.C. § 1002(1), but instead state-regulated legal-service contracts subject to Washington law.

2. **Apply Washington Law and Permit Amendment.** Confirm that Plaintiffs' claims proceed under Washington law—including RCW 48.30.015 (Insurance Fair Conduct Act), RCW 19.86 (Consumer Protection Act), and Washington's common-law doctrines of bad faith, negligence, and breach of fiduciary duty—with the full procedural and substantive protections those laws afford, including discovery rights, jury trial, and remedies available under state law.

   Considering the new evidence and regulatory findings that emerged during the pendency and partial stay of this case, Plaintiffs also respectfully request leave under Fed. R. Civ. P. 15(a)(2) and LCR 16(b)(4) to amend their complaint, add additional responsible parties, and identify supplemental experts and witnesses. These amendments are necessary to ensure the record reflects the full scope of ARAG's conduct and to allow the case to proceed on a complete evidentiary foundation consistent with Washington's remedial framework.

3. **Award Limited Rule 11 and § 1447(c) Relief.** Grant compensatory cost-shifting equal to Plaintiffs' filing fees and reasonable expenses incurred correcting Defendant's ERISA misrepresentations, to deter repetition of similar conduct.

## VII. CONCLUSION

Plaintiffs respectfully request that this Court issue a jurisdictional ruling confirming that ERISA does not apply to ARAG's legal-services product, permit the case to proceed under

Washington law, and award limited relief under Rule 11 and 28 U.S.C. § 1447(c). This is not merely a technical correction—it is essential to restore integrity to these proceedings and prevent repetition of conduct now under regulatory scrutiny. This motion stems not from grievance but from a principled effort to hold ARAG accountable. Plaintiffs reported misconduct in good faith. ARAG responded with delay, misrepresentation, and procedural exploitation. Plaintiffs ask only that the record reflect the truth: that ARAG used a false jurisdictional claim to suppress rights, obstruct justice, and silence those it was paid to protect.

RESPECTFULLY SUBMITTED on October 20, 2025.

I certify that this memorandum contains 3,741 words in compliance with Local Civil Rules.

LCR 37 certification not required. This motion raises a jurisdictional issue, not a discovery dispute.



By: */s/ Ronda Delapina McNae*
Ronda McNae
Pro se Plaintiff
504 11th PL
Kirkland, WA 98033
(206) 914-6752
Prose.Rmcnae@gmail.com
Prose.Wmcnae@gmail.com

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the United States of America and the State of Washington that on October 20, 2025, I caused the foregoing document to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record listed below. I also served courtesy copies by electronic mail as indicated:

***Counsel for Defendant ARAG Insurance Company:***

Michael T. Mullaly (pro hac vice)
Squire Patton Boggs (US) LLP 2000
Huntington Center 41 South High Street
Columbus, OH 43215
michael.mullaly@squirepb.com

- ☒ Via CM/ECF
- ☐ Via electronic mail
- ☐ Via U.S. Mail, postage prepaid
- ☐ Via Facsimile
- ☐ Via Courier
- ☐ Via Overnight delivery

***Counsel for Defendant ARAG Insurance Company:***

Benjamin Roesch, WSBA No. 39960
Jensen Morse Baker PLLC
520 Pike St, Suite 2375
Seattle, WA 98101
Benjamin.roesch@jmblawyers.com

- ☒ Via CM/ECF
- ☐ Via electronic mail
- ☐ Via U.S. Mail, postage prepaid
- ☐ Via Facsimile
- ☐ Via Courier
- ☐ Via Overnight delivery

DATED this 20th day of October, 2025, in Kirkland, WA.

By: */s/ Ronda McNae*
Ronda McNae (Pro se)

By: */s/ William McNae*
William McNae (Pro s

*Pro Se 2025* THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>ARAG INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:24-cv-00211-TL<br><br>DECLARATION OF RONDA MCNAE IN SUPPORT OF MOTION FOR JURISDICTIONAL RULING AND § 1447(c) RELIEF |

I, Ronda McNae, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a named Plaintiff in this action. I make this declaration based on my personal knowledge and review of the attached records. Each exhibit referenced below is a true and correct copy of the document it purports to be.

2. Attached hereto as **Exhibit 1** is a true and correct copy of a written statement from Microsoft HR/Benefits dated October 15, 2025, confirming that Microsoft "had no role in administration of ARAG's group Legal Insurance," made no contributions, and served no fiduciary or policyholder function. This document directly refutes ARAG's claim that Microsoft acted as Plan Administrator and ARAG's legal services do not qualify as an ERISA employee welfare benefit plan under 29 U.S.C. § 1002(1).

