THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM MCNAE and RONDA MCNAE, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>ARAG INSURANCE COMPANY,<br><br>Defendant. | CASE NO. 2:24-cv-00211-TL<br><br>LCR 37 JOINT SUBMISSION REGARDING REQUEST FOR PRODUCTION OF ERISA PLAN DOCUMENTS AND ADMINISTRATIVE RECORD<br><br>NOTE ON MOTION CALENDAR: OCTOBER 21, 2025 |

## I. MOVING PARTY'S INTRODUCTORY STATEMENT

Pursuant to Local Civil Rule 37(a)(2) and Appendix B, Plaintiffs submit this joint statement regarding unresolved discovery disputes with Defendant ARAG Legal Insurance Company ("ARAG"). The parties conferred by telephone and email on September 18 and 22, and October 1 and 6, 2025, but were unable to reach agreement. These disputes are material because ARAG has indicated it intends to move for summary judgment on ERISA preemption; yet the discovery

1   withheld here concerns the very plan instruments, fiduciary designations, and administrative-

2   record materials that determine whether ERISA applies at all. Plaintiffs cannot fairly test or

3   respond to the anticipated dispositive motion essential to determining whether the governing law

4   is federal (ERISA) or state (Washington contract and consumer-protection law).

5       At the center of the dispute is ARAG's attempt to invoke ERISA preemption while

6   withholding the very plan instruments and fiduciary documents that would prove—or disprove—

7   its applicability. ARAG's own production and sworn testimony establish that Microsoft merely

8   sponsored employee enrollment, while ARAG itself exercised discretionary control over claim

9   administration, satisfying the definition of "fiduciary" under 29 U.S.C. § 1002(21)(A). If ERISA

10  applies, ARAG must produce the governing plan documents, § 503 procedures, fiduciary

11  designations, and the complete administrative record. If instead the post-employment

12  "UltimateAdvisor Conversion Plan" governs, ERISA preemption fails under Ninth Circuit law,

13  and Washington law applies. Either way, ARAG cannot wield ERISA as a shield while disavowing

14  the administrator duties that compel production of the very documents determining which legal

15  framework governs.

16      Plaintiffs therefore seek an order compelling full production of the plan instruments,

17  administrative-record materials, and communications reflecting ARAG's discretionary control;

18  requiring certification of completeness under Rule 34(b)(2)(C); and awarding any further relief

19  deemed appropriate under Rule 37(a).

20

21              **II. RESPONDING PARTY'S STATEMENT**

22      As context for this discovery dispute, ARAG refers the Court to its ERISA-based motion,

23  ECF #51-53, which the Court struck without prejudice and which ARAG intends to re-file shortly

in similar form, and to ARAG's response to Plaintiffs' motion to extend the stay, ECF #67-70.

Where a document cited in ARAG's responses has been filed, the ECF number is included.  At the

Court's request, ARAG will make any produced-but-not-filed documents available for *in camera*

review.

### III. DISPUTED DISCOVERY REQUESTS

**INTERROGATORY NO. 8:** If You contend that the Policy or subject claim is governed by

ERISA, state all facts and identify all documents relied on in support of that contention.

**Response to Interrogatory No. 8:** ARAG objects that the interrogatory is a broad contention

interrogatory and lacks proportionality because it purports to require ARAG to provide a detailed

narrative and analysis of its defensive case, notwithstanding that it is Plaintiffs' burden to establish

liability, if any. ARAG objects that this contention interrogatory is premature because discovery

in this matter is in its early stages. ARAG objects that some documents and information bearing

on the referenced issue may be outside ARAG's possession, custody, control, and/or knowledge—

and in some instances may be within Plaintiffs' or Microsoft's possession, custody, control, and/or

knowledge. ARAG objects that the interrogatory seeks disclosure of the mental impressions,

conclusions, opinions, or legal theories of counsel or other representatives of ARAG concerning

the litigation. ARAG objects to the request to the extent it seeks information protected by the

attorney-client privilege, work product doctrine, or any other privileges. Subject to and without

waiver of any objections, ARAG states as follows and reserves the right to amend and/or

supplement this response: ARAG incorporates herein by reference the contents of Defendant

ARAG Insurance Company's Motion for Leave to File Amended Answer Instanter (ECF 26),

together with Exhibits A, B, C, and D to the Declaration filed in support thereof (ECF 27.1, 27.2,

27.3, and 27.4, respectively). Further responding, ARAG states that each year Microsoft would send the Summary Plan Description (SPB) to ARAG to review, edit, update, and/or supplement the section in the SPD regarding legal insurance. ARAG would make edits/revisions and comments and send the marked up SPD back to Microsoft. Further responding, ARAG states that each year ARAG provided Microsoft with information necessary for Microsoft's completion of its Form 5500. Further responding, ARAG states that it prepared customized open enrollment materials for Microsoft, created marketing materials specific to Microsoft's legal plan, customized New Member on-boarding materials, etc.

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses. Further responding, ARAG and Microsoft worked closely to tailor ARAG's benefits, customer service metrics, and promotional communications to Microsoft's specifications. Microsoft and ARAG had a monthly status meeting, typically held in-person at Microsoft's offices, as well as an annual stewardship meeting in second quarter to discuss ARAG's performance during the prior policy year, any major changes in participation, and Microsoft's plan design preferences for the renewal policy—including analysis of any industry, economic, or societal developments that might affect Microsoft employees' future needs for varying types of legal services. Microsoft's approval was required for wide-scale communications from ARAG to Microsoft employees. Microsoft monitored the accessibility of ARAG's online portal and required ARAG to satisfy performance guarantees on matters such as the promptness with which an ARAG customer service representative answered calls received from enrolled Microsoft employees. Further responding, pursuant to Fed. R. Civ. P. 33(d), ARAG states that the answer to this interrogatory may be determined with substantially the same burden by examining the business

1   records previously produced and the business records produced contemporaneously with this

2   supplemental response (Bates number ARAG010283 onward).

3   **MOVING PARTY'S ARGUMENT (Interrogatory No. 8):**

4

5            ARAG's response to this contention interrogatory is facially deficient, offering objections

6   and generalities instead of the specific facts and documents required to support its ERISA defense.

7   The request asks ARAG to "state all facts and identify all documents" supporting its claim that the

8   Policy is governed by ERISA. Instead of identifying any facts or records, ARAG recites boilerplate

9   objections and refers vaguely to its motion papers and exhibits filed in another docket. That is not

10  a compliant answer under Rules 26(g)(1) and 33(b)(3). A responding party must provide the factual

11  basis for its position or point specifically to business records from which the answer may be

12  derived—not pleadings, motions, or marketing gloss. See *Hansel v. Shell Oil Co.*, 169 F.R.D. 303,

13  305 (E.D. Pa. 1996) (incorporating other documents "wholesale" is evasive and improper).

14           ARAG's invocation of privilege is overbroad: the interrogatory seeks **facts**, not legal

15  advice. Which entity served as plan administrator? Who exercised discretionary control? What

16  statutory safe-harbor exceptions were analyzed? Those are factual issues central to jurisdiction and

17  preemption. ARAG's answer—claiming Microsoft "sent the SPD" and "required ARAG to meet

18  performance guarantees"—actually reinforces that ARAG, not Microsoft, handled claim

19  administration and customer-service metrics, rendering ARAG a de facto fiduciary under 29

20  U.S.C. § 1002(21)(A). Yet ARAG provides no evidence of any fiduciary appointment or plan-

21  administrator delegation to Microsoft. ARAG's claim that Microsoft served as Plan Administrator

22  is contradicted by Microsoft's own statement that it "had no role in administration," as well as by

23  ARAG's internal testimony showing ARAG handles all intake and denials. (See Ex. 1 [Microsoft

1  Email]; Ex. 2 [OIC Letter]; Ex. 3 [Mullaly Email]; Ex. 4 [UltimateAdvisor Certificate]; Ex. 6

2  [Adams Transcript].)

3

4  Without a complete, factual response, Plaintiffs cannot test the threshold question of

   ERISA applicability or prepare summary-judgment briefing. Accordingly, Plaintiffs request that

5  the Court compel ARAG to (1) serve a full verified response identifying each fact, person, and

6  document supporting its ERISA-governance contention; (2) identify by Bates number all

7  documents on which it relies; and (3) certify compliance under Rule 33(b)(5). Absent such

8  disclosure, the Court should deem ARAG's ERISA contention unsupported for purposes of

9  summary judgment.