3. Attached hereto as **Exhibit 2** is a true and correct copy of the October 9, 2025 letter from the Washington Office of the Insurance Commissioner (Property & Casualty Division) confirming that ARAG's product is regulated under RCW 48.01.290 as a legal-service contract, not an ERISA plan (OIC Case No. 1769089). Complaint from Ms. McNae October 7, 2025 and March 28, 2025 (immediately following Nichelle Womble's, ARAG-funded Counsel, coercive pressure for a "global settlement" and strict prohibition of Ms. McNae filing any consumer complaint). This exhibit shows State Regulatory involvement and recognition of Washington jurisdiction and oversight. The OIC letter shows that Washington regulators recognize ARAG's plan as state-regulated, not ERISA-governed.

4. Attached hereto as **Exhibit 3** are true and correct excerpts from Microsoft's Form 5500 filings (2019–2024) showing ARAG listed only as a vendor, not fiduciary administrator. There are no employer contributions. The Schedule A format expressly allows non-fiduciary vendors—like ARAG—to appear for reporting purposes only. Form 5500 Schedule A is available to download publicly from the Department of Labor.

5. Attached hereto as **Exhibit 4** are true and correct copies of Microsoft pay stubs (2019–2023) reflecting voluntary, after-tax deductions labeled "Legal Plan – $9.88." These records confirm the plan was employee-paid and not employer-sponsored. Each pay stub lists "LEGAL PLAN" under After-Tax Deductions alongside other voluntary items. There is no corresponding employer contribution or reimbursement line. ERISA welfare benefits (health, dental, disability) are typically pre-tax. The ARAG Legal Plan is specifically a deductions after-tax. The recurring $10.29 deduction across multiple pay periods and years matches ARAG's standard national premium rate for self-pay plans. Confidential line items have been redacted but can be made available to the court upon request.

6. Attached hereto as **Exhibit 5** is a true and correct copy of the federal report titled *"ERISA — Legal Framework and Recent Supreme Court Litigation"* (R48470, Mar. 21, 2025), a Congressional research service report explaining that voluntary, post-tax employee-paid legal-service plans fall outside ERISA's definition of an employee-welfare benefit plan. It provides federal interpretive context consistent with DOL safe-harbor rules and aligns with Washington OIC's finding that ARAG's product is regulated under RCW 48.01.290.

7. Attached hereto as **Exhibit 6** is a true and correct copy of the parties' October 9 and 16, **2025 Joint LCR 37(a)(2) Submission**, exchanged pursuant to the Court's July 5, 2024 Order (Dkt. 32) but not filed with the Court. This document, which has not been filed and is provided for context only, demonstrates ARAG's continued assertion that Microsoft—not ARAG—was the plan administrator and that no separate ARAG-maintained plan documents exist. ARAG's statements within that joint submission confirm that it asserts Microsoft, not ARAG, is the plan

administrator, and that no separate ARAG-maintained plan documents exist—facts that go directly to whether ERISA jurisdiction was misrepresented. Plaintiffs have therefore deferred filing the LCR 37 motion pending resolution of this threshold jurisdictional issue.

8. Attached hereto as **Exhibit 7** is a True and correct copy of ARAG's "Conversion Certificate of Insurance," showing individual policyholder coverage under the UltimateAdvisor plan, with no employer involvement or ERISA administrator designation.

9. Attached hereto as **Exhibit 8** are excerpts from Dkts. 52 and 53, which were later stricken by the Court, offered **solely for context** to illustrate ARAG's prior misrepresentation that Microsoft served as the *"Plan Administrator"* and *"policyholder."* In March 2025, ARAG filed the sworn declarations of Cosimano and Mullaly asserting that the *Microsoft Legal Plan* was governed by ERISA and that Microsoft was both the plan sponsor and administrator.

10. On October 16, 2025, after the Washington OIC transmitted Microsoft's HR email confirming that Microsoft "had no role in the administration," the same declarants filed new sworn statements abandoning those representations and stating that ARAG found no ERISA analysis predating this litigation. True and correct copies of these filings are attached as **Exhibits 11-12**.

11. The October 2025 declarations directly contradict ARAG's March 2025 declarations, demonstrating that ARAG's ERISA jurisdictional position was knowingly false when made.

12. Attached hereto as **Exhibit 9** is a true and correct copy of the November 30, 2023 letter from Ronda and William McNae's prior counsel, Alaina Fotiu-Wojtowicz and Stephanie Casey,

to ARAG documenting ARAG's termination of counsel without cause and interference with replacement representation approximately 90 days before trial.

13. Attached hereto as **Exhibit 10** is a true and correct copy of the January 17, 2024 & March 19, 2024 IFCA Written Notice Violations from Ruiz & Smart LLP to ARAG and the Washington OIC detailing violations of RCW 48.30.015 and WAC 284-30-330 through -380, confirming Plaintiffs' good-faith invocation of state regulatory oversight.

14. These exhibits collectively demonstrate that ARAG's removal was based on false jurisdictional representations and that federal jurisdiction never properly attached.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 19th day of October, 2025, at Kirkland, Washington.



By: /s/ *Ronda Delapina McNae*
Ronda McNae
Pro se Plaintiff
504 11th PL
Kirkland, WA 98033
(206) 914-6752
Prose.Rmcnae@gmail.com
Prose.Wmcnae@gmail.com