10

11 **RESPONDING PARTY'S POSITION (Interrogatory No. 8):**

12  ARAG's response and supplemental responses contained sufficient information and detail

   to satisfy Rule 33. Moreover, Plaintiffs' suggestion that they are in the dark as to what facts and

13 documents ARAG relies upon to support its position that ERISA applies and thus are unable to

14 "prepare summary judgment briefing" cannot be credited. Plaintiffs have had ARAG's ERISA-

15 based motion for partial summary judgment, as well as the documents filed in support thereof, for

16 more than seven months, ECF #51-53, and ARAG's motion for leave to amend its answer to assert

17 an ERISA defense – which they did not oppose – for more than a year. ECF #26-27, 33. These

18 documents detail the facts, and identify and attach the documents, upon which ARAG relies.

19 However, to avoid any question as to the adequacy of its interrogatory response, ARAG served a

20 second supplemental response on October 16, 2025 that incorporates the facts in the "Factual

21 Background" section of its previous MPSJ. Mullaly Decl., Ex. 1, pp. 5-15. This response answers

22 each of Plaintiffs' specific questions above:

23

- "Which entity served as plan administrator?"  Microsoft.  ARAG011390 (ECF #53-6 at p. 15).

- "Who exercised discretionary control?"  Microsoft, which delegated certain powers and responsibilities to ARAG.  ARAG011332 (ECF #53-4 at p. 101).

- "What statutory safe-harbor exceptions were analyzed?"  Facts relevant to application of the "safe harbor" provision are set forth in the response, Mullaly Decl., Ex. 1, pp. 3-15, and both these facts and ARAG's legal argument and analysis have been previously provided.  See ECF #51 at pp. 7, 17-22, 29-32.

Finally, ARAG and its counsel *have* signed the interrogatory objections and responses (and supplemental responses) pursuant to Fed. R. Civ. P. (c)(4) and (5).  The Court should reject Plaintiffs' baseless request that it "deem ARAG's ERISA contention unsupported for purposes of summary judgment" and should instead apply the summary judgment standard to the evidence and legal argument presented in ARAG's forthcoming motion.

**MOVING PARTY'S REPLY (Interrogatory No. 8):**

ARAG's answer is a non-answer. It recites objections and points vaguely to filings while withholding the core facts and documents that would show whether ERISA applies (who administered claims; what plan instruments governed; what §503 procedures existed; what "endorsement," if any, Microsoft provided). Contention interrogatories are proper where, as here, ARAG has put ERISA preemption at issue. ARAG's own production shows Microsoft-facing marketing and plan-design collateral (e.g., ARAG010283 ff.), not claims-administration policies or a §503 protocol for this claim, and ARAG points to no documents evidencing Microsoft's day-to-day adjudicatory role. See also the OIC response clarifying Washington treats ARAG's product

as a legal-services plan, not traditional insurance—underscoring why the factual boundary between ERISA and state law matters and must be disclosed to decide preemption fairly. Plaintiffs ask the Court to compel a complete narrative response identifying the facts and documents ARAG relies on for ERISA (administrator, fiduciary, §503 procedures, administrative record) and to require a privilege log for any withheld materials.

**REQUEST FOR PRODUCTION No. 21:** Produce all documents identified in the preceding interrogatory. (*INTERROGATORY NO. 8: If You contend that the Policy or subject claim is governed by ERISA, state all facts and identify all documents relied on in support of that contention*.)

**Response to Request for Production No. 21:** ARAG incorporates by reference the objections stated in the response to Interrogatory No. 8. Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time.  ARAG reserves the right to amend and/or supplement this response and/or the associated production(s).

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses.  Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 21):**

ARAG's response is facially incomplete and evasive under Rules 26(b)(1) and 34(b)(2)(C). The request simply seeks "all documents identified" in Interrogatory No. 8—namely, the documents ARAG relies on to assert that Plaintiffs' coverage is governed by ERISA rather than Washington contract law. ARAG's boilerplate promise to "produce all non-privileged, non-work-product documents within a reasonable time" fails to certify completeness as required by Rule 34(b)(2)(C). Six months later, ARAG still has not identified or produced the underlying plan instruments, fiduciary designations, or administrative-record materials establishing whether Microsoft or ARAG exercised discretionary control over claim administration.

ARAG wants ERISA's shield without ERISA's duties. It points to Microsoft's HR enrollment packets to claim ERISA preemption, yet its own designee admitted that ARAG—not Microsoft—made all claim-handling decisions, making ARAG a de facto fiduciary under 29 U.S.C. § 1002(21)(A). If ERISA truly applies, ARAG must produce the governing plan instruments, § 503 claim-review procedures, and fiduciary delegations it relies upon. If instead the post-employment "UltimateAdvisor Conversion Plan" governs, ERISA preemption fails under Ninth Circuit law, and Washington law controls. Either way, ARAG cannot press summary judgment while withholding the very records that decide which legal framework governs. ARAG's claim that Microsoft served as Plan Administrator is contradicted by Microsoft's own statement that it "had no role in administration," as well as by ARAG's internal testimony showing ARAG handles all intake and denials. (See Ex. 1 [OIC Letter]; Ex. 2 [Microsoft Email]; Ex. 3 [Mullaly Email]; Ex. 4 [UltimateAdvisor Certificate]; Ex. 5 [Mullaly Email]; Ex. 6 [Adams Transcript].)

The deficiency is not technical; it goes to jurisdiction and preemption. Plaintiffs therefore request an order compelling ARAG to (1) produce all documents relied on to support its ERISA

contention, including plan documents, fiduciary appointments, and administrative-record materials; and (2) certify under Rule 34(b)(2)(C) that its production is complete.

**RESPONDING PARTY'S POSITION (RFP No. 21):**

ARAG has produced all documents identified in its response, and supplemental responses, to Interrogatory No. 8 at ARAG007234-ARAG010269 (produced August 14, 2024) and ARAG010283-ARAG011959 (produced February 20, 2025).

Plaintiffs' assertion that "ARAG still has not identified or produced the underlying plan instruments, fiduciary designations, or administrative-record materials establishing whether Microsoft or ARAG exercised discretionary control over claim administration" is demonstrably incorrect. ARAG011390 ("Microsoft Corporation Welfare Plan" produced to Plaintiffs on February 20, 2025) (designating Microsoft as the Named Fiduciary and the Plan Administrator of the Microsoft Welfare Plan) (ECF #53-6 at p. 15); ARAG011332 ("2022 Summary Plan Description" produced to Plaintiffs on February 20, 2025) (Microsoft's delegation of authority to service providers to "review[] and issu[e] claims and appeals determinations") (ECF #53-4 at p. 101).

Plaintiffs seem to believe that ARAG had an obligation under ERISA to draft, distribute, and maintain unspecified "governing plan documents" distinct from those the designated Plan Administrator (i.e., Microsoft) must distribute and maintain. *See, e.g.*, 29 U.S.C. §§ 1022, 1024(b) (requiring summary plan description). This mistaken belief appears to arise from the fact that, in the ERISA plan documents, Microsoft delegated to ARAG, and ARAG subsequently exercised, certain responsibilities pertaining to "reviewing and issuing claims and appeals determinations." ARAG011332. This delegation is specifically allowed by ERISA, 29 U.S.C. § 1105(c)(1)(B), and makes sense because the Plan Administrator and designated fiduciary (here, Microsoft) may not

1    have the expertise to perform health, disability, and/or prepaid legal services claims functions.

2    But, while ARAG's exercise of responsibilities delegated to it in the Microsoft Welfare Plan makes

3    ARAG an appropriate defendant in a lawsuit asserting wrongful denial of ERISA benefits,

4    Plaintiffs have asserted no such claim, and it does not "substitute" ARAG for Microsoft as the

5    designated Plan Administrator.  *See* 29 U.S.C. § 1002(16)(A)(i) (defining "administrator" as "the

6    person specifically so designated by the terms of the instrument under which the plan is operated").

7    ERISA imposes no separate "governing plan documents" obligation on ARAG.  Indeed, Microsoft

8    delegated authority and responsibility to "*each* service provider…under the respective plan

9    options, programs, and policies described in this [Microsoft Welfare Plan] SPD", ARAG011332

10   (emphasis added), and if all of these component providers (e.g., health, short- and long-term

11   disability, prepaid legal services) were somehow required to prepare and distribute their own

12   separate SPDs and wrap plan documents, that would be flatly inconsistent with the maintenance

13   of a single, unified plan administered by Microsoft and would create mass confusion.  The Court

14   should deny Plaintiffs' request to compel production of documents that are not statutorily required

15   and do not exist.

16        Plaintiffs' contention that ARAG has not produced "§ 503 claim-review procedures" is

17   also incorrect, and for exactly the same reason.  Section 503 of ERISA authorizes the regulation

18   promulgated in 29 CFR § 2560.503-1, which "sets forth minimum requirements for employee

19   benefit plan procedures pertaining to claims for benefits."   29 CFR § 2560.503-1(a).   The

20   regulation mandates that "*[e]very employee benefit plan* shall establish and maintain reasonable

21   procedures governing the filing of benefit claims, notification of benefit determinations, and

22   appeal of adverse benefit determinations" 29 CFR § 2560.503-1(b) (emphasis added).   The

23   obligations to which Plaintiffs refer are obligations of *Microsoft* (which sponsors and administers

the employee benefit plan), not of ARAG, and in any event those obligations are met through Section 5.6 ("Claims Procedure") of the Microsoft Corporation Welfare Plan, including especially Section 5.6(c), which applies to, among other things, claims for prepaid legal services. ARAG011391-ARAG011401 (produced to Plaintiffs on February 20, 2025) (ECF # 53-6 at pp. 16-26).

Although the above suffices to disprove Plaintiffs' contention that ARAG has failed to produce the governing claim procedures, ARAG notes that it also separately produced its own internal claim-handling guidelines on June 24, 2024 in response to various requests for production in Plaintiffs' First Set of Interrogatories and Requests for Production.[1]   ARAG004952-ARAG005024 (ARAG's production of its internal claims-related policies and procedures).  While some of these documents do specifically reference ERISA, *see* ARAG004954, there is no requirement that they do so for a couple reasons.  First, as just described, the obligation to establish and maintain claim procedures compliant with 29 CFR § 2560.503-1 attaches to the *employee benefit plan*.  Second, ARAG ultimately must abide by the claim procedures established in Section 5.6 of the Microsoft Corporation Welfare Plan, irrespective of whatever internal procedures it might otherwise follow.  In any case, whether ARAG's actions met the standards of 29 CFR § 2560.503-1 may be relevant to the merits of a claim under ERISA (which Plaintiffs have not asserted),[2] but has no relevance to the analytically prior issue of whether ERISA applies.

Plaintiffs' contention that ARAG has not produced "administrative-record materials" is irrelevant to this request and, based on the meaning that Plaintiffs appear to ascribe to that term,

---

[1] None of the discovery requests in Plaintiffs' First Set of Interrogatories and Requests for Production are at issue in this LCR 37(a)(2) submission.

[2] *Cf. Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) ("improper processing of claims under ERISA-regulated plans [are to] be treated as federal questions....").

incorrect.  In ERISA cases, the "administrative record" generally refers to materials generated in the claim-determination process.  *See*  29 C.F.R. § 2560.503-1(j)(3) (requiring compilation for judicial review under ERISA); 29 C.F.R. § 2560.503-1(m)(8)(ii) (defining relevant materials as those "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination."). Thus, the "administrative record" goes to the merits of an ERISA cause of action for the denial of benefits – which Plaintiffs have not asserted here – rather than whether ERISA preempts state-law causes of action.   Any "administrative record" is not responsive to this request.  In any event, ARAG searched for and produced voluminous materials relating to Plaintiffs' claims for insurance benefits on or about June 10, 2024 (ARAG00001-ARAG001008), June 24, 2024 (ARAG001009-ARAG007213), and July 15, 2024 (ARAG007214-ARAG007233) in response to Plaintiffs' First Set of Interrogatories and Requests for Production. The Court should deny Plaintiffs' request to compel further production.

Finally, Plaintiffs' contention that ARAG should be required to certify "completeness" under Rule 34(b)(2)(C) lacks any basis in law.  Fed. R. Civ. P. 34(b)(2)(C) does not, on its face, require certification of completeness, and Plaintiffs offer no authority supporting their contention that it does.  Instead, courts reject contentions that any such certification is required:

> The certification required by Rule 26(g)(1) applies "with respect to a *disclosure*." Fed.R.Civ.P. 26(g)(1)(A) (emphasis added). That is a term of art, referring to the mandatory initial disclosures required by Rule 26(a)(1). Since the Rule 26(a)(1) disclosure is information (witnesses, exhibits) that "the disclosing party may use to support its claims or defenses," and failure to provide such information leads to virtually automatic preclusion, see Fed. R. Civ. P. 37(c)(1), it is appropriate for the Rule 26(g)(1)(A) certification to require disclosures be "complete and correct."

> Rule 26(g)(1)(B) is the provision that applies to discovery responses. It does not call for certification that the discovery response is "complete," but rather incorporates the Rule 26(b)(2)(C) proportionality principle. Thus, Rule 26(g)(1)(A)

has absolutely nothing to do with MSL's obligations to respond to plaintiffs' discovery requests.

*Moore v. Publicis Groupe*, 287 F.R.D. 182, 188 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe SA*, No. 1:11-cv-01279, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012).  ARAG respectfully requests that the Court reject Plaintiffs' attempt to impose discovery obligations beyond those found in the Rules with respect to this and all other disputed requests.

**MOVING PARTY'S REPLY (RFP No. 21):**

This request simply seeks the documents ARAG identified (or should have identified) in Interrogatory 8. Because ARAG's response is substantively deficient, there is nothing for Plaintiffs to test. The remedy is straightforward: compel production of all documents ARAG relies upon to contend ERISA applies—plan instruments actually governing this claim; fiduciary or administrator designations; written § 503 procedures; and any "administrative record" materials generated during the claim—or, alternatively, require ARAG to certify that no such documents exist and provide a privilege log identifying any withheld items. An insurer's quasi-fiduciary duty requires full and transparent disclosure of the basis for its coverage position. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986); *State Farm Mut. Auto. Ins. Co. v. Curtis*, No. 3:22-cv-05698-BHS, 2023 WL 4067077, at *5 (W.D. Wash. June 16, 2023).* ARAG's Bates-range citations (ARAG010283 onward) consist largely of Microsoft-facing collateral and do not substitute for plan or claim-handling documents. Without them, Plaintiffs cannot fairly oppose ERISA preemption. Compel production or certification within 14 days.

**REQUEST FOR PRODUCTION NO. 22:** Produce all documents reflecting any analysis of the application of ERISA to the Policy or the subject claim.

**Response to Request for Production No. 22:** ARAG objects that the interrogatory seeks disclosure of the mental impressions, conclusions, opinions, or legal theories of counsel or other representatives of ARAG concerning the litigation. ARAG objects to the request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other privileges. Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time.  ARAG reserves the right to amend and/or supplement this response and/or the associated production(s).

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses.  Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 22):**

ARAG improperly invokes privilege to withhold the very evidence necessary to determine whether ERISA applies at all. Request No. 22 seeks factual documents "reflecting any analysis of the application of ERISA to the Policy or the subject claim"—not attorney work product or mental impressions. See *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006). ARAG cannot claim ERISA preemption while simultaneously shielding every factual or regulatory analysis that supposedly supports that contention.

The production ARAG references (ARAG010283 onward) consists primarily of Microsoft marketing materials and benefit summaries, not any internal ERISA evaluation or fiduciary analysis. None identify who the plan administrator is, what entity maintains discretionary authority, or how coverage converted from Microsoft's group benefit to ARAG's "UltimateAdvisor Conversion Plan." To the extent counsel later memorialized or circulated those facts, the factual portions are severable and must be produced with redactions for any bona fide legal impressions. ARAG's claim that Microsoft served as Plan Administrator is contradicted by Microsoft's own statement that it "had no role in administration," as well as by ARAG's internal testimony showing ARAG handles all intake and denials. (See Ex. 1 [Microsoft Email]; Ex. 2 [OIC Letter]; Ex. 3 [Mullaly Email]; Ex. 4 [UltimateAdvisor Certificate]; Ex. 6 [Adams Transcript].)

Because ARAG's objections rely on boilerplate privilege language and a promise of later supplementation, its response is deficient under Rules 26(b)(1) and 34(b)(2)(C). Plaintiffs therefore request an order compelling ARAG to produce all non-privileged factual materials—emails, memoranda, or regulatory correspondence—reflecting any internal or external analysis of ERISA applicability, and to serve a detailed privilege log identifying any documents withheld on that basis.

**RESPONDING PARTY'S POSITION (RFP No. 22):**

Plaintiffs' contention that ARAG's production does not "identify who the plan administrator is, [or] what entity maintains discretionary authority" is demonstrably incorrect. *See* ARAG011390 (plan administrator) (ECF #53-6 at p. 15); ARAG011332 (delegation of authority) (ECF #53-4 at p. 101). Plaintiffs' reliance on *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006), is also unavailing. *Abatie* does not contain the quote – "factual materials

underlying an ERISA determination are discoverable" – attributed to it by Plaintiffs.  Nor did *Abatie* involve a discovery dispute, the attorney-client privilege or work-product doctrine, or any argument about whether ERISA preempted state law (much less an insurer's analysis of that legal question).  Instead, *Abatie* addressed the propriety of an insurer's denial of ERISA-governed life insurance benefits under ERISA's legal standards.  It has no application here.

With respect to pre-lawsuit internal "ERISA analysis," Plaintiffs' apparent belief that ARAG has, or should have, some internal analysis of whether ERISA applies to their claim – other than outside analysis by litigation counsel in connection with this matter – does not make it so.  *Cf.* ECF #78 at p. 10.  In fact, because ARAG's internal claims-handling practices are intended to satisfy the requirements of all jurisdictions (including federal law under ERISA), it is generally unnecessary for it to separately analyze whether ERISA applies to any particular claim it receives. Cosimano Decl., ¶ 2.

For many of the same reasons, there is no business or operational reason for ARAG to conduct a year-by-year analysis of whether its Microsoft group policy – or any other policy – is governed by ERISA.  That is particularly true where, as here, Microsoft explicitly informed ARAG from the outset of their relationship that "***Microsoft has determined the voluntary group legal plan is regulated by ERISA***," ARAG010474 (ECF #52-20 at p. 8), and included ARAG's prepaid legal services plan in its ERISA-required documents, including the SPD (ARAG011264-ARAG011289 (ECF #53-4 at pp. 45-70)), the Form 5500 (ARAG011936-ARAG011939 (ECF #53-7 at pp. 5-8)), and the Wrap Plan Document (ARAG011388, -408 (ECF #53-6 at pp. 13, 33))). ARAG has searched for, but not located any, responsive documents generated pre-lawsuit. Cosimano Decl., ¶ 3.

ARAG's ERISA analysis was conducted by litigation counsel and ARAG's in-house counsel for the purposes of this litigation. *See* Cosimano Decl., ¶ 4; Mullaly Decl., ¶ 2. As ARAG has previously explained, this occurred well *after* Plaintiffs filed suit, *see* ECF #26 at p. 6, and is therefore protected by the attorney-client privilege and work-product doctrine. ARAG is unaware of any case requiring a party to produce or log privileged materials generated *after* litigation commenced, and the Court should decline to order that. If Plaintiffs so request, however, ARAG will privilege log its communications with litigation counsel relative to ARAG's preparation of its April 2, 2025 response to the Washington State Office of the Insurance Commissioner ("OIC") concerning Plaintiffs' February 20, 2025 complaint against ARAG (which response states, among other things, that ERISA governs claims under ARAG Policy No. 10377 issued to Microsoft Corporation).[3]

**MOVING PARTY'S REPLY (RFP No. 22):**

Plaintiffs are not seeking counsel's mental impressions. We seek factual materials "reflecting any analysis of the application of ERISA" to this Policy or claim that exist independent of attorney work product—such as internal or regulatory analyses, plan-administrator mapping, delegation charts, non-privileged correspondence with Microsoft or regulators, and any contemporaneous § 503 or claim-process mapping. Factual underpinnings of an ERISA determination are discoverable. *Ruiz v. Am. Family Ins. Co.*, No. 2:24-cv-00579-TL (W.D. Wash. 2025). ARAG cannot invoke ERISA while shielding every predicate fact behind privilege. At minimum, ARAG must (1) conduct a reasonable search; (2) produce all non-privileged factual

---

[3] On April 17, 2025, OIC closed Plaintiffs' complaint without opening an investigation. ECF #82-1 at p. 6 (OIC email to Ronda McNae).

materials; and (3) provide a privilege log meeting *Fed. R. Civ. P.* 26(b)(5)(A)'s requirement of sufficient detail to assess the claim of privilege. ARAG's reference to "ARAG010283 onward" does not cure the problem; those pages are not § 503 procedures or a contemporaneous ERISA-applicability analysis. The Court should compel full production and a compliant privilege log within 14 days.

**REQUEST FOR PRODUCTION NO. 23:** Produce all documents relating to the underwriting of the Policy.

**Response to Request for Production No. 23:** ARAG objects that the request, by seeking "all documents" relating to the underwriting of the Policy, lacks proportionality and seeks many documents not relevant to any party's claims or defenses. ARAG is not withholding any specific documents based on these objections but has accounted for them in determining the scope of its reasonable obligations under Fed. R. Civ. P. 26(b)(1). ARAG objects to the request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other privileges. Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time.

**MOVING PARTY'S ARGUMENT (RFP No. 23):**

ARAG's objection that underwriting materials are "not relevant" misconstrues the scope of Rule 26(b)(1). The underwriting of the Policy determines whether ARAG's product functions as an **ERISA-governed employee welfare plan** or as a **state-regulated legal-services contract**

under RCW 48.01.290. Those underwriting and rate-setting files contain ARAG's own representations to regulators about risk allocation, premium structure, and plan administration.

ARAG asserts boilerplate proportionality objections but admits it is "not withholding any specific documents," a statement that is internally inconsistent. If no documents are withheld, ARAG should certify that its production is complete under Rule 34(b)(2)(C) and identify the Bates ranges produced. In fact, no underwriting or regulatory filings appear anywhere in ARAG's production (ARAG010283 ff.). The absence of these materials leaves Plaintiffs unable to test ARAG's claim that Microsoft—not ARAG—controlled plan design and funding.

Because underwriting files are uniquely within ARAG's possession and bear directly on whether its policy is "insurance" or a "legal-services plan," the Court should compel complete production of all underwriting records, including rate filings, actuarial summaries, and communications with the Washington Office of the Insurance Commissioner, and require ARAG to certify completeness or provide a privilege log for any withheld items. (*See* Ex. 5 [Mullaly Email]).

**RESPONDING PARTY'S POSITION (RFP No. 23):**

Plaintiffs' contention that "[t]he underwriting of the Policy determines whether ARAG's product functions as an **ERISA-governed employee welfare plan** or as a **state-regulated legal-services contract** under RCW 48.01.290," (emphasis in original) is flatly incorrect. ARAG has previously set forth the legal standard for ERISA preemption (none of which involve "underwriting"), *see generally* ECF #51, and has produced documents responsive to Plaintiffs' requests and relevant to that question. Those ERISA-determinative facts are distinct from the traditional "underwriting" process, in which an insurer determines whether (and on what terms

and for what premium) to issue a policy in response to an application from a prospective insured. For example, an auto insurer might consider an applicant's driving record, and a property insurer might look at a property's value, as well as localized risks such as flooding.

ARAG conducted a reasonable and diligent search for "underwriting" documents as ARAG understands that term. Cosimano Decl., ¶ 5. ARAG produced the "underwriting" documents that it located. ARAG008928-ARAG009027 (27 documents, including 9 native Excel spreadsheets) (produced August 14, 2024) and ARAG010270-ARAG010275) (3 documents, including 2 native Excel spreadsheets) (produced August 26, 2024). ARAG has also produced its communications with Microsoft over a number of years in which ARAG and Microsoft negotiated the terms of the Microsoft Policy and its predecessors, as well as the monthly premium. *See, e.g.*, ARAG009016-ARAG009018 (ECF #52-5 at pp. 1-5). It is unclear what relevance any further "underwriting" materials concerning the Microsoft Policy – however Plaintiffs might define "underwriting"– could have to the claims and defenses in this case, if such additional materials even exist.

The Conversion Policy is a group insurance policy that was issued effective January 1, 2023, see ARAG001525, with certificates issued to a nationwide group consisting of persons whose participation in employer-sponsored plans – such as the Microsoft Policy – had terminated for a qualifying reason (such as a layoff) and whose former plans granted them a right to enroll in a new ARAG policy, and who exercised that right. Cosimano Decl., ¶ 6. The Conversion Policy was "underwritten" prior to its effective date, and long before Mr. McNae exercised his right under the Microsoft Policy to enroll in the Conversion Policy, which he did effective October 1, 2023. *Id*. Any "underwriting" of the Conversion Policy is therefore irrelevant to the claims and defenses in this case. Nevertheless, ARAG conducted a reasonable and diligent search for "underwriting"

documents pertaining to the Conversion Policy and produced them, on August 26, 2024, as ARAG010270-ARAG010275 (3 documents, including 2 native Excel spreadsheets).

The Court should deny Plaintiffs' request to compel further production.

**MOVING PARTY'S REPLY (RFP No. 23):**

Underwriting and rate-setting files are probative of who bore risk, how premiums were structured and collected, and how ARAG represented the product to regulators—facts central to whether the arrangement falls under ERISA or Washington's legal-services-plan framework. ARAG's "not relevant" and boilerplate objections fail where preemption is the threshold dispute. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986), holds that an insurer's quasi-fiduciary duty includes full, candid disclosure of its basis for coverage. *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349 (2019), reaffirms that insurers must communicate truthfully and in good faith during claims handling. Those principles apply equally in discovery concerning ERISA preemption. ARAG claims to have produced responsive materials but points mainly to ARAG010283 ff., which are marketing and plan-design decks—not underwriting files. Washington OIC's correspondence further confirms legal-services-plan treatment and underscores a regulatory gap. The Court should order complete production of underwriting and rate-filing materials (including OIC communications) or certification of completeness with a privilege log.

**REQUEST FOR PRODUCTION NO. 24:** Produce all documents relating to the marketing of the Policy, including, without limitation, all communications with the Plaintiffs, the Microsoft Corporation, or any employee welfare benefit plan.

*Pro Se 2025*                                                    THE HONORABLE TANA LIN

**Response to Request for Production No. 24:** ARAG objects that the request, by seeking "all documents" relating to the marketing of the Policy, lacks proportionality and seeks many documents not relevant to any party's claims or defenses.  ARAG is not withholding any specific documents based on these objections but has accounted for them in determining the scope of its reasonable obligations under Fed. R. Civ. P. 26(b)(1). ARAG objects that the request, to the extent it seeks communications with "any employee welfare benefit plan" other than the Microsoft Corporation Welfare Plan, lacks proportionality and seeks documents not relevant to any party's claims or defenses. ARAG objects to the request to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other privileges. Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time.

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses.  Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 24):**

ARAG's objections ignore that marketing materials are directly relevant to both ERISA applicability and Plaintiffs' Washington Consumer Protection Act and bad-faith claims. The request targets factual communications—not privileged legal advice—showing how ARAG represented its product to Microsoft, its employees, and regulators. Those materials demonstrate whether ARAG portrayed the Policy as *insurance*, an *employee welfare benefit*, or instead a *stand-alone legal-services plan* subject to state law. ARAG's own production (ARAG010283 ff.)

LCR 37 JOINT SUBMISSION FOR PRODUCTION
CASE NO. 2:24-CV-00211-TL - 23

confirms that its "marketing" files are not internal legal analyses but sales presentations, plan-design proposals, and annual-review slide decks created to induce Microsoft to renew its coverage. These documents reveal that ARAG—not Microsoft—designed, priced, and administered the product, reinforcing that ARAG exercised discretionary control over plan operations.

ARAG's boilerplate proportionality objection fails because these are *its own documents* and production imposes no undue burden. Moreover, ARAG's assertion that it is "not withholding any specific documents" is self-contradictory given that the only materials produced were high-level Microsoft presentations, not the full marketing correspondence or prospectus materials promised.

Because the marketing representations define the nature of the plan sold and the expectations created for Microsoft employees, the Court should compel ARAG to produce all documents—including emails, slide decks, and promotional communications with Microsoft, its benefits consultants, or any other employer group—and certify under Rule 34(b)(2)(C) that its production is complete.

**RESPONDING PARTY'S POSITION (RFP No. 24):**

Plaintiffs tacitly admit that ARAG has produced significant documents in response to this request by misstating their contents. For example, contrary to Plaintiffs' unsupported contention, the documents produced demonstrate that Microsoft negotiated premiums and selected benefits to be included in ARAG policies as part of the Microsoft Corporation Welfare Plan. *See, e.g.*, ARAG009016-ARAG009018 (ECF #52-5 at pp. 1-5).

By counsel's count, ARAG has produced at least 110 "marketing" documents responsive to this request following a diligent and reasonable search, separate and apart from ARAG's

*Pro Se 2025*                                                    THE HONORABLE TANA LIN

production of numerous communications with the Plaintiffs, specifically.  Cosimano Decl., ¶ 7.

ARAG's production includes Microsoft's SPD touting the ARAG coverage, ARAG010881, a

Microsoft presentation, ARAG009139, -148, "emails" concerning open enrollment,

ARAG010037, -038, and a wide variety of other materials.  That most of this "marketing" material

involves Microsoft simply reflects the fact that "marketing" of the ARAG policies *to Microsoft*

*employees* was done *by and through Microsoft* as part of its promotion of its employee benefits

package.

      Moreover, communications with "any other employer group" are not responsive to this

request, which seeks documents related to the marketing of "the Policy."  Nor would marketing

related to different policies negotiated with and issued to different "employer groups" be relevant

to "the nature of the plan sold and the expectations created for Microsoft employees."  And the

burden associated with searching for and producing all communications with all "employee

groups" would be tremendous, and disproportional to the needs of this case.  Cosimano Decl., ¶ 8.

The Court should deny Plaintiffs' request to compel further production.

**MOVING PARTY'S REPLY (RFP No. 24):**

      ARAG's position again confirms why further production is required. The cited Bates

ranges (ARAG009016–ARAG010881) consist primarily of Microsoft-facing slide decks and

enrollment blurbs—not the full marketing correspondence or solicitation materials exchanged

between ARAG and Microsoft that would show who designed and controlled the product.

Plaintiffs do not seek "all employer groups," only the communications describing how ARAG

marketed and represented this specific Policy to Microsoft and its benefits consultants. Such

materials are probative of ERISA applicability and of Plaintiffs' state-law claims because they

1  reveal whether ARAG portrayed the plan as an ERISA benefit or a stand-alone legal-services

2  contract regulated under Washington law. Insurer communications bearing on coverage and

3  consumer expectation fall squarely within the scope of discoverable good-faith evidence. *Tank v.*

4  *State Farm Fire*, 105 Wn.2d 381, 385 (1986); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165

5  Wn.2d 122, 130 (2008). ARAG's claim that further production would be "tremendous" lacks

6  factual basis and is disproven by its own minimal volume. Plaintiffs therefore request an order

7  compelling full production of marketing and solicitation communications with Microsoft and

8  certification under Rule 34(b)(2)(C).

9

10

11 **REQUEST FOR PRODUCTION NO. 26:** Produce all documents relating to the conversion or

12 continuation of coverage under the Policy, including, without limitation, all communications

13 with the Plaintiffs, the Microsoft Corporation, or any employee welfare benefit plan.

14 **Response to Request for Production No. 26:** ARAG objects that the request, by seeking "all

15 documents" relating to conversion or continuation of coverage under the Policy, lacks

16 proportionality and seeks many documents not relevant to any party's claims or defenses. ARAG

17 is not withholding any specific documents based on these objections but has accounted for them

18 in determining the scope of its reasonable obligations under Fed. R. Civ. P. 26(b)(1). ARAG

19 objects that the request, to the extent it seeks communications with "any employee welfare

20 benefit plan" other than the Microsoft Corporation Welfare Plan, lacks proportionality and seeks

21 documents not relevant to any party's claims or defenses. ARAG objects to the request to the

22 extent it seeks information protected by the attorney-client privilege, work product doctrine, or

23 any other privileges.

**First Supplemental Response (February 20, 2025):** Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time. ARAG incorporates by reference the above objections and responses. Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 26):**

ARAG's response is deficient under Rules 26(b)(1) and 34(b)(2)(C). Request No. 26 seeks the factual record of how coverage transitioned after Plaintiffs left Microsoft—documents reflecting **conversion or continuation** of benefits. These materials are central to determining whether ERISA preemption applies or whether the post-employment policy is a separate, state-regulated contract. See 29 C.F.R. § 2510.3-1(j) (safe-harbor exemption for voluntary, employee-paid plans). (See Ex. 4 [ECF 85-7]).

ARAG's boilerplate proportionality objection ignores that these conversion records uniquely define the governing legal framework. Communications between ARAG, Microsoft, and Plaintiffs regarding continuation terms, premium billing, or plan enrollment are limited in scope, easily retrievable, and indisputably relevant. ARAG's supplemental production (ARAG010283 ff.) contains only marketing collateral, not conversion paperwork, correspondence, or post-employment policy certificates. Its assertion that it "is not withholding any specific documents" yet provides none is internally inconsistent and violates Rule 34(b)(2)(C)'s certification requirement.

*Pro Se 2025*                                    THE HONORABLE TANA LIN

Because these records reveal whether Microsoft remained a plan sponsor or ARAG operated independently, Plaintiffs request an order compelling ARAG to produce all conversion- or continuation-of-coverage documents, including communications with Plaintiffs and Microsoft, billing and premium records, and policy certificates, and to certify completeness of its production.

**RESPONDING PARTY'S POSITION (RFP No. 26):**

For context, Plaintiffs' request and argument reflect a fundamental misunderstanding of the relationship between the Microsoft Policy and the Conversion Policy. The two policies are separate legal contracts, each governed by their own terms and conditions, and each giving rise to its own rights and obligations. Thus, while the Conversion Policy provides, in many respects, similar benefits to the Microsoft Policy, even a cursory examination of the two policies' provisions demonstrates that both of them cannot apply to the same "insured event." In this way, the ARAG policies are fundamentally different from other "continuation-of-coverage" insurance policies like post-employment health insurance under COBRA (under which preexisting conditions may be covered). *See* ARAG010883- ARAG010884 (prepaid legal services plan not available to COBRA enrollees) (ECF #53-4 at pp. 5-6); ARAG011264 (same) (ECF #53-4 at 45).

Both the Microsoft Certificate and the Conversion Certificate provide: "This policy applies to insured events which occur worldwide while your Certificate of Insurance is in effect…. Any insured event which occurs prior to the effective date of an insured will be considered excluded and no benefits will apply." ARAG002960; ARAG001683. Both define "insured event" as "an event covered by this policy whose initiation date will be considered the earlier of the date (a) written notice of a legal dispute is sent or filed by you or received by you or (b) a ticket or citation is issued or (c) an attorney is hired." ARAG002936; ARAG001664. Both define "legal dispute" as "disagreement between you and any other party regarding your legal rights." ARAG002936;

ARAG001664.  This makes sense: under the analogous "known loss" doctrine there is no insurance coverage under a policy issued after the insured has been sued.[4]  Thus, because the Underlying Federal Action was an "insured event" under the Microsoft Policy – given that it was filed, and Mrs. McNae acquired knowledge of it, in 2022 – the Underlying Federal Action is covered exclusively, through its conclusion, under the Microsoft Policy.  See ARAG011299 ("Coverage will continue for legal matters that began while the plan was still in effect until each covered matter is resolved regardless of the length of time it takes to reach a resolution") (ECF #53-4 at p. 80).  Conversely, the Underlying Federal Action cannot be covered by the Conversion Policy.

With that context, it is clear that ARAG has more than satisfied its obligations with respect to this request.  ARAG produced the Microsoft Policy and Microsoft Certificate which gave Mr. McNae the right to continue insurance with ARAG once he was laid off by Microsoft (ARAG002550; ARAG002962), as well as the Conversion Policy and Conversion Certificate (ARAG001525- ARAG001629;  ARAG001662- ARAG001693).   The Microsoft SPD also contains a specific section ("Continuation of coverage for other benefits") that addresses eligibility to purchase conversion coverage from ARAG.  ARAG011310-ARAG0011311 (ECF #53-4 at pp. 91-92).  There is no dispute that Mr. McNae enrolled in the Conversion Policy effective October 1, 2023.  Besides producing these voluminous materials, ARAG also conducted a diligent and reasonable search and produced documents including ARAG010228 (form of conversion confirmation letter sent to McNae), ARAG010230 (record of said letter sent to McNae on 9/30/2023), and ARAG010276-ARAG010282 (enrollment procedures).   Further documents

---

[4] *See Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wash.2d 789, 806 (1994) (known loss doctrine applies if "the insureds know that there was a substantial probability that they would be sued … at the time the [insurance] policy was issued"); *Time Oil Co. v. Cigna Property & Cas. Ins. Co.*, 743 F. Supp. 1400 (W.D. Wash. 1990) (no coverage where the insureds were notified by the EPA that they were a PRPs and subsequently purchased insurance).

related to this request would appear to be irrelevant and disproportionate to the needs of the case, and the Court should deny Plaintiffs' request to compel further production.

**MOVING PARTY'S REPLY (RFP No. 26):**

ARAG's explanation concedes that two separate contracts exist—the Microsoft Policy and the Conversion Policy—but omits the communications and billing records that document how coverage actually transitioned. Those factual materials, not policy language, determine whether ARAG continued coverage independently or under Microsoft's sponsorship and are indispensable to assessing ERISA jurisdiction. *See Ruiz* (W.D. Wash. 2025) (requiring production of factual coverage records underlying jurisdictional disputes); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986) (insurer's quasi-fiduciary duty demands full and truthful disclosure).

ARAG points to certificates and form letters already produced, yet its cited Bates ranges contain no correspondence with Microsoft or Plaintiffs showing notice, premium collection, or administrative handling of the conversion. Rule 34(b)(2)(C) requires ARAG to state whether additional responsive materials are being withheld; its assertion that it "has satisfied its obligations" does not meet that standard. Plaintiffs ask the Court to compel production of all conversion-of-coverage communications, billing and enrollment records, and post-employment policy documentation, or require ARAG to certify that none exists.

**REQUEST FOR PRODUCTION NO. 28:** Produce all documents relating to the administrative responsibilities of Microsoft Corporation or the Microsoft Corporation Welfare Plan relating to the Policy or the investigation of the subject claim.

**Response to Request for Production No. 28:** ARAG incorporates by reference the objections stated in the response to Interrogatory No. 10. Subject to and without waiving any objections, ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time. ARAG reserves the right to amend and/or supplement this response and/or the associated production(s).

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses. Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 28):**

ARAG's response to Request No. 28 fails to identify or produce a single document showing that Microsoft—or its welfare plan—performed any administrative duties with respect to Plaintiffs' claim. These materials are critical to determining whether an ERISA "plan administrator" existed other than ARAG. Under 29 U.S.C. § 1002(16)(A), the administrator is "the person specifically so designated by the plan," and the Ninth Circuit treats the entity with discretionary control over claim processing as a fiduciary. See *Abatie* (9th Cir. 2006). This is confirmed by the sworn testimony of ARAG's Rule 30(b)(6) designee, Meagen Adams, who testified that ARAG's claims team handled intake, processing, and denials through its internal Pulse system—demonstrating that ARAG, not Microsoft, exercised discretionary control over plan administration. (*See* Ex. 1 [Microsoft Email]; Ex. 3 [Mullaly Email]; Ex. 6 [Adams Transcript].)

If Microsoft played no role in adjudicating claims, issuing denials, or maintaining records, then ARAG alone exercised discretionary authority and is the plan fiduciary—placing it squarely

outside the safe-harbor of 29 C.F.R. § 2510.3-1(j) and subject to state-law obligations. Conversely, if ARAG contends that Microsoft performed administrative functions, Rule 26(b)(1) entitles Plaintiffs to the contemporaneous documentation—meeting minutes, correspondence, and procedural manuals—showing that delegation. ARAG's generic statement that it will produce "non-privileged documents within a reasonable time" neither identifies any materials nor certifies completeness under Rule 34(b)(2)(C).

Because these records are uniquely within ARAG's possession and bear directly on ERISA jurisdiction, Plaintiffs request an order compelling full production of all documents concerning any administrative role of Microsoft or its welfare plan in the handling of the Policy or claim investigation and requiring ARAG to certify that no additional materials are being withheld.

**RESPONDING PARTY'S POSITION (RFP No. 28):**

Contrary to Plaintiffs' contention, ARAG has produced the specific documents necessary to determine that Microsoft was the Plan Administrator.  Plaintiffs correctly note that "[u]nder 29 U.S.C. § 1002(16)(A), the administrator is 'the person specifically so designated by the plan,'" but then ignore the plan documents that specifically designate Microsoft.  ARAG011390 (ECF #53-6 at p. 15).

ARAG has also produced numerous documents pertaining to Microsoft's administrative responsibilities relative to the Policy.  For example, Microsoft distributed the ERISA-mandated SPD as statutorily required for Plan Administrators, describing benefits under the Microsoft Policy.  *See* ARAG011264- ARAG011289 (ECF #53-4 at pp. 45-70).  The SPD states that "Microsoft will have access to only the enrollment information needed to administer coverage," and explains that to locate a network attorney, employees can "Log into the Microsoft Benefits

site and go to the ARAG website." ARAG011265. The SPD also explains that Microsoft employees can enroll in ARAG's coverage during Microsoft's open enrollment period and describes in detail Microsoft's enrollment procedures. ARAG010902-ARAG010914 (ECF #53-4 at pp. 24-36).

As noted above, Microsoft delegated authority to ARAG to make claims decisions when benefits were sought under the Microsoft Policy. Unsurprisingly then, while ARAG has conducted a diligent and reasonable search for documents reflecting Microsoft involvement in the evaluation of Plaintiffs' claims, it has not located any.

Plaintiffs' attempt to compel additional documents from ARAG also ignores that documents relating to *Microsoft's* administrative responsibilities are likely to be in the possession of *Microsoft*, not ARAG. Presumably that is why Plaintiff's former counsel sought documents from Microsoft regarding Plaintiffs' participation in the Microsoft Corporation Welfare Plan on January 24, 2024, *see* ECF #82-1 at pp. 17-19, a week after initiating this action, *see* ECF 1-3 at p. 5, and also issued two subpoenas to Microsoft on July 18, 2024. Mullaly Decl., Ex. 2. ARAG has conducted a diligent and reasonable search, and produced the resulting documents, in response to this request, Cosimano Decl., ¶ 9, and the Court should decline to order further production.

**MOVING PARTY'S REPLY (RFP No. 28):**

This request seeks documents showing any Microsoft administrative role—meeting minutes, delegation memos, procedures, correspondence, or claims touchpoints. ARAG asserts Microsoft is the Plan Administrator but concedes it "has not located any" documents reflecting Microsoft's evaluation of Plaintiffs' claims—while also suggesting responsive materials would be in Microsoft's possession. If ARAG relies on a Microsoft-administrator theory, it must produce

contemporaneous records evidencing that role or certify, after diligent search, that none exist within its possession, custody, or control.

The absence of such documentation is itself probative that ARAG functionally administered the claim, triggering fiduciary obligations under 29 U.S.C. § 1002(21)(A). *Abatie* (9th Cir. 2006) (functional control defines fiduciary status); *Booton* (9th Cir. 1997) (administrator must engage in meaningful dialogue); *Spinedex* (9th Cir. 2014) (entity exercising discretionary control is fiduciary). Rule 26(g) requires certification that discovery responses are complete and made after reasonable inquiry. Plaintiffs therefore request an order compelling production or certification within 14 days, and a privilege log for any withheld materials.

**REQUEST FOR PRODUCTION NO. 29:** Produce all policies, training, or procedures intended to ensure compliance with ERISA and 29 CFR § 2560.503-1 in the handling of the subject claim.

**Response to Request for Production No. 29:** ARAG has conducted a reasonable search and will produce all non-privileged/non-work-product documents responsive to the request within a mutually agreed reasonable time.

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses. Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 29):**

ARAG's response fails to meet even the minimal disclosure obligations of Rule 34(b)(2)(C). As reflected in Interrogatory No. 10, Plaintiffs also sought a factual identification of Microsoft's administrative responsibilities. ARAG provided none and has produced no corresponding documentation under this request. Request No. 29 seeks the internal policies and procedures ARAG used—or claims to have used—to ensure compliance with ERISA § 503 and 29 C.F.R. § 2560.503-1 when handling Plaintiffs' claim. These materials are required not only under the Federal Rules but under ERISA itself: a plan administrator must maintain written claims-handling procedures and disclose them upon request. See *Abatie* (9th Cir. 2006); *Booton* (9th Cir. 1997).

ARAG simultaneously claims that Microsoft is the 'Plan Administrator' under § 5.1 of the Microsoft Wrap Plan (ARAG011390) while admitting through testimony that its own claims team exercised discretionary control over claim intake and denial. Under *Spinedex* and *Kyle Railways*, that functional control renders ARAG a fiduciary required to maintain and produce its § 503 policies and administrative record. The cited Bates range (ARAG010283 ff.) contains Microsoft marketing collateral—not claims manuals, training guides, or fiduciary-review protocols. If ARAG truly administered this claim under ERISA, these written procedures must exist and must have been followed. Their absence confirms that ARAG acted as a legal-services vendor, not an ERISA fiduciary, and that its claim-handling conduct is governed by Washington contract and consumer-protection law, not ERISA's remedial limitations. (*See* Ex. 6 [Adams Transcript].)

ARAG's bare statement that it "conducted a reasonable search" provides no certification of completeness and no privilege log identifying what, if anything, was withheld. Plaintiffs therefore request that the Court compel ARAG to produce all policies, training materials, and

procedural manuals governing claim intake, review, and denial under the alleged ERISA plan; or, alternatively, deem ARAG to have waived any claim of ERISA compliance for purposes of summary judgment.

**RESPONDING PARTY'S POSITION (RFP No. 29):**

As an initial matter, Plaintiffs' statement that it sought in Interrogatory 10 (which Plaintiffs have not included in this submission) identification of Microsoft's administrative responsibilities but "ARAG has provided none" is demonstrably incorrect.  See Mullaly Decl., Ex. 1 at pp. 22-23. Furthermore, *Abatie* and *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997), do not appear to stand for the proposition for which they are cited.

In any event, ARAG has already fully responded to Plaintiff's articulated concerns in its rebuttal concerning RFP 21, *supra*, and for brevity ARAG refers to the Court to the relevant portion of that discussion (i.e., Section 5.6 of the Microsoft Corporation Welfare Plan and ARAG's production of its own internal claims-handling guidelines notwithstanding the absence of any statutory or regulatory requirement for such policies separate from those set forth in the Microsoft Corporation Welfare Plan).

**MOVING PARTY'S REPLY (RFP No. 29):**

If ARAG insists ERISA applies, written § 503 claim-procedure materials and training or guidance used for this claim are indispensable. ARAG's cited Bates range (ARAG010283 ff.) contains marketing and plan-design collateral—not § 503 procedures, training modules, or fiduciary-review protocols. The record otherwise shows no such procedures were produced.

ERISA requires administrators to "establish and maintain reasonable procedures governing the filing and review of benefit claims." 29 C.F.R. § 2560.503-1(b). Failure to produce or follow those procedures is evidence of non-compliance. *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (administrator must engage in meaningful dialogue with the claimant); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006) (failure to maintain § 503 procedures undermines deference and evidences structural conflict).

The Court should compel production of the written policies, training materials, and procedures ARAG used to intake, review, decide, and communicate on this claim; or, alternatively, order ARAG to certify after reasonable search that no such written procedures exist or were followed— which is itself probative of non-ERISA operation supporting state-law governance. ARAG should also produce a privilege log for any withheld items.

**REQUEST FOR PRODUCTION NO. 30:** Produce all documents reflecting any consideration paid to or received from Microsoft Corporation or the Microsoft Corporation Welfare Plan in connection with the Policy.

**Response to Request for Production No. 30:** ARAG incorporates by reference the objections and responses stated in the response to Interrogatory No. 12. Subject to and without waiver of any objections, ARAG further states as follows and reserves the right to amend and/or supplement this response: No consideration, aside from that identified in the response to Interrogatory No. 9, was paid to or received from Microsoft Corporation or the Microsoft Corporation Welfare Plan in connection with the Policy.

**First Supplemental Response (February 20, 2025):** ARAG incorporates by reference the above objections and responses. Further responding, ARAG is contemporaneously producing additional documents (Bates number ARAG010283 onward).

**MOVING PARTY'S ARGUMENT (RFP No. 30):**

ARAG's response confirms that Microsoft provided no consideration or funding for the subject Policy, a fact that undercuts ARAG's assertion that the coverage was part of a Microsoft "employee welfare benefit plan" governed by ERISA. See 29 U.S.C. § 1002(1). Without employer contributions or administrative involvement, the arrangement cannot qualify as an ERISA plan and instead falls within the Department of Labor's "safe-harbor" for voluntary, employee-paid programs, 29 C.F.R. § 2510.3-1(j). (See Ex. 4 [UltimateAdvisor Certificate]).

The single reference to "consideration identified in Interrogatory 9" is vague and unsupported by any documents. ARAG has not produced invoices, remittance statements, or correspondence reflecting how premiums were calculated, transmitted, or segregated. Those records are central to determining who bore financial risk and whether ARAG acted as insurer or legal-services contractor. Under Rule 26(b)(1), such funding information is directly relevant to jurisdiction, preemption, and the scope of available remedies.

Plaintiffs therefore request that the Court compel ARAG to produce all documents showing payments to or from Microsoft or its welfare plan—including invoices, remittance records, internal accounting entries, and related correspondence—or, in the alternative, deem ARAG's statement that no such consideration exists to be a binding admission for all purposes under Rule 37(c)(2).

**RESPONDING PARTY'S POSITION (RFP No. 30):**

As stated in ARAG's discovery responses, Microsoft did not pay any of Plaintiffs' premiums for the Microsoft Policy. *See* Mullaly Decl., Ex. 1 at pp. 20-21. Given the language of Plaintiffs' request, it is unclear what responsive documents *could* exist, and ARAG is unaware of any. However, it merits emphasis that Plaintiffs' position aggrandizes the significance of the source of premium payments to the "safe harbor" exception. Contrary to Plaintiffs' suggestion, ERISA's "safe harbor" provision does not apply if Plaintiffs simply establish a lack of Microsoft contribution to premiums on the Microsoft Policy. Rather, that is only one of four concurrent requirements for the "safe harbor," another of which is the requirement that Microsoft has not "endors[ed]" the Microsoft Policy. *See* 29 C.F.R. § 2510.3-1(j). Moreover, the Ninth Circuit holds that "[s]o long as [employer] pays for *some* benefits, ERISA applies to the whole plan, even if employees pay entirely for other benefits," *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) (emphasis added), and it is undisputed that Microsoft contributed to premiums for other parts of the Microsoft Welfare Plan. ARAG010906 (ECF #53-4 at p. 28). ARAG respectfully requests that the Court decline to order further production.

**MOVING PARTY'S REPLY (RFP No. 30):**

Funding and consideration evidence go directly to ERISA's "safe-harbor" analysis and preemption. ARAG's own response confirms Microsoft did not pay Plaintiffs' premiums yet provides no invoices, remittance statements, or accounting records showing how premiums were calculated, transmitted, or segregated.

Employer contribution is one of four mandatory safe-harbor factors under 29 C.F.R. § 2510.3-1(j). *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) ("So long

*Pro Se 2025*                                    THE HONORABLE TANA LIN

as [the employer] pays for some benefits, ERISA applies to the whole plan."). Conversely, where the employer makes no contribution or maintains no administrative role, the arrangement falls outside ERISA. *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875 (9th Cir. 2001).

Because these materials bear directly on jurisdiction and the governing law, Plaintiffs ask the Court to compel production of all consideration or funding records between ARAG and Microsoft or its welfare plan—or require ARAG to certify that none exist—and to deem any verified "no consideration" statement binding for summary-judgment purposes under Fed. R. Civ. P. 37(c)(2).

* * *

Pursuant to LCR 37(a)(2)(D)–(E), Plaintiffs certify that their total contribution to this joint submission—including the introductory statement and all arguments, but excluding the reprinting of discovery requests and responses/objections—contains **4,193 words**. No individual reply exceeds **175 words.**

RESPECTFULLY SUBMITTED on October 20, 2025.

By: */s/ Ronda Delapina McNae*
By: */s/William John McNae*
   Ronda McNae
   William McNae
   Pro se Plaintiffs
   504 11th PL
   Kirkland, WA 98033
   (206) 914-6752
   Prose.Rmcnae@gmail.com
   Prose.Wmcnae@gmail.com

## CERTIFICATION OF CONFERRAL

Pursuant to LCR 37(a)(1) and the Court's July 5, 2024 Order (Dkt. 32), Plaintiffs Ronda McNae and William McNae certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with LCR 37(a).

*Pro Se 2025*                                                    THE HONORABLE TANA LIN

* * *

## ARAG'S CERTIFICATE OF COMPLIANCE

The undersigned counsel for ARAG certifies that ARAG's total text contributed to this joint submission, including its introductory statement and statement in opposition relative to each request (but not including the reprinting of Plaintiffs' requests and ARAG's responses/objections themselves), is 4,199 words, in compliance with LCR 37(a)(2)(E).

Dated: October 16, 2025.

Respectfully Submitted,

JENSEN MORSE BAKER PLLC

By  *s/Benjamin Roesch*
Gabriel Baker, WSBA No. 28473
gabe.baker@jmblawyers.com
Benjamin Roesch, WSBA No. 39960
benjamin.roesch@jmblawyers.com
520 Pike Street, Suite 2375
Seattle, WA  98101

Attorneys for Defendant ARAG Insurance
Company

SQUIRE PATTON BOGGS (US) LLP

Michael T. Mullaly (*pro hac vice*)
michael.mullaly@squirepb.com
2000 Huntington Center
41 South High Street
Columbus, OH  43215

Attorneys for Defendant, ARAG Insurance
Company

*Pro Se 2025*                                                    THE HONORABLE TANA LIN

## CERTIFICATE OF SERVICE

I certify that on October 9, 2025, I served the foregoing draft LCR 37(a)(2) Joint Submission Regarding Plaintiffs' Motion to Compel on Defendant's counsel by electronic mail, pursuant to the Court's July 5, 2024 Order (Dkt. 32). That draft was served solely to initiate the joint-submission process required by LCR 37(a)(2).

I further certify that on October 20, 2025, I electronically filed this finalized LCR 37(a)(2) Joint Submission with the Court using the CM/ECF system, which automatically serves all registered counsel of record.

***Counsel for Defendant ARAG Insurance Company:***

Michael T. Mullaly (pro hac vice)
Squire Patton Boggs (US) LLP
2000 Huntington Center 41 South High Street
Columbus, OH 43215
michael.mullaly@squirepb.com

☒ Via CM/ECF
☒ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

***Counsel for Defendant ARAG Insurance Company:***

Benjamin Roesch, WSBA No. 39960
Jensen Morse Baker PLLC
520 Pike St, Suite 2375
Seattle, WA 98101
Benjamin.roesch@jmblawyers.com

☒ Via CM/ECF
☒ Via electronic mail
☐ Via U.S. Mail, postage prepaid
☐ Via Facsimile
☐ Via Courier
☐ Via Overnight delivery

DATED this 20th Day of October, 2025, in Kirkland, WA.

By: */s/ Ronda McNae*
Ronda McNae (Pro se)

By: */s/ William McNae*
William McNae (Pro se)

LCR 37 JOINT SUBMISSION FOR PRODUCTION
CASE NO. 2:24-CV-00211-TL - 43

*Pro Se 2025*                                                      THE HONORABLE TANA LIN

## **CERTIFICATE OF SERVICE**

Pursuant to the laws of the United States of America, the undersigned certifies under penalty of perjury that on the 16th day of October, 2025, the document attached hereto was served upon the below in the manner indicated:

*Pro Se Plaintiff*                          ☐ Via CM/ECF
                                            ☒ Via electronic mail
William McNae                               ☐ Via U.S. Mail, postage prepaid
504 11th Place                              ☐ Via Facsimile
Kirkland, WA  98033                         ☐ Via Courier
prose.wmcnae@gmail.com                      ☐ Via Overnight delivery


*Pro Se Plaintiff*                          ☐ Via CM/ECF
                                            ☒ Via electronic mail
Ronda McNae                                 ☐ Via U.S. Mail, postage prepaid
504 11th Place                              ☐ Via Facsimile
Kirkland, WA  98033                         ☐ Via Courier
prose.rmcnae@gmail.com                      ☐ Via Overnight delivery



DATED this 16th day of October, 2025, in Columbus, Ohio.


By */s/Michael T. Mullaly*
Michael T. Mullaly

LCR 37 JOINT SUBMISSION FOR PRODUCTION
CASE NO. 2:24-CV-00211-TL - 44